EXHIBIT B

Filing # 81424725 E-Filed 11/29/2018 05:52:11 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

EDUARDO TESINI,

    *Plaintiff,*

vs.

ANCHOR PROPERTY AND
CASUALTY INSURANCE COMPANY and
GROELLE & SALMON, P.A.,

    *Defendants.*

_____/

## COMPLAINT

Plaintiff, Eduardo Tesini, sues Defendants, Anchor Property and Casualty Insurance Company and Groelle & Salmon, P.A., as follows:

### NATURE OF ACTION, JURISDICTION AND VENUE

1.    This is an action for damages arising out of Anchor's failure to settle a claim made by Maria Benitez , as personal representative of the Estate of Jose Gonzalez Perdomo (the "Estate") against Ekkeko Holdings, LLC and Eduardo Tesini.

2.    This Court has jurisdiction over this action because the amount in controversy is more than $15,000.00, exclusive of costs, interests and attorney's fees.

3.    At all material times, Eduardo Tesini was a citizen and resident of Miami-Dade County, Florida, was domiciled in the State of Florida, and was otherwise *sui juris.*

4.    Anchor Property and Casualty Insurance Company is a Florida company with its principal place of business in St. Petersburg, Florida. Anchor is licensed to engage in and actively engages in the business of selling insurance in the State of Florida.

5.      At all material times, Groelle & Salmon, P.A. was a professional association with its principal place of business in Palm Beach County, Florida.

6.      Venue is proper in this circuit as the acts giving rise to this action occurred in Miami-Dade County, Florida. Anchor issued the subject insurance policy for delivery in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

7.      The Accident: On or about May 21, 2016, Jose Gonzalez Perdomo was walking between an RV and a shed when he was electrocuted and died because of his injuries (the "Accident").

8.      Mr. Perdomo and his wife, Maria Benitez, were tenants at the property where the Accident occurred. Mr. Tesini was the property owner.

9.      Ekkeko Holdings, LLC, was the property manager through a written agreement with Mr. Tesini.

10.     The Insurance Policy: Eduardo Tesini and the subject property were insured under a policy issued by Anchor Insurance, bearing policy number FLDFT-0004311-00 (the "Policy"). The Policy was in effect from July 17, 2015 through July 17, 2016.  A copy of the Policy is attached as Exhibit A.

11.     The Policy constitutes an enforceable contract under Florida law, and Mr. Tesini paid the full premiums on the Policy and satisfied all other conditions to maintain the Policy in full force and effect at all material times.

12.     The Mishandling of the Claim: Anchor was promptly notified of the Accident and agreed to defend Mr. Tesini.

13.     On or about June 8, 2016, the Estate presented Anchor with an offer to settle the Estate's claim in exchange for the tender of the Policy's limits within thirty days.

14.     Anchor unilaterally retained Groelle & Salmon, P.A. to represent Mr. Tesini's interests and resolve the Estate's claim against him in a way that protected his interests.

15.     Anchor and the lawyers it appointed delayed responding to the settlement offer until July 6, 2016, at which time they asked for an extension of the settlement offer. The Estate denied that request.

16.     Anchor, through Groelle & Salmon, then hurriedly accepted the settlement offer, without consultation with Mr. Tesini and without securing a release of Ekkeko.

17.     Had Anchor and Groelle & Salmon timely conferred with Mr. Tesini or otherwise exercised diligence in responding to the Estate's settlement offer, they could and would have understood the need for and obtained a release for Mr. Tesini that included Ekkeko.

18.     The Underlying Lawsuit: As a result of the Accident, and because Anchor and the lawyers it appointed failed to include Ekkeko in the release, Ms. Benitez filed a wrongful death lawsuit against Ekkeko Holdings, LLC in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida styled *Maria Benitez, as personal representative of the Estate of Jose Gonzalez Perdomo, deceased, on behalf of the Estate and herself as surviving spouse v. Ekkeko Holdings, LLC*, Case No. CACE-16-018528 (05) ("the Lawsuit").

19.     Ekkeko then filed a Third-Party Claim for Contractual Indemnification and Breach of Contract against Mr. Tesini.

20.     The Third-Party Claim was timely tendered to both Anchor and Groelle & Salmon, but both declined to defend Mr. Tesini.

265187
T039.100

3

Complaint

21.   On August 9, 2018, the parties involved in the Lawsuit attended mediation. After an arms-length negotiation, the parties agreed that the value of the Estate's claim was $4,607,925.90. Ekkeko was determined to be 30% liable, making the damages against Ekkeko (and Mr. Tesini's liability to Ekkeko) $1,382,377.77 (the "Settlement Agreement").

22.   Mr. Tesini engaged the undersigned counsel to represent him in this action and agreed to pay a reasonable fee for services rendered.

23.   All conditions precedent to bringing this action have been performed, waived or have otherwise occurred.

### COUNT I – COMMON LAW BAD FAITH
### ANCHOR PROPERTY & CASUALTY
### INSURANCE COMPANY

24.   Plaintiff re-alleges the facts set forth in Paragraphs 1 through 23.

25.   Anchor owed a duty to Mr. Tesini to settle the Estate's claim using the Policy's limits, with a full release for Mr. Tesini, when it could and should have done so, had it acted fairly and honestly toward its insured, and with due regard for his interest.

26.   Anchor had a duty to use the same degree of care and diligence in the handling of the Estate's claim against Mr. Tesini as a person of ordinary care and prudence should exercise in the management of his or her own business.

27.   Anchor breached its duties to Mr. Tesini by: (a) failing to make all decisions regarding the handling and settlement of the Estate's claim in good faith and with due regard for the interests of its insureds; (b) failing to settle the Estate's claim within the Policy's limits with an adequate release, when it could and should have done so, had it acted fairly and honestly toward its insured, and with due regard for his interest; (c) failing to use the same degree of care and diligence in the handling of the Estate's claim against Mr. Tesini as a person of ordinary care

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZJIjih%2b

and prudence should exercise in the management of his or her own business; and (d) failing to properly advise Mr. Tesini of the facts and circumstances surrounding the settlement opportunity that was offered to the Estate until after it expired.

28.     As a result of Anchor's handling of the Estate's claim, and its failure to obtain an adequate release, Mr. Tesini was sued and is now liable for the amount of the Settlement Agreement.

29.     As a direct and proximate result of Anchor's breaches of its duties under the Policy and Florida law, Mr. Tesini suffered and continues to suffer damages, including, but not limited to, his ongoing liability to satisfy the Settlement Agreement.

WHEREFORE, Eduardo Tesini demands judgment against Anchor Property & Casualty Insurance Company for damages, including but not limited to: the Settlement Agreement, including interest thereon; attorney's fees and costs incurred in this action; attorney's fees and costs in defending against the Third-Party Claim and any other relief the Court deems equitable and proper.

## COUNT II – LEGAL MALPRACTICE
## GROELLE & SALMON, P.A.

30.     Plaintiffs re-allege the facts set out in Paragraphs 1 through 23.

31.     At all material times, Groelle & Salmon was licensed to practice law in the State of Florida and was engaged in the practice of law in the State of Florida.

32.     Groelle & Salmon undertook an attorney-client relationship with Mr. Tesini that included the obligation to properly settle or facilitate the settlement of the Estate's claim against Mr. Tesini.

265187
T039.100

5

Complaint

33.     When Groelle & Salmon undertook to defend and settle the Estate's claim against Mr. Tesini, Groelle & Salmon subjected themselves to a standard of care to Mr. Tesini consistent with that of attorneys in the community performing similar work on behalf of their clients.

34.     Groelle & Salmon owed Mr. Tesini a duty to:

   a.     Investigate and settle the Estate's claim against Mr. Tesini using reasonable care so as not to financially injure Mr. Tesini by the settlement;

   b.     Settle the Estate's claim against Mr. Tesini with the utmost degree of honesty, loyalty and fidelity to Mr. Tesini;

   c.     Exercise the degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise; and

   d.     Maintain proper communication with Mr. Tesini to keep him adequately apprised of any developments with respect to the claim or lawsuit, including settlement offers, negotiations and conditions.

35.     Groelle & Salmon was negligent in their representation of Mr. Tesini in that they: failed to undertake a prompt and reasonable investigation prior to settling the Estate's claim; failed to provide an adequate release that would prevent Mr. Tesini from being sued by Ekkeko; failed to exercise the requisite and/or reasonable degree of knowledge, care and skill as other lawyers practicing in Florida; and failed to perform the steps necessary to protect Mr. Tesini's interests with respect to the Estate's claim.

36.     As a direct and proximate result of the negligence described above by Groelle & Salmon, Mr. Tesini suffered and continues to suffer damages, including but not limited to his ongoing liability to satisfy the Settlement Agreement.

WHEREFORE, Eduardo Tesini demands judgment against Groelle & Salmon, P.A. for damages, including but not limited to: the Settlement Agreement, including interest thereon; attorney's fees and costs in defending against the Third-Party Claim; costs incurred in this action; and any other relief the Court deems equitable and proper.

265187
T039.100                                                                    Complaint

**TRIAL BY JURY**

Plaintiff hereby requests trial by jury of all issues so triable.

Dated: November 29, 2018

Respectfully Submitted,

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, 30th FL
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**
Florida Bar No. 79170
smarino@vpl-law.com
smacgee@vpl-law.com
**S. Alice Weeks**
sweeks@vpl-law.com
Florida Bar No. 1002667
*Counsel for Eduardo Tesini*

7

265187
T039.100

Complaint

EXHIBIT A

**EXHIBIT A**



**Important Phone Numbers:**
Your Agent: (305) 262-3443
Claims / Customer Service: (877) 382-9169

**ANCHOR INSURANCE**

**Anchor Property & Casualty Insurance Company**
5959 Central Ave, Suite 200
St. Petersburg, FL 33710-8502
**POLICY NUMBER:** FLDFT-0004311-00
**Previous Policy Number:**

## DWELLING DP-3 POLICY DECLARATIONS

Renewal
Policy Effective Date: 07/17/2015
Policy Expiration Date: 07/17/2016

**Insured Name and Mailing Address:**
**Insured Copy**
EDUARDO TESINI
5825 COLLINS AVE APT 6D
MIAMI BEACH, FL 33140 USA

**YOUR ANCHOR AGENT IS:**
Agent: SUPER INSURANCE SERVICE INC
Address: 7855 SW 40th St.
Miami, FL 33155
Phone #: (305) 262-3443

**Insured Location of Residence Premises:**
Address: 19940 SW 87TH PL, CUTLER BAY, FL 33157
County: Miami-Dade

---

**TOTAL ANNUAL POLICY PREMIUM**                                    **$2,231.00**

The Hurricane portion of the Premium is: $1,048.00
The Non-Hurricane portion of the Premium is: $1,186.00

---

COVERAGE IS PROVIDED WHERE A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE

| COVERAGES | LIMIT | PREMIUM |
|---|---|---|
| Coverage -- A -- (Dwelling) | $195,000.00 | |
| Coverage -- B -- (Other Structures) | $19,500.00 | Included |
| Coverage -- D -- (Fair Rental Value) | $19,500.00 | Included |
| Coverage -- E -- (Additional Living Expense) | $19,500.00 | Included |

**SECTION I -- DEDUCTIBLES** In case of a loss, we only cover that part of the loss over the deductible stated:
All Other Perils Deductible - $2,500.00
**Hurricane Deductible - $9,750.00        (5% of Coverage A)**

**SECTION II - LIABILITY COVERAGE**
| | | |
|---|---|---|
| Coverage -- L -- (Personal Liability) | $100,000 | $41.00 |
| Coverage -- M -- (Medical Payments) | $2,000 | Included |

**CREDIT AND SURCHARGES**
Year Built (Wind Premium) Surcharge
Age of Home (Non-Wind Premium) Surhcharge
Building Code Grade (range from 5% surcharge to 46% credit)

Print Date: 06/02/2015                Page 2 of 5                APC DPDEC2 09 14
                                                                Ren:        End:



**ANCHOR**
I N S U R A N C E

**Important Phone Numbers:**
Your Agent: (305) 262-3443
Claims / Customer Service: (877) 382-9169

**Anchor Property & Casualty Insurance Company**
5959 Central Ave, Suite 200
St. Petersburg, FL 33710-8502
POLICY NUMBER: FLDFT-0004311-00
Previous Policy Number:

| POLICY FEES | | | $27.00 |
|---|---|---|---|
| CPIC 2005 Emergency Assessment | | | $0.00 |
| Emergency Management Preparedness and Assistance Trust Fund Surcharge | | | $2.00 |
| MGA Fee | | | $25.00 |

| OPTIONAL COVERAGES PREMIUM | LIMIT | $0.00 |
|---|---|---|
| APC 03 33 Fungi, Wet or Dry Rot, Yeast Or Bacteria Increased Amount of Section I - Property Coverage | $10,000.00 | $0.00 |

Premium Change Due to Rate Change:
Premium Change Due to Coverage Change:
Premium Change Due to Change in Fees:

**Policy Forms and Endorsements:**
APC DWDEC2 Dwelling Fire Take Out Renewal Business Declarations Page  /  Renewal Invoice  /  Renewal Offer

**Rating Information:**

| | |
|---|---|
| Construction: Masonry | Exclude Wind Coverage: |
| Year Built: 1966 | Burglar Alarm: N/A |
| Occupied By: Tenant Occupied | Fire Alarm: N/A |
| Usage Type: Primary | Automatic Sprinklers: N/A |
| BCEG Grade: 99 | Opening Protection: N |
| Territory: N/A | Roof Shape: Gable Roof |
| Protection Class: 04 | |



**Important Phone Numbers:**
Your Agent: (305) 262-3443
Claims / Customer Service: (877) 382-9169

Anchor Property & Casualty Insurance Company
5959 Central Ave, Suite 200
St. Petersburg, FL 33710-8502
**POLICY NUMBER:** FLDFT-0004311-00
**Previous Policy Number:**

**First Lien**                                **Second Lien**

Mitch Sattler
President, Anchor Property & Casualty Insurance Company

Authorized Countersignature

Print Date: 06/02/2015                 Page 4 of 5                 APC DPDEC2 09 14
                                                                    Ren:        End:



**ANCHOR**
I N S U R A N C E

**Important Phone Numbers:**
Your Agent: (305) 262-3443
Claims / Customer Service: (877) 382-9169

Anchor Property & Casualty Insurance Company
5959 Central Ave, Suite 200
St. Petersburg, FL 33710-8502
**POLICY NUMBER:** FLDFT-0004311-00
**Previous Policy Number:**

# NOTICES

## THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

## YOU MAY NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT.

You may reduce your policy premium by taking advantage of premium credits for shutter, housing features and other mitigation (loss prevention) devices. Contact your insurance agent to request information that may allow you to receive these discounts.

Your Building Code Effectiveness Grading Schedule adjustment is N/A. The adjustment only applies to the wind portion of your premium and can range from a surcharge of 5% to a credit of 46%.

Anchor Property & Casualty Insurance Company

Dwelling
APC 03 33 09 14

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI, WET OR DRY ROT, YEAST OR BACTERIA
## INCREASED AMOUNT OF PROPERTY COVERAGE
### FOR USE WITH ALL DWELLING FIRE FORMS

**SCHEDULE***

| | |
|---|---|
| The limit of liability selected applies to loss or costs payable under the "Fungi," Wet Or Dry Rot, Yeast Or Bacteria Other Coverage. | |
| Property Coverage Limit Of Liability For The Other Coverage "Fungi," Wet Or Dry Rot, Yeast Or Bacteria | $50,000 |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | |

**OTHER COVERAGES**

**Under OTHER COVERAGES – "Fungi," Wet Or Dry Rot, Yeast Or Bacteria**

Paragraph a. is replaced by the following:

a. We will pay up to the amount in the Schedule for:

(1) Loss payable under COVERAGES caused by "fungi," wet or dry rot, yeast or bacteria;

(2) The cost to remove "fungi," wet or dry rot, yeast or bacteria from property covered under COVERAGES;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi," wet or dry rot, yeast or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi," wet or dry rot, yeast or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi," wet or dry rot, yeast or bacteria.

Paragraph c. is replaced by the following:

c. The amount shown in the Schedule is the most we will pay for the total of all loss or costs payable under this OTHER COVERAGE regardless of the:

(1) Number of locations insured; or

(2) Number of occurrences or claims made; or

(3) Number of insureds.

All other provisions of this policy apply.

APC 03 33 09 14          Includes copyrighted material of Insurance Services Office Inc., with permission.          Page 1 of 1

Anchor Property & Casualty Insurance Company

Dwelling
APC DP-3 09 14

# ANCHOR PROPERTY & CASUALTY INSURANCE COMPANY
## DWELLING PROPERTY 3 - SPECIAL FORM
### TABLE OF CONTENTS

**GENERAL**

Agreement ...........................................................1
Definitions ..........................................................1

**COVERAGES**

Coverage A – Dwelling ......................................2
Property Not Covered .......................................2
Coverage B – Other Structures ........................3
Property Not Covered .......................................3
Special Limit of Liability
   Coverages A, B, D & E .................................3
Coverage C – Personal Property .....................3
Property Not Covered .......................................4
Coverage D – Fair Rental Value .......................4
Coverage E – Additional Living Expense .......5

**OTHER COVERAGES**

Debris Removal ..................................................5
Improvements, Alterations and Additions .......5
World Wide Coverage .......................................5
Reasonable Repairs ...........................................5
Property Removed .............................................6
Trees, Shrubs and Other Plants ......................6
Fire Department Service Charge .....................6
Collapse ..............................................................6
Glass Or Safety Glazing Material ....................6
"Fungi," Wet Or Dry Rot, Yeast Or Bacteria ...7

**PERILS INSURED AGAINST**

Coverages A & B ................................................8
Catastrophic Ground Cover Collapse .............9
Coverage C .......................................................10

**GENERAL EXCLUSIONS**

Ordinance or Law .............................................11
Earth Movement and Settlement ...................11
Water Damage ..................................................11
Power Failure ....................................................12
Neglect ..............................................................12
War .....................................................................12
Nuclear Hazard .................................................12
Intentional Loss ................................................12
Loss caused by "sinkhole" ..............................12
"Fungi," Wet Or Dry Rot, Yeast Or Bacteria ...12

Existing Damage ...............................................12
Smog, Rust, Decay or Other Corrosion ..........13
Inherent Vice, Latent Defect, Defect or
   Mechanical Breakdown ...............................13
Constant or repeated seepage or leakage ....13
Accidental discharge or overflow of water
   or steam ........................................................13
Weather Conditions .........................................13
Acts or Decisions .............................................13
Faulty, inadequate or defective ......................13

**CONDITIONS**

Policy Period .....................................................13
Insurable Interest And Limit of Liability .........13
Concealment Or Fraud .....................................13
Duties After Loss ..............................................14
Loss Settlement ................................................15
Loss To A Pair Or Set .......................................16
Glass Replacement ...........................................16
Mediation or Appraisal ....................................16
Other Insurance And Service Agreement ......17
Subrogation .......................................................17
Suit Against Us ..................................................17
Our Option .........................................................17
Loss Payment ....................................................17
Abandonment Of Property ..............................17
Mortgage Clause ..............................................17
No Benefit To Bailee .........................................18
Cancellation ......................................................18
Nonrenewal .......................................................19
Liberalization Clause ........................................20
Waiver or Change of Policy Provisions ...........20
Assignment ........................................................20
Death ..................................................................20
Nuclear Hazard Clause ....................................20
Recovered Property ..........................................20
Volcanic Eruption Period .................................21
Renewal Notification ........................................21
Adjustment to Property Coverage Limits ......21
Salvage ...............................................................21
Inspections and Surveys ..................................21
Notice .................................................................21
Deductible ..........................................................21

APC DP-3 09 14          Includes copyrighted material of Insurance Services Office, Inc., with permission.          Page i

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZlIiih%2b...   1/30/2020

Anchor Property & Casualty Insurance Company

Dwelling
APC DP-3 09 14

# ANCHOR PROPERTY & CASUALTY INSURANCE COMPANY
## DWELLING PROPERTY 3 - SPECIAL FORM

### AGREEMENT

This policy is issued on behalf of Anchor Property & Casualty Insurance Company and, by acceptance of this policy you agree:

1. That the statements in the Application(s) are your representations;

2. That this policy is issued in reliance upon the truth of those representations;

3. That this policy embodies all agreements existing between you and Anchor Property & Casualty Insurance Company relating to this policy.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

### DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Catastrophic ground cover collapse" means geological activity that results in all of the following:

   a. The abrupt collapse of ground cover;

   b. A depression in the ground cover clearly visible to the naked eye;

   c. "Structural damage" to the "principal building", including the foundation; and

   d. The "principal building" being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that "principal building".

2. "Fungi" means any type or form of fungus, including:

   a. Mold or mildew; and

   b. Any mycotoxins, toxins, spores, scents or byproducts produced or released by fungi.

   Under APC DP-3 with APC DL 24 01, this does not include any fungi, yeast or bacteria that are, are on, or are contained in a good or product intended for consumption.

3. "Personal watercraft" means a watercraft designed to carry one to four people, propelled by a water jet pump, powered by an internal combustion engine. Personal watercraft include, but are not limited to, watercraft referred to as jet ski, wave runner, wave

blaster, water scooter, seabreacher, dolphin boat and similar watercraft.

4. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

5. "Primary structural system" means an assemblage of "primary structural members."

6. "Principal building" means that part of your dwelling on the Described Location shown in the Declarations, including structures attached to the dwelling as described under COVERAGE A.

   However, "principal building" does not include:

   a. Appurtenant structures, driveways, sidewalks, walkways, decks, patios, pools, spas, or fences, unless such structure is a part of the "principal building's" foundation or are under the "principal building's" roofline;

   b. Buildings or other structures covered under COVERAGE B;

   c. Buildings, structures and other property excluded or not covered in your policy;

   d. That part of other premises, other buildings, other structures and grounds not located at the Described Location.

   e. Materials and supplies located on or next to the Described Location used to construct, alter or repair any property other than the "principal building" on the Described Location.

APC DP-3 09 14        Includes copyrighted material of Insurance Services Office, Inc., with permission.        Page 1 of 21

Anchor Property & Casualty Insurance Company

7. "Structural damage" means a "principal building", regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code.

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

c. Damage that results in listing, leaning or buckling of the exterior load bearing walls

or other vertical "primary structural members" to an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems," being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code.

e. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

8. "Unoccupied" means the dwelling is not being inhabited as a residence.

9. "Vacant" means the dwelling lacks the necessary amenities, adequate furnishings, or utilities and services to permit occupancy as a residence.

## COVERAGES

This insurance applies to the Described Location, shown in the Declarations as "Location of Residence Premises", COVERAGES for which a Limit of Liability is shown and PERILS INSURED AGAINST for which a Premium is stated.

### COVERAGE A – DWELLING

We cover:

1. The dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling;

2. Materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and

3. If not otherwise covered in this policy, building equipment and outdoor equipment used for

the service of and located on the Described Location

This COVERAGE does not apply to land, including land on which the dwelling is located.

This COVERAGE is limited to the "principal building" for the peril of "catastrophic ground cover collapse."

### Property Not Covered

We do not cover:

1. Any structure enclosed by screens on more than one side, constructed to be open to the weather, and not constructed of and covered by the same or substantially the same materials as that of the primary dwelling;

2. Carports, open sided porches that have a roof covering, and patios that have a roof covering, not constructed of and covered by the same or

Anchor Property & Casualty Insurance Company

Dwelling
APC DP-3 09 14

substantially the same materials as that of the primary dwelling;

3. Awnings, aluminum carports, and aluminum framed screened enclosures;

4. Any structure or attachment where that structure's roof coverings or exterior wall coverings are of thatch, lattice, slats, or similar material; and

5. Slat houses, chickees, tiki huts, gazebos, cabanas, canopies, pergolas, or similar structures, constructed to be open to the weather.

**COVERAGE B – OTHER STRUCTURES**

We cover other structures on the Described Location, set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This COVERAGE does not apply to land, including land on which the other structures are located.

This COVERAGE does not apply to loss or damage resulting from the peril of "catastrophic ground cover collapse."

We do not cover other structures:

1. Used in whole or in part for commercial, manufacturing or farming purposes; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

**Property Not Covered**

We do not cover:

1. Any structure enclosed by screens on more than one side, constructed to be open to the weather, and not constructed of and covered by the same or substantially the same materials as that of the primary dwelling;

2. Carports, open sided porches that have a roof covering, and patios that have a roof covering, not constructed of and covered by the same or substantially the same materials as that of the primary dwelling;

3. Awnings, aluminum carports, and aluminum framed screened enclosures;

4. Any structure where that structure's roof coverings or exterior wall coverings are of thatch, lattice, slats, or similar material; and

5. Slat houses, chickees, tiki huts, gazebos, cabanas, canopies, pergolas, or similar structures, constructed to be open to the weather.

**COVERAGE A – DWELLING, COVERAGE B – OTHER STRUCTURES, COVERAGE D – FAIR RENTAL VALUE and COVERAGE E – ADDITIONAL LIVING EXPENSE**

**Special Limit Of Liability**

1. The total limit of liability for COVERAGES A, B, D and E combined is $10,000 per policy period for cosmetic or aesthetic damages to floors.

   a. Cosmetic or aesthetic damage includes, but is not limited to, chips, scratches, dents, or any other damage that covers less than 5% of the total floor surface area of the building and does not prevent typical use of the floor.

   b. This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

   c. $10,000 is the most we will pay for the total of all loss or costs payable, including COVERAGES D and E under this Special Limit of Liability regardless of the:

      (1) Number of locations insured;

      (2) Number of occurrences or claims made; or

      (3) Number of insureds.

   d. This COVERAGE does not increase the limit of liability applying to COVERAGES A, B, D and E.

   e. This limit does not apply to cosmetic or aesthetic damage to floors caused by a PERIL INSURED AGAINST as named and described under COVERAGE C – Personal Property.

**COVERAGE C – PERSONAL PROPERTY**

We cover personal property, usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you while it is on the Described Location. At your request, we will cover personal property owned by a guest or servant while the property is on the Described Location.

Anchor Property & Casualty Insurance Company

$500 is the maximum loss payable for covered property stored in freezers or refrigerators on the Described Location.

**Property Not Covered.**

We do not cover:

1. Accounts, bank notes, bills, bullion, coins, currency, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, medals, money, securities, personal records, passports, tickets, stamps, trading cards, and comic books;

2. Jewelry, watches, furs, precious and semi-precious stones, firearms, gold, goldware, gold-plated ware, silver, silverware, silver-plated ware, pewterware, platinum, platinumware and platinum-plated ware.

   This includes flatware, holloware, tea sets, trays, and trophies made of or including silver, gold, platinum or pewter;

3. Animals, birds or fish;

4. Aircraft and parts.

   Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Motor vehicles or all other motorized land conveyances. This includes:

   a. Their equipment and accessories; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

      (1) Accessories or antennas; or

      (2) Tapes, wires, records, discs or other media for use with any such device or instrument;

   while in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Located on the Described Location and used solely to service the Described Location;

Dwelling
APC DP-3 09 14

   b. A motorized golf cart located on the Described Location or while being operated to or from, or on the premises of a golf course; or

   c. Designed for assisting the handicapped;

6. Watercraft or "personal watercraft", other than rowboats and canoes;

7. Data, including data stored in:

   a. Books of account, drawings or other paper records; or

   b. Electronic data processing tapes, wires, records, discs or other software media.

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market;

8. Credit cards or fund transfer cards.

If you remove personal property from the Described Location to a newly acquired principal residence, the COVERAGE C limit of liability will apply at each residence for the 30 days immediately after you begin to move the property there.

This time period will not extend beyond the termination of this policy.

Our liability is limited to the proportion of the limit of liability that the value at each residence bears to the total value of all personal property covered by this policy.

**COVERAGE D – FAIR RENTAL VALUE**

If a loss to covered property described in COVERAGE A, B or C by a PERIL INSURED AGAINST under this policy makes that part of the Described Location rented to others or held for rental by you unfit for its normal use, we cover its:

   FAIR RENTAL VALUE, meaning the FAIR RENTAL VALUE of that part of the Described Location rented to others or held for rental by you less any expenses that do not continue while that part of the Described Location rented or held for rental is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental.

In either event, the payment(s) will be limited to 24 consecutive months from the date of the covered loss.

Anchor Property & Casualty Insurance Company

Dwelling
APC DP-3 09 14

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a PERIL INSURED AGAINST in this policy, we cover the FAIR RENTAL VALUE loss for no more than 2 weeks.

The periods of time referenced above are not limited by the expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

The amount of insurance shown in the Declarations for either COVERAGE D or COVERAGE E below is the total amount we will pay in any one loss for both COVERAGE D and COVERAGE E combined.

Use of COVERAGE D does not reduce the COVERAGE A limit of liability or COVERAGE C limit of liability.

**COVERAGE E – ADDITIONAL LIVING EXPENSE**

If a loss to covered property described in COVERAGE A, B or C by a PERIL INSURED AGAINST under this policy makes the Described Location unfit for its normal use, we cover your:

ADDITIONAL LIVING EXPENSE, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment well be for the shortest time required to repair or replace the Described Location or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

In either event, the payment(s) will be limited to 24 consecutive months from the date of the covered loss.

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a PERIL INSURED AGAINST in this policy, we cover the ADDITIONAL LIVING EXPENSE loss for no more than 2 weeks.

The periods of time referenced above are not limited by the expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

The amount of insurance shown in the Declarations for either COVERAGE D above or COVERAGE E is the total amount we will pay in any one loss for both COVERAGE D and COVERAGE E combined.

Use of COVERAGE E does not reduce the COVERAGE A limit of liability or COVERAGE C limit of liability.

**OTHER COVERAGES**

1. **Debris Removal.**

   We will pay the reasonable expense you incur for the removal of:

   a. Debris of covered property if a PERIL INSURED AGAINST causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   Debris removal expense is included in the limit of liability applying to the damaged property.

2. **Improvements, Alterations and Additions.**

   If you are a tenant of the Described Location, you may use up to 10% of the COVERAGE C limit of liability for loss by a PERIL INSURED AGAINST to improvements, alterations and additions, made or acquired at your expense, to that part of the Described Location used only by you.

   Use of this COVERAGE does not reduce the COVERAGE C limit of liability for the same loss.

3. **World-Wide Coverage.**

   You may use up to 10% of the COVERAGE C limit of liability for loss by a PERIL INSURED AGAINST to property covered under COVERAGE C except rowboats and canoes, while anywhere in the world.

   Use of this COVERAGE reduces the COVERAGE C limit of liability for the same loss.

4. **Reasonable Repairs**

   In the event that covered property is damaged by an applicable PERIL INSURED AGAINST, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.

   If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable PERIL INSURED AGAINST.

   This COVERAGE:

Anchor Property & Casualty Insurance Company

<span style="float:right">Dwelling<br>APC DP-3 09 14</span>

a. Does not increase the limit of liability that applies to the covered property;

b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in CONDITION 4.b.

**5. Property Removed.**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a PERIL INSURED AGAINST and for no more than 30 days while removed.

This COVERAGE does not change the limit of liability that applies to the property being removed.

**6. Trees, Shrubs and Other Plants.**

We cover trees, shrubs, plants or lawns, on the Described Location for loss caused by the following PERILS INSURED AGAINST:

Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by you or a resident of the Described Location or Vandalism or malicious mischief, including damage during a burglary or attempted burglary, but not theft of property.

The limit of liability for this COVERAGE will not be more than 5% of the COVERAGE A limit of liability, or more than $500 for any one tree, shrub or plant. We do not cover property grown for commercial purposes.

This COVERAGE is additional insurance.

**7. Fire Department Service Charge.**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a PERIL INSURED AGAINST.

We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This COVERAGE is additional insurance. No deductible applies to this COVERAGE.

**8. Collapse.**

We insure for direct physical loss to covered property involving collapse of a building or

any part of a building if the collapse was caused by one or more of the following:

a. PERILS INSURED AGAINST in COVERAGE C – PERSONAL PROPERTY;

b. Decay in the building that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

c. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, dock, cistern, or similar structure is not included under items b., c., d., e., and f. above; unless the loss is a direct result of the collapse of a building.

Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or any part of the building cannot be occupied for its intended purpose.

A building or any part of a building is not considered in a state of collapse, and therefore is not covered, if a building or any part of the building is:

a. In danger of falling down or caving in;

b. Standing even if it has separated from another part of the building; or

c. Standing even if it shows evidence of settling, cracking, shifting, bulging, racking, sagging, bowing, bending, leaning, shrinkage or expansion.

This COVERAGE does not increase the limit of liability applying to the damaged covered property

**9. Glass or Safety Glazing Material.**

a. We cover:

Anchor Property & Casualty Insurance Company

Dwelling
APC DP-3 09 14

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(2) The breakage caused directly by Earth Movement and Settlement, of glass or safety glazing material which is a part of a covered building, storm door or storm window; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This COVERAGE does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken; except as provided in a.(3) above; or

(2) On the Described Location if the dwelling has been "vacant" for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement and Settlement as provided for in a.(2) above.

A dwelling being constructed is not considered "vacant."

Loss to glass covered under this Other COVERAGE 9. will be settled on the basis of replacement with safety glazing materials when required.

This COVERAGE does not increase the limit of liability that applies to the damaged property.

10. "Fungi," Wet Or Dry Rot, Yeast Or Bacteria.

a. We will pay up to $10,000 for:

(1) The total of all loss payable under the COVERAGES section of your policy caused by "fungi," wet or dry rot, yeast or bacteria;

(2) The cost to remove "fungi," wet or dry rot, yeast or bacteria from property covered under the COVERAGES section of your policy;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi," wet or dry rot, yeast or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi," wet or dry rot, yeast or bacteria whether performed prior to, during or after removal, repair, restoration or replacement.

The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi," wet or dry rot, yeast or bacteria.

b. The COVERAGE described in a. only applies:

(1) When such loss or costs are a result of a PERIL INSURED AGAINST that occurs during the policy period; and

(2) Only if all reasonable means were used to save and preserve the property from further damage at and after the time the PERIL INSURED AGAINST occurred.

c. $10,000 is the most we will pay for the total of all loss or costs payable, including ADDITIONAL LIVING EXPENSE or FAIR RENTAL VALUE under this OTHER COVERAGE resulting from any one loss regardless of the:

(1) Number of locations insured; or

(2) Number of occurrences or claims made; or

(3) Number of insureds.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi," wet or dry rot, yeast or bacteria, loss payment will not be limited by the terms of this OTHER COVERAGE, except to the extent that "fungi," wet or dry rot, yeast or bacteria causes an increase in the loss.

Any such increase in the loss will be subject to the terms of this OTHER COVERAGE.

This COVERAGE does not increase the limit of liability applying to the damaged covered property.

Anchor Property & Casualty Insurance Company

Dwelling
APC DP-3 09 14

## PERILS INSURED AGAINST

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in COVERAGES A and B only if that loss is a physical loss to property.

This includes the peril of "catastrophic ground cover collapse" as provided in Part A. below.

However, we do not insure loss:

1. Involving collapse, other than as provided in OTHER COVERAGES 8.;

2. Caused by:

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This EXCLUSION applies only while the dwelling is "vacant", "unoccupied" or being constructed unless you have used reasonable care to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain the system and appliances of water;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) Fence, pavement, patio or swimming pool;

      (2) Foundation, retaining wall or bulkhead; or

      (3) Pier, wharf or dock;

   c. Theft of property not part of a covered building or structure;

   d. Theft in or to a dwelling or structure under construction;

   e. Wind, hail, ice, snow or sleet to:

      (1) Outdoor radio and television antennas and aerials including their lead-in wiring, masts or towers; or

      (2) Trees, shrubs, plants or lawns;

   f. Vandalism and malicious mischief, theft or attempted theft if the dwelling has been "vacant" for more than 30 consecutive days immediately before the loss.

A dwelling being constructed is not considered "vacant";

   g. Accidental discharge or overflow of water or steam;

Unless loss to property covered under COVERAGE A or B results from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the Described Location.

Loss to property covered under COVERAGE A or B that results from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the Described Location includes the cost to tear out and replace any part of a building, or other structure covered under COVERAGE A or B, on the Described Location, but only when necessary to repair the system or appliance.

However, we do not cover:

   (1) Loss to the system or appliance from which this water or steam escaped;

   (2) Loss on the Described Location caused by accidental discharge or overflow which occurs off the Described Location;

   (3) Loss caused by constant and repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, which occurs over a period of time, whether hidden or not and results in damage such as wet or dry rot, "fungi," deterioration, rust, decay or other corrosion; or

   (4) Loss otherwise excluded.

For purposes of this provision, a plumbing system or household appliance does not include:

   (1) A sump, sump pump, irrigation system or related equipment; or

APC DP-3 09 14        Includes copyrighted material of Insurance Services Office, Inc., with permission.        Page 8 of 21