UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON,

    Plaintiff,

v.                                                    Case No.: 8:21-cv-370-TPB-AEP

ANCHOR INSURANCE HOLDINGS,
INC., NICK W. GRIFFIN, DANIEL S.
BOWMAN, CHRISTOPHER MOENCH,
And ANCHOR PROPERTY & CASUALTY
INSURANCE COMPANY,

    Defendants.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on "Defendants' Motion for Partial Summary Judgment and Incorporated Memorandum of Law" (Doc. 107), filed on September 26, 2022, and Plaintiff "Underwriters's Motion for Final Summary Judgment" (Doc. 110), filed on October 5, 2022. Each side filed a response in opposition. (Docs. 113; 117). Plaintiff filed a reply. (Doc. 121). Upon review of the motions, responses, reply, court file, and the record, the Court finds as follows:

## Background

In this declaratory judgment action, Plaintiff Certain Underwriters at Lloyd's, London requests a declaration that it has no obligation to defend or indemnify Defendants Anchor Insurance Holdings, Inc. and Anchor Property &

Casualty Insurance Company (collectively, "Anchor")[1] in three underlying lawsuits filed against Anchor by third parties.[2]  The action also asks the Court to declare that Plaintiff has the right to rescind the policy issued to Anchor.  The crux of Plaintiff's complaint is that Anchor misrepresented material facts in its application for insurance by failing to disclose the claims underlying several state court lawsuits.  However, in the cross-motions for summary judgment, the parties only focus on the Investors Lawsuit.  Accordingly, those facts will serve as the basis for the Court's ruling.

On October 16, 2018, Anchor applied for an insurance policy with Plaintiff.  In the application, Question 9 asked whether there were "any pending claim(s)" against Anchor, any director, officer or employee.  Question 10 asked whether Anchor, any director, officer, or employee knew "of any act, error or omission, which could give rise to a claim(s) [or] suit(s)."  Anchor answered "No" to both questions.  The application included a warranty that the "information furnished in this application is complete, true, and correct" and provided that "[a]ny misrepresentation, omission, concealment or incorrect statement of material fact, in

---

[1] Anchor Insurance Holdings, Inc. is a holding company, and its subsidiary is Anchor Property & Casualty Insurance Company.  Defendants Nick W. Griffin, Daniel S. Bowman, and Christopher Moench have settled their disputes and are no longer parties to this litigation.

[2] In the "Investors Lawsuit," investors sued the defendants to recover an investment in excess of $11,000,000, which they allege was procured through fraud and deception.  *See SME Children Ltd. P'ship v. THD Enterprises LLC*, No. 19-002760-CI (Fla. 6th Cir. Ct. 2019).  The "Tesini Lawsuit" is a bad faith action filed by Eduardo Tesini.  *See Tesini v. Anchor Prop. and Cas. Ins. Co.*, No. 2018-039891-CA-01 (Fla. 11th Cir. Ct. 2018).  In the "Alfonso Lawsuit," Lukas Alfonso filed suit against Anchor as assignee of its insured seeking a declaration that there is coverage under the Anchor policy.  *See Alfonso v. Anchor Prop. & Cas. Ins. Co.*, No. CACE19017587 (Fla. 17th Cir. Ct. 2019).

this application . . . shall be grounds for recission of any . . . policy issued." (Doc. 110-3 at 19). Relying on Anchor's representations, Plaintiff issued the policy effective November 30, 2018. Around two months later, Anchor notified Plaintiff of a claim against Anchor and certain board members.

As it turns out, a group of investors would subsequently file suit against Anchor and three board members, seeking recission of their $11.5 million dollar investment. Leading up to the lawsuit, a series of demands and claims were made. Between January and March 2018, the Investors had sent numerous emails to board members requesting rescission of their investment in Anchor through two single-purpose entities (the "THD entities").[3] Anchor was aware of these demands. For instance, on March 14, 2018, Daniel Bowman, the chairman of Anchor, sent an email to Directors Christopher S. Moench and Kyle Hooker acknowledging that the Investors wanted their money back and their purported reason. On April 6, 2018, counsel for the Investors formally sent a demand for rescission addressed to Daniel Bowman, as the chairman of Anchor, and to Moench and Hooker. Ultimately, the Investors sued the THD entities in June 2018, and amended their complaint to add Anchor as a defendant on November 19, 2020.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary

---

[3] The monies were invested in Anchor through the THD entities, which were created to obtain stock in Anchor in order to assume control of the Board and stay solvent.

judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

Under Florida law, a misrepresentation in an insurance application can result in rescission if: (a) "[t]he misrepresentation, omission, concealment, or statement is material either to the acceptance of the risk or to the hazard assumed by the insurer[,]" or (b) "[i]f the true facts had been known the insurer […], the insurer in good faith would not have issued the policy or contract . . ." § 627.409, *F.S.*; *see also Miguel v. Metro Life Ins.*, 200 F. App'x 961, 965 (11th Cir. 2006). "[E]ven an unintentional misstatement or omission in an insurance application can constitute grounds for recission." *Id.* at 966.

The record is clear that prior to October 16, 2018, when it submitted its application to Plaintiff, Anchor had actual knowledge of the potential claims against it by the Investors, including a claim for recission of the investment. On March 14, 2018, Bowman (the chairman) acknowledged to Moench and Hooker (directors) that the Investors wanted their money back. Moreover, on April 6, 2018, counsel for the Investors sent a demand letter addressed to Bowman as the chairman of Anchor. Bowman himself has even acknowledged that he did not believe the Investors were going to walk away from their $11.7 million investment and not sue Anchor. This knowledge is imputable to Anchor. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998). And yet, in its insurance application, Anchor answered that there were no pending claims against Anchor, any director, officer or employee, and that none were aware of any act, error, or omission that could give rise to a claim or lawsuit. Although Anchor attempts to argue that any potential claims were against

the THD entities and not Anchor, no reasonable jury could find this to be true due to the corporate structures of the entities and the extensive personal involvement of Bowman, Moench, and Hooker in both the THD entities and Anchor.[4] This information was not complete, true, or correct. Moreover, even if Anchor believed any claims against it lacked merit, the insurance application still required that those claims or potential claims be disclosed. *Travelers Cas. v. Mader Law*, No. 8:13-cv-2577-T-26TGW, 2014 WL 5325745, at *8 (M.D. Fla. Oct. 20, 2014) ("It is irrelevant to answering the question that the attorney applicant believed the complaints lacked merit.").

John Lepire, an expert in insurance writing, opined that if Plaintiff "had been aware of the Investors' numerous recission demands prior to the issuance of [the Policy], it would have been able to […] reject Anchor's application for directors and officers insurance coverage." (Doc. 110, Ex. BB). Scott Simmons, Plaintiff's Rule 30(b)(6) representative,[5] confirmed that he would not have issued the policy if he had any idea that the Investors were threatening to sue to rescind their $11.7 million dollar investment in Anchor. (Doc. 110, Ex. CC). Because Plaintiff was deprived of the opportunity to meaningfully underwrite the exposures it was being

---

[4] To reiterate, the monies at issue here were invested in Anchor through the THD entities. Thus, any claims against the THD entities related to that investment, including a claim for rescission, clearly implicated Anchor. Indeed, some of the very same key people were involved in both Anchor and the THD entities during the relevant time period. Although these people may have received certain information while acting on behalf of one particular corporate entity (the THD entities), that does not mean the information would not also be attributable to other corporate entities (Anchor) that these same people were simultaneously involved with during the same general time period.

[5] Verve Risk Partners is a managing general agent that acts on behalf of certain syndicates at Lloyd's of London.

asked to accept, the policy is due to be rescinded. Furthermore, because Plaintiff does not owe coverage, it is entitled to reimbursement of the defense fees and costs incurred, subtracting the premium paid.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   "Defendants' Motion for Partial Summary Judgment and Incorporated Memorandum of Law" (Doc. 107) is **DENIED**.

(2)   "Underwriters's Motion for Final Summary Judgment" (Doc. 110) is **GRANTED**.

(3)   The parties are directed to confer and submit a proposed final judgment on or before December 30, 2022. If, after conferring, they cannot agree on a proposed judgment, each party may submit a separate proposal.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of December, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**