## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CERTAIN UNDERWRITERS AT
LLOYDS, LONDON,

      Plaintiff,

vs.                                      CASE NO: 8:21-CV-370-TPB

ANCHOR INSURANCE HOLDINGS, INC.,
NICK W. GRIFFIN, DANIEL S. BOWMAN,
CHRISTOPHER MOENCH, and ANCHOR
PROPERTY & CASUALTY INSURANCE
COMPANY,

      Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES,
## RESCISSION, AND DECLARATORY RELIEF

CERTAIN UNDERWRITERS AT LLOYDS, LONDON ("Underwriters"),

pursuant to the Eleventh Circuit Court of Appeal's order dated May 15, 2022 (D.E.

28-1), file this second amended complaint containing amended jurisdictional

allegations, and allege as follows:

## NATURE OF ACTION

1.      This is an action for money damages, specifically, to recover the

amount Underwriters spent defending Anchor Insurance Holdings, Inc.

("Anchor"), Nick W. Griffin ("Griffin"), Daniel S. Bowman ("Bowman"),

Christopher Moench ("Moench"), and Anchor Property & Casualty Insurance Company ("Anchor P&C") (collectively, "Defendants") against a lawsuit for which there is no coverage. This is also an action to rescind the entire policy as a whole based on material misrepresentations in the application. In the alternative, this is an action for declaratory relief to determine the parties' obligations under the policy as it relates to not only the lawsuit by the Investors, but two other lawsuits that have been tendered to Underwriters for coverage. Below is an executive summary:

> *The Investors Lawsuit*: The Investors sued the defendants to recover their investment of + $11,350,000, which they allege was procured through fraud and deception. Before filing suit, the Investors retained counsel who made a claim, demanded rescission, and otherwise proposed pre-suit mediation. All these events preceded the Underwriters policy under which the claim was reported and the Defendants otherwise failed to disclose any of this information in their application.

> *Tesini Lawsuit*: This suit is for bad faith by Eduardo Tesini. More than one year earlier, Tesini's counsel advised Anchor P&C the lawsuit would be filed, but Defendants failed to disclose any of this information in their application.

> *Alfonso Lawsuit*: On 08/22/2019, Lukas Alfonso filed suit against Anchor P&C, as assignee of its insured. Alfonso seeks a declaration that there is coverage under the Anchor P&C policy. There is no coverage for this lawsuit under the terms of the Underwriters insurance contract, including because the policy as a whole should be rescinded.

*The Application*:  On 10/16/2018, Anchor's Chief Financial Officer signed an insurance application.  In the application, Anchor was asked if there were any claims or potential claims against it or the members of its board of directors.  Anchor represented it knew of "No" claims or potential claims, even though at the time Anchor was fully aware of the claims by the Investors and the bad faith allegations by Tesini.

## JURISDICTION AND VENUE

2.     Jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Underwriters and Defendants, and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interests, and costs.

3.     Venue is proper because Underwriters issued and delivered the insurance policy in this district, Anchor has its principal place of business in this district, the insurance application was completed in this district, and one of the underlying actions is in this district. 28 U.S.C. § 1391(b) (1) and (2).

4.     All conditions precedent to filing suit have been satisfied.

## THE PARTIES

5.     There is complete diversity of citizenship among the parties.

6.     Specifically, Underwriters are an unincorporated association comprised of seven Syndicates. Each Syndicate has a sole corporate member, which is a private limited company incorporated in the United Kingdom:

- o <u>Syndicate 4020</u>. Ark Corporate Member Limited ("Ark Corp.") is the sole member of Syndicate 4020. Ark Corp. is a private limited company incorporated in and is a citizen of the United Kingdom. Ark Corp. has 22.5% interest in the $3,000,000 limit of insurance of the D&O Coverage section of the Policy, *i.e.*, $675,000.

- o <u>Syndicate 2001</u>. MS Amlin Corporate Member Limited ("MS Amlin Corp.") is the sole member of Syndicate 2001. MS Amlin Corp. is a private limited company incorporated in and is a citizen of the United Kingdom. MS Amlin Corp. has 22.5% interest in the $3,000,000 limit of insurance of the D&O Coverage section of the Policy, *i.e.*, $675,000.

- o <u>Syndicate 1458</u>. RenaissanceRe Corporate Capital (UK) Limited ("RenaissanceRe Corp.") is the sole member of Syndicate 1458. RenaissanceRe Corp. is a private limited company incorporated in and is a citizen of the United Kingdom. Renaissance Re Corp has 20% interest in the $3,000,000 limit of insurance of the D&O Coverage section of the Policy, *i.e.*, $600,000.

- o <u>Syndicate 1084</u>. Chaucer Corporate Capital No. 3 ("Chaucer Corp.") is the sole member of Syndicate 1084. Chaucer Corp. is a private limited company incorporated in and is a citizen of the United Kingdom. Chaucer Corp. has 20% interest in the $3,000,000 limit of insurance of

the D&O Coverage section of the Policy, *i.e.*, $600,000.

o <u>Syndicate 435</u>. Faraday Capital Limited ("Faraday Ltd.") is the sole member of Syndicate 435. Faraday Ltd. is a private limited company incorporated in and is a citizen of the United Kingdom. Faraday Ltd. has 5% interest in the $3,000,000 limit of insurance of the D&O Coverage section of the Policy, *i.e.*, $150,000.

o <u>Syndicate 5678</u>. VIBE Corporate Member Limited ("VIBE Corp.") is the sole member of Syndicate 5678. VIBE Corp. is a private limited company incorporated in and is a citizen of the United Kingdom. VIBE Corp. has 5% interest in the $3,000,000 limit of insurance of the D&O Coverage section of the Policy, *i.e.*, $150,000.

o <u>Syndicate 3000</u>. Markel Capital Limited ("Markel Ltd.") is the sole member of Syndicate 3000. Markel Ltd. is a private limited company incorporated in and is a citizen of the United Kingdom. Markel Ltd. has 5% interest in the $3,000,000 limit of insurance of the D&O Coverage section of the Policy, *i.e.*, $150,000.

Accordingly, Underwriters are Citizens of the United Kingdom.

7.     Anchor is a Florida corporation with its principal place of business in St. Petersburg, Florida.  Anchor was sued by a series of Investors for rescission of their investment in the company.

8.      Anchor P&C is a Florida corporation with its principal place of business in St. Petersburg, Florida.  Anchor P&C was sued for coverage and bad faith by its own insureds.

9.      Bowman is domiciled in Florida.  He was a member of Anchor's board while simultaneously serving as manager of THD Enterprises, LLC ("THD") and THD Enterprises II, LLC ("THD II"), entities which are not insured by Underwriters.

10.     Griffin is domiciled in Florida.  He was a member of Anchor's board while simultaneously serving as managing director of Directed Capital Resources, LLC ("Directed Capital"), an entity which is not insured by Underwriters.

11.     Moench is domiciled in Florida.  Moench was a member of Anchor's board while simultaneously serving as manager of THD and THD II.

## UNDERLYING LAWSUIT #1: THE INVESTORS' RESCISSION LAWSUIT AGAINST ANCHOR

12.     On 02/13/2019, a group of Investors led by Stephen Esrick ("Investors") filed suit against Anchor, Moench, Griffin, and Bowman.  Their lawsuit is pending in circuit court, in Pinellas County, Florida, under Case Number 19-002760-CI.  A copy of the operative complaint is attached as Exhibit A.

13.     The Investors allege that in 2017, to raise funds for the purchase of

Anchor stock owned by Zagaris Group, Bowman, Griffin, and Moench solicited their investment.  But unbeknownst to them, Griffin had been convicted of extortion and was prohibited from engaging in the business of insurance in Florida (¶¶40-6.)

14.    Bowman and Moench allegedly knew of Griffin's felony conviction but chose not to disclose it.  They further allege Bowman and Moench were legally required to disclose Griffin's conviction. (¶¶47-49.)

15.    According to the Investors, Anchor, Bowman, Moench, and Griffin also failed to disclose the conditions of Anchor's financials and its pursuit of a debt raise. (¶¶49-65.)

16.    On 10/05/2017, the Investors, allegedly relying on misrepresentations, invested approximately $7.45 million in Anchor, through THD.  In connection with their investment, the Investors executed subscription agreements. (¶65.)

17.    Between 11/07/2017 and 11/10/2017, the Investors invested an additional $3.9 million in Anchor.  This time through THD II—which was formed on 11/02/2017. (¶66.)

18.    In Count I, for Violation of Florida's Securities and Investors Protection Act, the Investors allege Bowman on behalf of Anchor, THD, THD II,

Griffin on behalf of Anchor and Directed Capital, and Moench on behalf of THD, THD II, and Directed Capital, solicited the investment from them, and in doing so, made material misrepresentations about the debt raise and Anchor's financial situation. (¶¶82-84.)

19.    In Counts VI and VIII, for Negligent Misrepresentation, the Investors allege Moench, Bowman, and Griffin, individually and on behalf of Anchor, solicited their investment through material misrepresentation about Anchor's financial situation and debt raise. (¶¶108-113, 119-124.)

20.    In Counts VII and IX, for Fraudulent Misrepresentation, the Investors allege Moench, Bowman, and Griffin, individually and on behalf of Anchor, solicited investments through knowing misrepresentations about Anchor's debt raise. (¶¶108-113, 119-124.)

21.    As damages, the Investors seek rescission, including the return of their investment funds, interests, costs, and attorney's fees pursuant to Fla. Stat. § 517.211(6).

22.    Underwriters defended Anchor, Bowman, Moench, and Griffin under a complete reservation of rights, which they accepted.

23.    In their reservation of rights, Underwriters reserved the right to seek

reimbursement of any attorney's fees and costs incurred in the defense if no coverage is owed.  To date, Underwriters have incurred +$500,000, which they now seek to recover from the Defendants.

24.     Underwriters recently disclaimed coverage.

<b><u>UNDERLYING LAWSUIT #2: EDUARDO TESINI'S<br>BAD FAITH LAWSUIT AGAINST ANCHOR P&C</u></b>

25.     On 11/29/2018, Eduardo Tesini filed a one-count complaint against Anchor P&C in circuit court, in Miami-Dade County, Florida, bearing Case Number 2018-039891-CA-01.  A copy of Tesini's complaint is attached as Exhibit B.

26.     The complaint was then served on Florida's Chief Financial Officer on 12/05/2018, and a copy was forwarded to Anchor P&C on 12/10/2018.  A copy of the notice of service is attached as Exhibit C.

27.     Tesini simply asserts a bad faith claim against Anchor P&C "for damages arising out of [it's] failure to settle a claim made by Maria Benitez, as personal representative of the Estate of Jose Gonzalez against Ekkeko Holdings, LLC and Eduardo Tesini." (¶1.)

## UNDERLYING LAWSUIT #3: ALFONSO'S COVERAGE LAWSUIT AGAINST ANCHOR P&C

28.     On 08/22/2019, Lukas Alfonso filed a two-count complaint against Anchor P&C in circuit court, in Broward County, Florida, bearing Case Number CACE19017587.  A copy of Alfonso's complaint is attached as Exhibit D.

29.     Alfonso alleges that on 03/04/2016, he was injured by an insured of Anchor P&C. But complains Anchor P&C wrongfully refused to defend its insured against his claims. (¶¶ 5-17.)

30.     Alfonso and Anchor P&C's insured negotiated a $1,500,000 consent judgment and agreed Alfonso would pursue a claim against Anchor P&C instead. (¶¶21-4.)

31.     Alfonso alleges Anchor P&C breached the terms of the policy by "failing to provide them with coverage and a defense." (¶28.)

32.     As damages, Alfonso seeks payment of the $1,500,000 consent judgment. (¶36.)

## ANCHOR MISREPRESENTED MATERIAL FACTS IN ITS APPLICATION FOR INSURANCE TO UNDERWRITERS

33.     On 10/16/2018, Anchor's Chief Financial Officer signed a Cove Program Insurance Company Management Professional Liability Insurance Application ("Application") on behalf of Anchor, the applicant.  A copy of the

Application is attached as Exhibit E.

      34.     Page 2, Questions 9 and 10 of the Application provide in pertinent:

**SECTION C – CLAIMS INFORMATION**

9.    Has there been, or is there now pending any claim(s), suit(s), investigation(s) or action(s) against the Applicant, its subsidiaries, or any other director, officer or employee of any Applicant arising out of: (i) any director, officer, employee or entity liability matter; or (ii) any matter claimed against any person proposed for insurance in his or her capacity as a director, officer, plan fiduciary or employee?

Please answer with regard to:

| | Yes | No | N/A |
|---|---|---|---|
| Private Company Directors and Officers Liability | ☐ | ☒ | ☐ |
| Insurance Company Professional Liability | ☐ | ☒ | ☐ |
| Employment Practices Liability | ☐ | ☒ | ☐ |
| Network Security and Privacy Liability | ☐ | ☐ | ☐ |
| Fiduciary Liability | ☐ | ☒ | ☐ |

If "Yes", please attach full 5 year currently valued loss runs and attach claims supplement for each claim.

10.   Does the Applicant, its subsidiaries, or any director, officer or employee of the Applicant know of any act, error or omission, which could give rise to a claim(s), suit(s) or action(s) under the proposed policy with regard to?

| | Yes | No | N/A |
|---|---|---|---|
| Private Company Directors and Officers Liability | ☐ | ☒ | ☐ |
| Insurance Company Professional Liability | ☐ | ☒ | ☐ |
| Employment Practices Liability | ☐ | ☒ | ☐ |
| Network Security & Privacy Liability | ☐ | ☐ | ☐ |
| Fiduciary Liability | ☐ | ☒ | ☐ |

      35.     Pages 19 and 20 of the Application contain the following language

immediately above the applicant's signature:

THE UNDERSIGNED AUTHORIZED OFFICER OF THE APPLICANT DECLARES THAT THE STATEMENTS SET FORTH HEREIN ARE TRUE. THE UNDERSIGNED AUTHORIZED OFFICER AGREES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE EFFECTIVE DATE OF THE INSURANCE, HE/SHE (UNDERSIGNED) WILL, IN ORDER FOR THE INFORMATION TO BE ACCURATE ON THE EFFECTIVE DATE OF THE INSURANCE, IMMEDIATELY NOTIFY THE INSURER OF SUCH CHANGES, AND THE INSURER MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATIONS OR AGREEMENTS TO BIND THE INSURANCE.

SIGNING OF THIS APPLICATION DOES NOT BIND THE APPLICANT OR THE INSURER TO COMPLETE THE INSURANCE, BUT IT IS AGREED THAT THIS APPLICATION SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED, AND IT WILL BE ATTACHED TO AND BECOME PART OF THE POLICY.

ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE COMPANY TO WHICH THIS APPLICATION IS SUBMITTED IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF.

THE INSURED REPRESENTS THAT THE INFORMATION FURNISHED IN THIS APPLICATION IS COMPLETE, TRUE AND CORRECT. ANY MISREPRESENTATION, OMISSION, CONCEALMENT OR INCORRECT STATEMENT OF A MATERIAL FACT, IN THIS APPLICATION OR OTHERWISE, SHALL BE GROUNDS FOR THE RESCISSION OF ANY BOND OR POLICY ISSUED.

      36.     Anchor answered "No" to Questions 9 and 10.

37.     These answers are false and are material.

38.     On 12/16/2016, Tesini's counsel warned Anchor P&C he would be pursuing the company for bad faith.  The email provides in pertinent:

> I am shocked that even with your disclosures of duplicitous representations of your client, the insurance company, and nothing more than their bad faith settlement of a claim which you and they knew would leave their insured exposed to exactly this type of action (filed by the same attorney you negotiated with) you, nevertheless are apparently unwilling to defend your Release in any way…
>
> "No claim had been asserted at the time against the property management company…
>
> Although I am no expert on the field … the words "bad faith" and "malpractice" have never rang more true to me.  A copy of the email is attached as Exhibit F.

39.     At the time, Anchor P&C had settled the wrongful death claim by the estate of Jose Gonzalez against Tesini.  But, it failed to obtain a release of the claims against Ekkeko Holdings ("Ekkeko"), which had an indemnification agreement in its favor with Tesini and was threatening to file a third-party complaint against Tesini. Anchor P&C's refusal to obtain a release of the claims against Ekkeko resulted in a third-party complaint against Tesini and the subsequent underlying bad faith action.

40.     On 01/15/2018, when it became apparent the Investors were unhappy with their investment, Esrick, the lead investor, sent Moench, a member of Anchor's board, an email which provides in pertinent:

> If you read below[,] even after talking to Scott and Mark, like Kerry, they are wanting out.  A copy of the email is attached as Exhibit G.

41.     On 03/13/2018, Esrick sent another email to Moench.  This follow-up email provides:

> I really think rescission is the best.  We can work out the details.  The Tibbets family can come up with the money, personal guarantee on with collateral, etc.  You and I can work it out.  A copy of the email is attached as Exhibit H.

42.     On 03/22/2018, Esrick sent an email to Neil Savage of Directed Capital. Esrick's email provides in part:

> We have been asking for rescission (returning our stock) since December[,] when [Bowman] finally let me know that he was raising money (debt) simultaneously to raising money from us.  Total misrepresentation.  A copy of the email is attached as Exhibit I.

43.     On 04/06/2018, the Investors, through counsel, sent a letter to Anchor's board demanding rescission of their investment.  The letter provides in pertinent part:

> The Investors, based on both written and oral statements made to them, invested approximately $11.7 million in THD and THD II, and in turn, these funds were invested in Anchor Insurance…
>
> The investors would not have invested if these material facts had been disclosed.
>
> Accordingly, on behalf of the Investors and consistent with Florida Statute 517.211, please consider this letter a demand for rescission of the investment(s) in question. In connection with the rescission, the Investors hereby tender their securities.  A copy of the letter is attached as Exhibit J.

44.    On 05/08/2018, counsel for the Investors sent a letter to Anchor's counsel.  It provides in pertinent:

> While we appreciate you outlining the events in your letter, nothing in your chronology changes our analysis. Nonetheless, we agree that a pre-suit informal meeting with our clients is worthwhile.  We will let you know what dates we are available.  If you would otherwise like to discuss this further, feel free to give me a call.  A copy of the letter is attached as Exhibit K.

45.    On 05/15/2018, counsel for the Investors sent another letter to Anchor's counsel.  This letter provides:

> Please keep in mind this is not a situation wherein our clients waited to gauge investment performance before demanding rescission.   Your clients will agree that immediately after Mr. Esrick received the agenda for the December Board meeting, he contacted your clients'

representatives.  We are confident your clients don't believe that Mr. Esrick was putting on an act by fabricating the fact the debt raise and the CEA engagement weren't disclosed.

We too, hope an amicable resolution can be reached and look forward to hearing from you.  A copy of the letter is attached as Exhibit L.

46.     On 05/31/2019, Esrick, who became a member of Anchor's board following his investment in the company, resigned and sent the rest of the board members a letter that provides:

This letter will constitute my official resignation from the Board of Directors of Anchor Insurance effective immediately.  Please confirm that you will take the proper steps to have me removed regarding any state and regulatory requirements as well as letting the other Board Members know that I am no longer on the board. A copy of the letter is attached as Exhibit M.

## THE UNDERWRITERS POLICY

47.     Based on the representations in the application, Underwriters issued a claims made and reported Insurance Company Modular Policy to "Anchor Insurance Holdings, Inc." as the Named Entity, bearing Policy Number B0621PANCH001718, and effective from 11/30/2018 to 11/30/2019.  A copy of the policy is attached as Exhibit N.

<u>**COUNT I – NO COVERAGE FOR ANCHOR, BOWMAN,**</u>
<u>**GRIFFIN, AND MOENCH BECAUSE THE CLAIM AGAINST THEM**</u>
<u>**WAS FIRST MADE BEFORE THE POLICY INCEPTED**</u>

48.     Underwriters incorporate paragraphs 1 through 47.

49.     The Insuring Agreement in D&O Coverage Section provides:

**(1)**     The **Insurer** will indemnify an **Insured Person** for **Loss** which is not indemnified by the **Named Insured** and any **Subsidiary,** from any **Claim** first made against the **Insured Person** during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Directors and Officers Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period,** and reported in accordance with General Terms and Conditions 7, Notice/Claim Reporting Provisions;

**(2)**     The **Insurer** will indemnify **the Named Insured** and any **Subsidiary** for **Loss** which the **Named Insured** and any **Subsidiary** are required to pay as indemnification to any **Insured Person,** resulting from any **Claim** against the **Insured Person** during the **Policy Period (or** Extended Reporting Period, if applicable), for any **Directors and Officers Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period,** and reported in accordance with General Terms and Conditions 7. Notice/Claim Reporting Provisions.

(*See* Policy, Pg. 88/102.)

50.     The policy's D&O Coverage Section further provides:

**2.     DEFINITIONS**

(a)     "**Claim**" means:

(1)    a written demand for monetary, non-monetary, or injunctive relief (including any request to toll or waive any statute of limitations) …

(*See* Policy, Pg. 29/102.)

51.    The Investors and their counsel demanded rescission of their investment in Anchor before 11/30/2018, which is when the Underwriters policy incepted.

52.    Consequently, there is no coverage under the Underwriters policy.

## COUNT II – COMMON LAW RESCISSION OF THE POLICY

53.    Underwriters incorporate paragraphs 1 through 47.

54.    Underwriters issued an Insurance Company Modular Policy to "Anchor Insurance Holdings, Inc." as the Named Entity, bearing Policy Number B0621PANCH00171, and effective from 11/30/2018 to 11/30/2019.

55.    To issue the Policy, Underwriters relied on the Application executed by Anchor's CFO on 10/16/2018.

56.    Anchor's responses to Questions 9 and 10 of the Application contained fraud, mistake, or false representation.

57.    The misrepresentations were material because Underwriters would not have issued the policy if they knew the actual answers to Questions 9 and 10.

58.     The misrepresentations were also material because Underwriters would have charged Anchor a higher premium if they knew the actual answers to Questions 9 and 10.

59.     Underwriters rescinded the policy and agreed to tender the premium back to Anchor to the extent it is willing to recognize that the policy has been rescinded.

60.     There is no adequate remedy at law available to Underwriters for Anchor's material misrepresentations.

61.     Consequently, Underwriters are entitled to void the policy *ab initio.*

## COUNT III – CONTRACTUAL RESCISSION

62.     Underwriters incorporate paragraphs 1 through 47.

63.     The policy's D&O Coverage Section provides:

**6.     REPRESENTATIONS AND SEVERABILITY**

It is agreed that the **Insurer** relied upon the statements, warranties, and representations contained in the application for this policy … as being accurate and complete.  All such statements, warranties and representations are the basis for this **Coverage Section** and are to be considered as incorporated into this **Coverage Section**.

The Insureds agree that in the event such statements, warranties and representations are not accurate and complete and materially affect either the acceptance of the risk of the hazard assumed

> by the Insurer under the policy, then this Coverage
> Section shall be void ab initio …

(*See* Policy, Pg. 36/102.)

64.     On 10/16/ 2018, Anchor's CFO executed the Application.

65.     The Application contained statements, warranties, and representations that were not accurate, and which materially affected Underwriters's acceptance of the risk.

66.     The policy's D&O Coverage Section is contractually void *ab initio.*

### COUNT IV – NO COVERAGE FOR ANCHOR, BOWMAN, GRIFFIN, AND MOENCH UNDER THE CONTRACTUAL LIABILITY EXCLUSION

67.     Underwriters incorporate paragraphs 1 through 47.

68.     The policy's D&O Coverage Section provides:

> **3.     EXCLUSIONS**
>
> [T]he **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insured**:
>
> (h)     with respect to Coverage B(i) only:
>
> > (2)     alleging, arising out of, based upon or attributable to, directly or indirectly, any actual or alleged contractual liability for any Insured under any contract or agreement (either oral or written).

(*See* Policy, Pg. 32/102.)

69.    The Investors allege that in connection with their investment, they executed subscription agreements that were procured by Anchor, Bowman, Griffin, and Moench through material misrepresentations.

70.    Accordingly, there is no coverage for the claims against Anchor, Bowman, Griffin, and Moench that arise out of contractual liability, *i.e.*, the subscription agreements.

### COUNT V – NO COVERAGE FOR ANCHOR, BOWMAN, GRIFFIN, AND MOENCH UNDER THE DISHONEST OR FRAUDULENT ACTS EXCLUSION

71.    Underwriters incorporate paragraphs 1 through 47.

72.    The policy's D&O Coverage Section provides:

**3.    EXCLUSIONS**

[T]he **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insured**:

(a)    arising out of, based upon or attributable to the committing of any deliberate criminal, fraudulent, or dishonest act or any willful violation of any statute, rule or law by the Insured, if any final adjudication establishes that such deliberate criminal, fraudulent, dishonest act or willful violation of any statute, rule or law was committed …

(*See* Policy, Pg. 31/102.)

73.    The Investors allege Anchor, Bowman, Griffin, and Moench made fraudulent representations about Anchor's debt raise, financial status, and Griffin's felony conviction.  These fraudulent representations, according to them, were knowingly made to induce their investment in Anchor.

74.    To the extent a final adjudication establishes Anchor, Bowman, Griffin, and Moench committed fraudulent or dishonest acts, or violated any statute, there is no coverage.

### COUNT VI – NO COVERAGE FOR BOWMAN, GRIFFIN, AND MOENCH UNDER THE OUTSIDE ENTITY EXCLUSION

75.    Underwriters incorporate paragraphs 1 through 47.

76.    The policy's D&O Coverage Section provides:

**3.    EXCLUSIONS**

[T]he **Insurer** shall not be liable to make any payment for **Loss** in connection with any Claim made against the **Insured:**

(d)    alleging, arising out of, based upon or attributable to, directly or indirectly, any actual or alleged act or omission of an Individual Insured serving in his or her capacity as a Director or Officer or Employee of any entity that is not the Company … or by reason of his or her status as a Director or Officer or Employee of such other entity.

(*See* Policy, Pg. 32/102.)

77.     The Investors allege Bowman and Moench, on behalf of THD and THD II, and Griffin, on behalf of Directed Capital, solicited their investment through misrepresentations about Anchor's financial condition and Griffin's felony conviction.

78.     Consequently, there is no coverage for Bowman, Moench, and Griffin.

## COUNT VII – NO COVERAGE FOR BOWMAN, MOENCH, AND GRIFFIN UNDER THE GAIN OF PROFIT OR ADVANTAGE EXCLUSION

79.     Underwriters incorporate paragraphs 1 through 47.

80.     The policy's General Terms and Conditions provide:

> **4.     EXCLUSIONS**
>
> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insured:**
>
> (a)     alleging, arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the Insured(s) were not legally entitled to.

(*See* Policy, Pg. 15/102)

81.     The Investors allege they were induced to invest in Anchor for the express purpose of assisting Bowman, Moench, Griffin, THD, and THD II to gain controlling interest on Anchor's board.

82.     To the extent a final adjudication establishes, Anchor, Bowman, Griffin, and Moench gained profit they were not entitled to, there is no coverage.

### COUNT VIII – NO COVERAGE UNDER THE
### DEFINITION OF LOSS IN THE D&O COVERAGE SECTION

83.     Underwriters incorporate paragraphs 1 through 47.

84.     The policy's D&O Coverage Section provides:

> **2.     DEFINITIONS**
>
> (d)     **"Loss"** means damages, judgments … settlement and **Defense Costs**; however, **Loss** … shall not include:   (1) civil or criminal fines or penalties; (2) taxes; (3) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; and (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(*See* Policy, Pg. 29/102.)

85.     The Investors seek to rescind the investment they made on Anchor through THD, THD II, and Directed Capital.

86.     To the extent the rescission of investment is not contemplated by the policy's definition of **Loss**, there is no coverage under the policy.

### COUNT IX – NO COVERAGE FOR ANCHOR P&C
### UNDER THE DEFINITION OF LOSS

87.     Underwriters incorporate paragraphs 1 through 47.

88.    The policy's Insurance Company Liability Coverage Section provides:

> **2.    DEFINITIONS**
>
> (d)    **"Loss"** means any amounts for which the Insured is alleged to be liable under any insurance or reinsurance policy, contract, treaty, binder, slip, certificate, cover note, agreement, suretyship, endorsement, endowment, or annuity.

(*See* Policy, Pg. 55/102.)

89.    Alfonso alleges Anchor P&C breached the terms of the policy issued to its insureds because it failed to provide them with coverage and defense for claims made by him.

90.    He also alleges Anchor P&C is liable for its insureds' defense costs, as well as the amount of the consent judgment against them, which were covered by the policy.

91.    The damages Alfonso seeks from Anchor P&C are not contemplated by the policy's definition of Loss.  Accordingly, there is no coverage for Anchor P&C for the claims by Alfonso.

## <u>REQUESTED RELIEF</u>

Underwriters request this Court:

## Damages

Reimburse Underwriters for all attorney's fees and costs they incurred in defending Anchor, Bowman, Moench, and Griffin in the Investors Lawsuit.

## Rescission of the policy

Find and declare the Underwriters policy issued to Anchor is void *ab initio* by operation of common law.

## Investors' Lawsuit

Take jurisdiction and adjudicate the rights of the parties under the policy.

Find and declare the Investors' claim against Anchor, Bowman, Moench, and Griffin was made before the Underwriters policy incepted.

Find and declare the Underwriters policy issued to Anchor is void *ab initio* by operation of common law.

Find and declare the D&O Coverage Section of the Underwriters policy is contractually rescinded.

Find and declare the policy's Contractual Liability exclusion bars coverage for Anchor, Bowman, Moench, and Griffin.

## Tesini Lawsuit

Take jurisdiction and adjudicate the rights of the parties under the policy.

Find and declare the Underwriters policy issued to Anchor is void *ab initio* by operation of common law.

Award Underwriters all costs incurred to prosecute this action, as well as any other relief this court deems equitable, just, and proper.

## Alfonso Lawsuit

Take jurisdiction and adjudicate the rights of the parties under the policy.

Find and declare the Underwriters policy issued to Anchor is void *ab initio* by operation of common law. Find and declare the definition of Loss under the Insurance Company Liability Coverage Section does not contemplate the damages sought by Alfonso.

Award Underwriters all costs incurred to prosecute this action, as well as any other relief this court deems equitable, just, and proper.

Find and declare the policy's Dishonest Acts exclusion bars coverage for Anchor, Bowman, Moench, and Griffin.

Find and declare the policy's Outside Entity exclusion bars coverage for Bowman, Moench, and Griffin.

Find and declare the policy's Gain of Profit or Advantage exclusion bars coverage for Bowman, Moench, and Griffin.

Find and declare the definition of Loss under the D&O Coverage Section does not contemplate the damages sought by the Investors.

Award Underwriters all costs incurred to prosecute this action, as well as any other relief this court deems equitable, just, and proper.

Respectfully submitted,

/s/MICHELE A. VARGAS
**SINA BAHADORAN**
Florida Bar No. 523364
sina.bahadoran@clydeco.us
**MICHELE A. VARGAS**
Florida Bar No. 686395
michele.vargas@clydeco.us

Clyde & Co US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
T: 305.446.2646

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on May 16, 2023, this document was filed via the CM/ECF

system. I further certify that I am unaware of any non-CM/ECF participants.

<u>/s/MICHELE A. VARGAS</u>
**MICHELE A. VARGAS**