# EXHIBIT "N"

**621
MIL**

PROGRAMMES
UMR / POLICY No. B0621PANCH001718                                    PAGE 1 OF 102

**3Risk Details**

**Type:**            Insurance Company Modular Policy

**Insured:**         Anchor Insurance Holdings, Inc. and as per Named Insured Schedule.

**Address:**         5959 Central Avenue, Suite 200, St. Petersburg, Florida 33710

**Policy Period:**   From:   30th November 2018
                     To:     30th November 2019
                     Both days at 12.01 am local standard time at the above address.

**Interest:**        Insurance Company Professional Liability *and Management Liability Insurance*

**Limit of Liability
And Deductible:**

| Liability Coverage Section | | Separate Limit of Liability | Shared Limit of Liability | Retention | Dates |
|---|---|---|---|---|---|
| **D&O- PRIV** | **D&O and Private Company** | N/A | USD 3,000,000 | Nil for Insuring Agreement A(1) USD 250,000 for Insuring Agreements A(2) and A (3) | As per schedule of Named Insureds Endorsement |
| **D&O- PUB** | **D&O and Public Company** | N/A | N/A | N/A | N/A |
| **EPL** | **Employment Practices** | N/A | USD 3,000,000 | USD 250,000 | As per schedule of Named Insureds Endorsement |
| **FLI** | **Fiduciary** | N/A | USD 3,000,000 | USD 50,000 | As per schedule of Named Insureds Endorsement |
| **BPL** | **Bankers Professional** | N/A | N/A | N/A | N/A |

**MR CONTRACT**
ENQ/QUO :



**621**
**MIL**

| ICL | Insurance Company | N/A | USD 3,000,000 but USD 500,000 in respect to Extra Contractual Claims in Florida | USD 350,000 but USD 700,000 for Extra Contractual Claim; and USD1,000,000 for Extra Contractual Claim arising in Florda | As per schedule of Named Insureds Endorsement |
|---|---|---|---|---|---|
| NAS | NetAdvantage Security & Privacy | N/A | N/A | N/A | N/A |
| ELAW | Employed Lawyers | N/A | USD 1,000,000 | USD 10,000 | 6th November 2017 |

**Territorial Limits:**   Worldwide.

**Conditions:**   As per Insurance Company Modular Liability Policy wording and endorsements attached.

**Notices:**   As per Florida Surplus Lines Notice (Guaranty Act) LMA9037 and Florida Surplus Lines Notice (Rates and Forms) LMA9038 attached.

**Choice of Law**
**& Jurisdiction:**   Choice of Law: Florida.

This Insurance shall be governed by and construed in accordance with the laws of Florida, each party agrees to submit to the exclusive jurisdiction of any competent court within the United States of America.

NMA1998 Service of Suit Clause – naming

Mendes & Mount LLP
750 Seventh Avenue, New York, NY 10019

**Premium:**

**Payment Terms:**   Premium Payment Condition LSW 3001 – 60 days

**MR CONTRACT**
ENQ/QUO:



**621**
**MIL**

**Taxes Payable
by Insured and
administered by
Insurer(s):**              None

**Recording,
Transmitting and
Storing Information:**     Miller Insurance Services LLP will maintain risk and claim data, information and
                           documents which may be held on paper or electronically.

**Insurer Contract
Documentation:**           This document details the contract terms entered into by the insurer(s) and
                           constitutes the contract document.

                           Any further documentation changing this contract agreed in accordance with the
                           contract change provisions set out in this contract, shall form the evidence of such
                           change.

                           **Surplus Lines Notice:**
                           This contract is subject to US state surplus lines requirements. It is the responsibility
                           of the surplus lines broker to affix a surplus lines notice to the contract document
                           before it is provided to the insured. In the event that the surplus lines notice is not
                           affixed to the contract document the insured should contact the surplus lines broker.

**Notice of Cancellation
Provisions (Authority
Provisions):**             Where (re)insurers have the right to give notice of cancellation, in accordance with
                           the provisions of the contract, then

                           *To the extent provided by the contract, the Slip Leader is authorised to issue such
                           notice on behalf of all participating (re)insurers; and (optionally)*

                           *Any (re)insurer may issue such notice in respect of its own participation.*

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

**PROGRAMMES**
**UMR / POLICY No. B0621PANCH001718**          **PAGE 4 OF 102**

**NOTICES**

**FLORIDA SURPLUS LINES NOTICE (GUARANTY ACT)**

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.   PERSONS
INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA
INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION
OF AN INSOLVENT UNLICENSED INSURER.

LMA9037
01 September 2013

**FLORIDA SURPLUS LINES NOTICE (RATES AND FORMS)**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA
REGULATORY AGENCY.**

LMA9038
01 September 2013

**MR CONTRACT**
ENQ/QUO :



**621**
**MIL**

---

### NOTICES

**COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES. DEFENSE COSTS REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST APPLICABLE RETENTIONS.**

**THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION. WHERE THE INSURER HAS NO DUTY TO DEFEND, IT WILL ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS OF THIS POLICY PRIOR TO THE FINAL DISPOSITION OF A CLAIM. PLEASE REFER TO THE COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.**

**PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.**

---

### Declarations

ITEM 1.     **NAMED ENTITY:**        Anchor Insurance Holdings, Inc.

         (a) **MAILING ADDRESS:**    5959 Central Avenue, Suite 200, St. Petersburg, Florida 33710

ITEM 2.     **POLICY PERIOD:**       FROM: 30th November 2018        TO: 30th November 2019
                                  12:01 A.M. Local Time at the address shown in ITEM 1.

ITEM 3.     **COVERAGE SUMMARY:**

| Liability Coverage Section | | Separate Limit of Liability | Shared Limit of Liability | Retention | Dates |
|---|---|---|---|---|---|
| **D&O-PRIV** | **D&O and Private Company** | N/A | USD 3,000,000 | Nil for Insuring Agreement A(1) USD 250,000 for Insuring Agreements A(2) and A (3) | As per schedule of Named Insureds Endorsement |
| **D&O-PUB** | **D&O and Public Company** | N/A | N/A | N/A | N/A |

---

**MR CONTRACT**
ENQ/QUO :



| EPL | Employment Practices | N/A | USD 3,000,000 | USD 250,000 | As per schedule of Named Insureds Endorsement |
|---|---|---|---|---|---|
| FLI | Fiduciary | N/A | USD 3,000,000 | USD 50,000 | As per schedule of Named Insureds Endorsement |
| BPL | Bankers Professional | N/A | N/A | N/A | N/A |
| ICL | Insurance Company | N/A | USD 3,000,000 but USD 500,000 in respect to Extra Contractual Claims in Florida | USD 350,000 but USD 700,000 for Extra Contractual Claim; and USD1,000,000 for Extra Contractual Claim arising in Florda | As per schedule of Named Insureds Endorsement |
| NAS | NetAdvantage Security & Privacy | N/A | N/A | N/A | N/A |
| ELAW | Employed Lawyers | N/A | USD 1,000,000 | USD 10,000 | 6th November 2017 |

With respect to the D&O-PRIV, D&O-PUB, EPL, FLI and ELAW Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss.

No Retention amount is applicable to Costs of Investigation for Derivative Claims, CrisisFund, Employment Crisis Management Fund, Voluntary Compliance Loss and HIPAA Penalties.

With respect to the NAS Coverage Section only, a separate Retention amount is applicable to Class Action Claims as set forth in Clause 6 of the NAS Coverage Section

With respect to Outside Entity Executive coverage under any D&O Coverage Section, the **Continuity Date** shall be the date on which the Individual Insured first served as an Outside Entity Executive of such Outside Entity.



**621**
**MIL**

ITEM 4.    **PREMIUM:**

           **MINIMUM EARNED PREMIUM:**          25%

ITEM 5.    **OTHER LIMITS OF LIABILITY**

           **(a) POLICY AGGREGATE LIMIT OF LIABILITY:**                    USD 3,000,000

           **(b) Derivative Investigation Sublimit of Liability for
                D&O-PRIV or D&O-PUB, if purchased:**                          N/A

           **(c) CrisisFund for Crisis Loss of D&O-PUB,
                if purchased:**                                              N/A

           **(d) Additional CrisisFund for Delisting Crisis Loss for
                D&O-PUB, if purchased:**                                      N/A

           **(e) Employment Crisis Management Fund for EPL,
                if purchased:**                                              N/A

           **(f) Voluntary Compliance Loss Sublimit of Liability
                for FLI, if purchased:**                                      N/A

           **(g) HIPAA Penalties Sublimit of Liability for FLI,
                if purchased:**                                              N/A

           **(h) Regulatory Action Sublimit of Liability for NAS,
                if purchased:**                                              N/A

ITEM 6.    **INSURER:**

           Verve Risk Partners – On behalf of 100% Certain Underwriters at Lloyd's, London

ITEM 7.    **NOTICE TO THE INSURER:**
           **Claims**
           Attn: Marilyn Bonetati
           Premier Claims Management
           2020B North Tustin Avenue
           Santa Ana, CA 92705
           Email: mbonetati@premierclaimsllc.com

ITEM 8.    **FORMS ATTACHED AT ISSUE:**
           ▪    NMA 1256    Nuclear Incident Exclusion Clause
           ▪    NMA1477    Radioactive Contamination Exclusion Clause
           ▪    NMA464     War & Civil War Exclusion Clause
           ▪    LSW3001    Premium Payment Clause

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

- NMA1998          Service of Suit Clause
- Short Rate Cancellation Table
- NMA2840          Retroactive Exclusion Clause
- Prior and Pending Litigation Clause
- LSW4037          Liberalization Clause
- Plan Definition Endorsement
- General Terms and Conditions Endorsement
- Named Insured Schedule
- Choice of Law and Jurisdiction
- Additional Insured / Co-Defendant
- Third Party EPL Coverage
- Agency Services Endorsement
- Manuscript Endorsement (Amend Insuring Agreements)
- Manuscript Endorsement (Amend Regulatory Exclusions – Insurance Company Liability)

PRODUCER:   ECC Insurance Brokers, Inc.
            One Tower Lane, Suite 2850, Oakbrook Terrace, IL 60181

**THESE DECLARATIONS, THE POLICY FORM, ANY ENDORSEMENTS AND THE APPLICATION CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE COMPANY AND THE INSURED RELATING TO THIS INSURANCE.**

**MR CONTRACT** 
ENQ/QUO :



**621**
**MIL**

### Financial Institutions Risk Protector

#### GENERAL TERMS AND CONDITIONS

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

**1. TERMS AND CONDITIONS**

These General Terms and Conditions shall be applicable to all **Coverage Sections**, unless otherwise explicitly stated to the contrary in either these General Terms and Conditions or the relevant **Coverage Section**. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this policy.

**2. DEFINITIONS**

(a)     "**Affiliate**" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, the **Company**; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to the **Company**.

(b)     "**Bodily Injury**" means physical injury, sickness, disease (other than emotional distress or mental anguish), including death resulting therefrom.

(c)     "**Claim**" means **Claim**, as that term is defined within each **Coverage Section**.

(d)     "**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(e)     "**Company**" means (i) the **Named Entity**, (ii) any **Subsidiary** thereof, and, (iii) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

(f)     "**Company Shareholder Derivative Investigation**" means an investigation by the **Company** (including its board of directors (or equivalent management body) or any committee of the board of directors of the **Company**) as to whether or not the **Company** should commence a civil proceeding in a court of law against one or more **Director(s) or Officer(s)** of such **Company** in



direct response to a written demand by one or more shareholders of a **Company**, other than shareholders who are **Insureds** ("**Complaining Shareholders**"), upon the board of directors (or equivalent management body) of such **Company** to bring, on behalf of the **Company**, a civil proceeding in a court of law against a **Director or Officer** of the **Company** for a **Wrongful Act** of such **Director or Officer** of the **Company**.

(g)   "**Complaining Shareholder**" means any shareholder or shareholders, other than any **Insured**, that makes a **Derivative Demand**.

(h)   "**Continuity Date**" means the date set forth in Item 3 of the Declarations with respect to each **Coverage Section**.

(i)   "**Coverage Section(s)**" means each **Coverage Section** that is purchased by the **Insured** as indicated in Item 3 of the Declarations.

(j)   "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond, or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against the **Insureds**, but excluding any compensation of any **Individual Insured** of the **Company**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(k)   "**Derivative Demand**" means a written demand by shareholders upon the board of directors (or equivalent management body) of a **Company** asking it to bring, on behalf of the **Company**, a civil proceeding in a court of law against any **Director or Officer** of the **Company** for a **Wrongful Act** of such **Director or Officer** in order to obtain relief from damages arising out of such **Wrongful Acts**.

(l)   "**Director(s) or Officer(s)**" means any:

(1)   past, present and future duly elected or appointed director or officer of a corporation and member of the management board of a limited liability company (or equivalent positions);

(2)   with respect to operations of the **Company** in a **Foreign Jurisdiction**, such past, present and future persons in duly elected or appointed positions of the **Company** that are equivalent to an executive position listed in paragraph (1) of this definition; and

(3)   past, present and future general counsel and risk manager (or equivalent position) of the **Named Entity**.

**MR CONTRACT**
ENQ/QUO :



(m)  **"Discovery Period"** means **Discovery Period**, as that term is defined in Clause 8 of the General Terms and Conditions.

(n)  **"Domestic Partner"** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Named Entity** or any **Subsidiary**.

(o)  **"Employee(s)"** means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the **Company**, who is contracted to perform work for the **Company**, or who is an independent contractor for the **Company** shall also be an **Employee**, but only if the **Company** provides indemnification to such individual in the same manner as is provided for the **Company's** employees.

(p)  **"Financial Insolvency"** means the: (i) appointment by any state or federal official, agency or court of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate a **Company**; or (ii) the **Company** becoming a debtor-in-possession pursuant to the United States bankruptcy law; or (iii) a bankruptcy petition is filed by or against the **Company**, and as to  (i), (ii) and (iii), the equivalent status outside the United States of America.

(q)  **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

(r)  "**Indemnifiable Loss**" means **Loss** for which the **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of a **Company**.

(s)  "**Individual Insured(s)**" means an **Individual Insured**, as that term is defined within each **Coverage Section**.

(t)  "**Insured(s)**" means an **Insured**, as that term is defined within each **Coverage Section**.

(u)   "**Insurer**" means the entity listed in Item 6 of the Declarations.

(v)  **"Investigation"** means the investigation by the **Company** or, on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Company** should bring the civil proceeding demanded in the **Derivative Demand**.

(w)  **"Investigation Costs"** means reasonable and necessary costs, charges, fees and expenses (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any regular or overtime wages, salaries or fees of any **Director or Officer** or **Employee** of the **Company**) incurred by the **Company** or  its board of directors  (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), and incurred solely in connection with an  **Investigation**.

(x)     "Loss" means **Loss**, as that term is defined within each **Coverage Section**.

(y)     "**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(z)     "**Named Entity**" means the entity listed in Item 1 of the Declarations.

(aa)    "**Non-Indemnifiable Loss**" means **Loss** for which a **Company** has neither indemnified nor is permitted or required to indemnify an **Individual Insured** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of a **Company**.

(bb)    "**Outside Entity**" means any: (1) not-for-profit organization; or (2) other entity listed as an "**Outside Entity**" in an endorsement attached to this policy.

(cc)    "**Outside Entity Executive**" means any: (1) **Director(s) or Officer(s)** of the **Company** who is or was acting at the specific written request or direction of the **Company** as a **Director(s) or Officer(s)** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

(dd)    "**Policy Aggregate Limit of Liability**" means the **Policy Aggregate Limit of Liability** stated in Item 5(a) of the Declarations.

(ee)    "**Policy Period**" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(ff)    "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and **Waste**. "**Waste**" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(gg)    "**Property Damage**" means damage to, or destruction of tangible or intangible property, including the loss of use thereof, or the loss of use of tangible or intangible property which has not been damaged or destroyed.

(hh)    "**Related Wrongful Act**" means a **Wrongful Act**, which is the same, related or continuous, or a **Wrongful Act** which arises from a common nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

**MR CONTRACT**
ENQ/QUO :



(ii)  **"Retaliation"** means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an **Employee** of the **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an **Employee** of the **Company** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) strikes of an **Employee** of the **Company** or an **Outside Entity**.

(jj)  **"Separate Limit of Liability"** means each **Separate Limit of Liability**, if any, stated in Item 3 of the Declarations.

(kk)  **"Shared Limit of Liability"** means each **Shared Limit of Liability**, if any, stated in Item 3 of the Declarations, which limit of liability shall be shared between all of the **Coverage Sections** which are listed below such **Shared Limit of Liability** in the Declarations.

(ll)  **"Subsidiary"** means:

(1) If the equity securities of the **Named Entity** are not publicly traded at the inception date of the policy:

(i)   any for-profit organization that is not formed as a partnership or joint venture, whose equity securities are not publicly traded, which on or before the inception of the **Policy Period** is more than 50% owned by the **Named Entity**, either directly or indirectly through one or more of its **Subsidiaries**;

(ii)  automatically any for-profit organization that is not formed as a partnership or joint venture, whose equity securities are not publicly traded and whose assets total less than 25% of the total consolidated assets of the **Company** at the date such organization is acquired and which organization becomes a **Subsidiary** during the **Policy Period**. The **Named Entity** shall provide the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**; and

(iii) automatically any for-profit organization that is not formed as a partnership or joint venture, whose equity securities are not publicly traded and whose assets total 25% or more of the total consolidated assets of the **Company** at the date such organization is acquired, but such entity shall be a **Subsidiary** only: (i) for a period of ninety (90) days from the date the organization became a **Subsidiary**; or (ii) until the end of the **Policy Period**, whichever ends or occurs first (hereinafter **"Auto-Subsidiary Period"**); provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

**MR CONTRACT**
ENQ/QUO :

A **Subsidiary** ceases to be a **Subsidiary** when the **Named Entity** ceases to own more than a 50% ownership in such **Subsidiary**, either directly, or indirectly through one or more of its **Subsidiaries**.

(2)   If the equity securities of the **Named Entity** are publicly traded at the inception date of the policy:

(i)   any for-profit organization that is not formed as a partnership, of which the **Named Entity** has **Management Control ("Controlled Entity")** on or before the inception of the **Policy Period** either directly or indirectly through one or more other **Controlled Entities**;

(ii)   automatically any for-profit organization that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and whose assets total less than 25% of the total consolidated assets of the **Company** as of the inception date of this policy, provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**;

(iii)   automatically any for-profit organization that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and, whose assets total 25% or more of the total consolidated assets of the **Company** as of the inception date of this policy, but such entity shall be a **Subsidiary** only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever ends or occurs first (hereinafter "**Auto-Subsidiary Period**"); provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**; and

(iv)   any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Company**.

A **Subsidiary** ceases to be a **Subsidiary** when the **Named Entity** no longer maintains **Management Control** of a **Subsidiary** either directly or indirectly through one or more of its **Subsidiaries**.

(3)   Irrespective of whether or not the equity securities of the **Named Entity** are publicly traded at the inception date of the policy, the following provisions apply:

(i)   The **Insurer** shall extend coverage for any **Subsidiary** described in (II)(1)(iii) and (II)(2)(iii) above, and any **Individual Insured** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy as required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Individual Insured** thereof is conditioned

upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(ii)     In all events, coverage as is afforded under this policy with respect to a **Claim** made against **Individual Insureds** of any **Subsidiary**, or any **Subsidiary**, shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Individual Insured** or **Subsidiary** became an **Individual Insured** or **Subsidiary** and prior to the time that such **Individual Insured** or **Subsidiary** ceased to be an **Individual Insured** or **Subsidiary**.

(mm)    "**Wrongful Act**" means a **Wrongful Act**, as that term is defined within each **Coverage Section**.

## 3.  EXTENSIONS

Subject otherwise to the terms herein, this policy shall cover **Loss** arising from any **Claim** made against: (i) the estates, heirs, or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of incompetency, insolvency or bankruptcy, who were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; or (ii) the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner**, or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; provided, however, that this extension shall not afford coverage for any **Claim** for any **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

## 4.  EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(a)    arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication  establishes the **Insured(s)** were not legally entitled;

(b)    alleging, arising out of, based upon or attributable to the facts alleged, or to the same as or a **Related Wrongful Act** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(c)    alleging, arising out of, based upon or attributable to, directly or indirectly, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging any **Wrongful Act** which is the same as or a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

**MR CONTRACT**
ENQ/QUO :



(d) alleging, arising out of, based upon or attributable to, directly or indirectly, any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, this exclusion shall not apply:

    (i)    with respect to the D&O **Coverage Section** only, to:

        (1) **Non-Indemnifiable Loss,** other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**; or

        (2) a **Securities Claim** (as defined in the D&O **Coverage Section**), other than:

            (a) **Loss** constituting **Cleanup Costs**; or

            (b) any **Securities Claim** brought derivatively on behalf of a **Company** by a securities holder of such **Company** alleging, arising out of, based upon, or attributable to, directly or indirectly, **Cleanup Costs**;

    (ii)   with respect to the EPL **Coverage Section** only, to any **Claim** for **Retaliation**;

    (iii)  with respect to the FLI **Coverage Section** only, to **Non-Indemnifiable Loss** from a **Claim** alleging damage to a **Plan** (as defined in the FLI **Coverage Section**);

(e) alleging, arising out of, based upon or attributable to, directly or indirectly, **Bodily Injury** or **Property Damage**; provided, however, this exclusion shall not apply:

    (i)    with respect to the D&O **Coverage Section** only, to any **Securities Claim** (as defined in the D&O **Coverage Section**); and

    (ii)   with respect to the FLI **Coverage Section** only, to **Defense Costs** incurred in the defense of a **Claim** alleging a **Breach of Fiduciary Duty** (as defined in the FLI **Coverage Section**);

(f) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, that with respect to the EPL **Coverage Section** only, this exclusion shall not apply to a **Claim** for **Retaliation**; provided, further that solely with respect to violations of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 and the Consolidated Omnibus Budget Reconciliation Act, this exclusion shall not apply to the extent coverage is afforded pursuant to the FLI **Coverage Section**;

(g) alleging, arising out of, based upon, or attributable to, directly or indirectly, the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay for services rendered (hereinafter, "**Earned Wages**") (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** or purported employee(s), including,

but not limited to, (i) any unfair business practice claim alleged because of the failure to pay **Earned Wages**, or (ii) any **Claim** seeking **Earned Wages** because any **Employee(s)** or purported employee(s) was improperly classified or mislabelled as "exempt;" or

(h) alleging, arising out of, based upon or attributable to, directly or indirectly, any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar benefits; provided, however, this exclusion shall not apply:

(1) with respect to the EPL **Coverage Section** only, to a **Claim** for **Retaliation**; and
(2) to the extent coverage is afforded pursuant to the FLI **Coverage Section** only.

For the purpose of determining the applicability of the foregoing exclusion 4(a): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (2) facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or general counsel (or equivalent positions) of the **Company** shall be imputed only to the **Company**.

5.   **AGGREGATE LIMIT OF LIABILITY (FOR ALL LOSS UNDER THIS POLICY COMBINED - INCLUDING DEFENSE COSTS)**

The **Policy Aggregate Limit of Liability** stated in Item 5(a) of the Declarations is the maximum limit of the **Insurer's** liability for all **Loss** under all **Coverage Sections** combined, arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable); provided, however, the **Policy Aggregate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for the **Policy Period**.  Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the **Policy Aggregate Limit of Liability** stated in Item 5(a) of the Declarations and subject to the applicable **Separate Limits of Liability** or **Shared Limit of Liability**, if any.

If **Separate Limits of Liability** are stated in Item 3 of the Declarations, then each such **Separate Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to the applicable **Coverage Section** as stated on the Declarations; provided, however, the **Separate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Separate Limit of Liability** for the **Policy Period**.  The **Separate Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for all **Loss** under this policy as stated in Item 5(a) of the Declarations and shall in no way serve to increase the **Policy Aggregate Limit of Liability** as therein stated.

If **Shared Limits of Liability** are stated in Item 3 of the Declarations, then each such **Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Shared Limit of Liability** is applicable, as indicated on the Declarations; provided, however, with respect to all **Coverage Sections** that have a **Shared Limit of Liability**, the **Shared Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to,



**621**
**MIL**

the **Shared Limit of Liability** for the **Policy Period**.  Any **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for all **Loss** under this policy as stated in Item 5(a) of the Declarations and shall in no way serve to increase the **Policy Aggregate Limit of Liability** as therein stated.

**Defense Costs are not payable by the Insurer in addition to the Policy Aggregate Limit of Liability or any Separate Limit of Liability or Shared Limit of Liability.  Defense Costs are part of Loss and as such are subject to the Policy Aggregate Limit of Liability for Loss and any applicable Separate Limit of Liability or Shared Limit of Liability.  Amounts incurred for Defense Costs shall be applied against the Retention amount.**

6.  **RETENTION CLAUSE**

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 3 of the Declarations, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Loss** under the Security & Privacy **Coverage Section**, BPL **Coverage Section** and ICL **Coverage Section**; and (ii) all **Indemnifiable Loss** and all **Loss** of the **Company** under all other **Coverage Sections**.   A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act**.  In the event a **Claim** triggers more than one amount stated in Item 3 of the Declarations, only the highest such amount shall apply, which amount shall apply to all **Loss** under such **Claim**.

In the event a **Company** refuses or is unable to pay **Indemnifiable Loss**  due to **Financial Insolvency**, then the **Insurer** shall commence advancing such **Indemnifiable Loss**  within the Retention, and shall pay such **Indemnifiable Loss** in excess of the Retention, subject to the other terms, conditions and exclusions of this policy, provided that the **Insurer** shall be entitled to recover the amount of such **Indemnifiable Loss** advanced within the Retention from the **Company** pursuant to Clause 11 of the General Terms and Conditions.

7.  **NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to Premier Claims Management, 2020B North Tustin Avenue, Santa Ana, CA 92705. Notice shall include and reference the Policy Number as indicated in the Declarations.  If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.**

**A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured, or by the Insurer, whichever comes first.**

(a)  The **Company** or the **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** or an **Employment Crisis** (as defined in the EPL **Coverage Section**) as soon as practicable and either:

(1)  any time during the **Policy Period** or during the **Discovery Period** (if applicable); or



(2) within forty-five (45) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final thirty (30) days of the **Policy Period** or the **Discovery Period** (if applicable).

(b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging a **Related Wrongful Act** to the **Claim** for which such notice has been given shall be considered made at the time such notice was given.

(c) If during the **Policy Period** or **Discovery Period** (if applicable), the **Company** or the **Insureds** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated, and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Related Wrongful Act** to such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8.  DISCOVERY CLAUSE

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (herein referred to as the "**Discovery Period**") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice of **Claims** first made against the **Insureds** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for: (1) one year shall be 75% of the "full annual premium" indicated in Item 4 of the Declarations; (2) two years shall be 150% of the "full annual premium" indicated in Item 4 of the Declarations; and (3) three years shall be a reasonable premium amount to be mutually agreed upon by the **Named Entity** and the **Insurer**.

In the event of a **Transaction** (as defined in Clause 10 below), the **Named Entity** shall have the right, within thirty (30) days before the end of the **Policy Period**, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**) for a period of no less than three (3) years or for such longer or shorter period as the **Named Entity** may request.  The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions and premium as the **Insurer** may reasonably decide.  In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.



Case 8:21-cv-00370-TPB-AEP    Document 147-14    Filed 05/16/23    Page 21 of 109 PageID 4870

**621
MIL**

The **Discovery Period** is not cancelable by the **Insureds** or the **Insurer**, except that the **Insurer** may cancel the **Discovery Period** for non-payment of premium. This Clause 8 and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

**9.  CANCELLATION CLAUSE**

This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent.

This policy may be canceled by or on the behalf of the **Insurer** only in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1(a) of the Declarations, written notice stating when, not less than the minimum time allowed pursuant to the applicable state law, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium herein.

**10.  CHANGE IN CONTROL OF NAMED ENTITY**

(1) If the equity securities of the **Named Entity** are not publicly traded at the inception date of the policy and if during the **Policy Period**:

    (a)  the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    (b)  any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors of the **Named Entity**, or acquires the voting rights of such an amount of such securities;

    (either of the above events herein referred to as the "**Transaction**"),

then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** occurring after the effective time of the **Transaction**.

(2) If the equity securities of the **Named Entity** are publicly traded at the inception date of the policy and if during the **Policy Period**:

    (a)  the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    (b)  any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

**MR CONTRACT**
ENQ/QUO :



(either of the above events herein referred to as the "**Transaction**"),

then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** occurring after the effective time of the **Transaction**.

(3)   This policy may not be cancelled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time.  The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in Clause 8 above.

(4)   The **Named Entity** shall give the **Insurer** written notice of the **Transaction** as soon as practicable, but not later than thirty (30) days after the effective date of the **Transaction**.

## 11.  SUBROGATION AND RIGHT OF DIRECT RECOVERY AGAINST INSUREDS

(a)   In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of each and every **Company's** and  **Insureds'** rights of recovery thereof, and each such **Company** and  **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights (including, without limitation, the assertion of indemnification or contribution rights), including the execution of any and all  documents necessary to enable the **Insurer** effectively to bring suit in the name of each such **Company** and each such  **Insured**.  In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless (i) the **Insurer** is seeking recovery from the **Company** pursuant to subparagraph (b)(i) of this Clause,  or (ii) such **Insured** has been convicted of a deliberate criminal act, or been determined by any final adjudication to have committed a deliberate fraudulent act, or been determined by any final adjudication to have obtained any profit or advantage to which such **Insured** was not legally entitled.

(b)   In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss**, the **Insurer**:

(i)    shall be subrogated to the **Individual Insured's**  right of recovery from the **Company**, or in the event of a bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States), of the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Company** (hereinafter "**Retention Loss**"); and

(ii)   shall have a direct contractual right under the policy to recover from the **Company**, or in the event of a bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States), the **Retention Loss**. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation rights pursuant to subparagraph (b)(i) above.

(c)   The **Insurer** shall have a direct contractual right under the policy to recover **Loss** paid under the policy from each and every **Insured**, severally and according to their respective interests, in the event and to the extent that such **Insureds** shall not be entitled under this policy to payment of such **Loss**.

(d)   Solely with respect to the FLI **Coverage Section**, in the event this policy has been purchased by an **Insured** other than a **Plan** (as defined in the FLI **Coverage Section**), the **Insurer** shall have no right

Case 8:21-cv-00370-TPB-AEP Document 147-14 Filed 05/16/23 Page 23 of 109 PageID 4872

**621**
**MIL**

of recourse against an **Insured**. Notwithstanding the foregoing, the **Insurer** shall have a right of recourse against an **Insured** arising out of a **Claim** by an **Insured** against another **Insured** unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of or active participation by the **Insured** claimed against.

## 12. OTHER INSURANCE

Solely with respect to the EPL **Coverage Section**, unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by the EPL **Coverage Section** shall be primary.

With respect to all **Coverage Sections** other than the EPL **Coverage Section**, such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Policy Aggregate Limit of Liability** provided by this policy. This policy specifically shall be excess of any other policy pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** against an **Insured** arising out of his or her service as an **Outside Entity Executive**; or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee**, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such **Outside Entity** or such leasing company and any insurance provided to such **Outside Entity** or such leasing company.

Further, in the event other insurance is provided to the **Outside Entity** or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the **Insurer** (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a **Claim**), then the **Insurer's** maximum aggregate limit of liability for all **Loss** combined in connection with a **Claim** covered, in part or in whole, by this policy and such other insurance policy issued by the **Insurer**, shall not exceed the greater of the **Policy Aggregate Limit of Liability** or any **Separate Limit of Liability** or **Shared Limit of Liability** of this policy or the limit of liability of such other insurance policy.

## 13. NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and all **Insureds** with respect to the giving of notice of a **Claim**, the giving and receiving of notice of cancellation and nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

## 14. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which shall be in the sole and absolute discretion of the **Insurer**.



## 15. DISPUTE RESOLUTION PROCESS

(a) It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, and including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution process set forth in this Clause 15.

(b) The **Insurer** and **Insured(s)** shall, in the first instance, seek to resolve all such disputes governed by this Clause 15 and referred to in the preceding paragraph (collectively "disputes," or individually "dispute") through non-binding mediation administered by the American Arbitration Association. It shall be a condition precedent to the right(s) of the **Insurer** and **Insured(s)** to commence an arbitration or judicial proceeding that the **Insurer** and **Insured(s)** first seek to resolve all such disputes by non-binding mediation. In the event that the **Insurer** or an **Insured** shall commence an arbitration or judicial proceeding in violation of this paragraph, the other party shall have the right, but not the obligation, to seek the dismissal of or a stay of such arbitration or judicial proceeding. The costs incurred, including legal fees, in seeking such dismissal or stay shall be paid by the party commencing the arbitration or judicial proceeding in violation of this Clause 15.

(c) After the date on which the mediation terminates pursuant to the terms set forth in Appendix GTC-1 to this policy, the **Insurer** and **Insureds** shall wait at least sixty (60) days prior to filing an arbitration or judicial proceeding. Either the **Insurer** or an **Insured** may elect to file arbitration or a judicial proceeding; provided, however, that such **Insured** shall have the right to reject the **Insurer's** choice of either arbitration or a judicial proceeding prior to or after such proceeding is commenced, but only so long as such rejection shall be in writing and mailed to the **Insurer** within fourteen (14) days from the date on which the **Insurer** demands arbitration or commences a judicial proceeding. In the event an **Insured** rejects the **Insurer's** choice pursuant to the terms of this paragraph, such **Insured's** choice of either arbitration or a judicial proceeding shall control. In the event the dispute between the **Insurer** and **Insured(s)** that is the subject of this Clause 15 concerns a **Claim**, the rejection notice shall be addressed to the claims department responsible for handling such **Claim**.

(d) Any such mediation, arbitration or judicial proceeding shall be subject to the terms and conditions set forth in Appendix GTC-1 to this policy.

(e) Notwithstanding any preceding provision in this Clause 15, this Clause 15 shall not apply or govern any dispute concerning the issue of whether the policy, for any reason, is void or voidable.

## 16.  ACTION AGAINST INSURER

Except as provided in Clause 15 above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial or by written agreement of the **Insureds**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.  No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Insureds** or the **Company** to determine the **Insureds'** liability, nor shall the **Insurer** be impleaded by the **Insureds** or the **Company** or their legal representatives.  Bankruptcy or

**MR CONTRACT**
Enq/Quo :



**621
MIL**

insolvency of the **Company** or the **Insureds** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

### 17.  CHANGE IN THIS POLICY

Notices to any agent or broker or knowledge possessed by any agent or broker or by any other person shall not effect a waiver or a change in any part of this policy or estop the **Insurer** from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy and signed by an authorized representative of the **Insurer**.

### 18.  TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.  Payment of **Loss** under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

### 20.  HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.



**APPENDIX GTC-1**

**DISPUTE RESOLUTION PROCESS**

Any mediation, arbitration or judicial proceeding commenced in accordance with Clause 15 of the General Terms & Conditions, shall be subject to the terms and conditions set forth below:

A.  General Terms

    (1)    At any mediation or arbitration commenced pursuant to Clause 15 of the General Terms & Conditions, there shall be present a representative of the **Company** with full authority to settle or compromise any dispute under the policy, or in the case of an **Insured Person** that is a party to a mediation or arbitration, such **Insured Person** shall be present at the mediation or arbitration unless otherwise agreed to by the **Insurer**.

    (2)    The mediator or arbitrators shall give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy.

    (3)    Any mediation, arbitration or judicial proceeding held pursuant to the terms of Clause 15 of the General Terms & Conditions shall be conducted in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; in the state designated in Item 1 of the Declarations as the mailing address of the **Named Entity**; or in the state where the **Named Entity** is incorporated, unless otherwise agreed to by the parties.

    (4)    Unless otherwise agreed to, all expenses of the mediation or arbitration other than defense costs which are the sole responsibility of each party, shall be borne equally by the parties to the mediation or arbitration, including any filing fee or mediator's or arbitrator's fee.

    (5)    In all instances under Clause 15 of the General Terms & Conditions where the **Insureds** are provided with a choice of alternatives and cannot unanimously agree on which alternative to choose, the right of election on behalf of the **Insureds** shall rest with the **Named Entity**, and such election shall be binding on all **Insureds**, including without limitation an **Insured's** choice of either arbitration or a judicial proceeding pursuant to paragraph (c) of Clause 15 of the General Terms & Conditions.

B.  Non-Binding Mediation

    (1) The **Insurer** and **Insured(s)** shall attempt in good faith to settle their disputes by mediation in accordance with the American Arbitration Association's ("**AAA**") then-prevailing Commercial Mediation Rules (hereinafter "**Mediation Rules**"). The mediation shall be terminated upon the occurrence of any one of the following events:

**MR CONTRACT**
ENQ/QUO :



**621**
**MIL**

(a) the execution of a settlement agreement by the parties;

(b) a written declaration of the mediator that further efforts are unlikely to result in a settlement agreement;

(c) mutual agreement of the **Insurer** and **Insured(s)** that further efforts are unlikely to result in a settlement agreement;

(d) if within sixty (60) days after the first day of mediation, a settlement agreement has not been reached and the parties have not otherwise agreed to extend the time for the mediation; or

(e) as otherwise provided by the **AAA** or the **Mediation Rules**.

(2) Notwithstanding any rule governing the conduct of the mediation, the parties shall attempt in good faith to mutually agree to the appointment of a mediator. In the event the parties cannot agree the mediator shall be appointed pursuant to the **Mediation Rules**. A condition precedent to the selection of any mediator, whether such mediator is mutually agreed upon or appointed pursuant to the **Mediation Rules**, is that he or she be "disinterested" as that term is defined in paragraph C.(1) below and be an active or retired attorney who has practiced law for at least ten (10) years in the area of commercial litigation.

C. Arbitration

(1) Subsequent to the termination of the mediation process pursuant to paragraph B.(1) above, either the **Insurer** or the **Insured(s)** may submit their dispute for arbitration to the **AAA**. The arbitration shall be conducted in accordance with the then-prevailing Commercial Arbitration Rules (hereinafter "**Arbitration Rules**"). Upon application of one or more of the parties to the arbitration, the arbitrators will decide if any inconsistency exists between the **Arbitration Rules**, the provisions of Clause 15 of the General Terms & Conditions and this Appendix. If any such inconsistency exists, the provisions of Clause 15 of the General Terms & Conditions and this Appendix will control and supersede the **Arbitration Rules**. The arbitration shall be conducted by a panel of three disinterested individuals. All **Insureds** shall jointly select one disinterested arbitrator and the **Insurer** shall select one disinterested arbitrator. The arbitrators selected by the **Insureds** and the **Insurer** shall then mutually select a third disinterested arbitrator. "Disinterested" for purposes of Clause 15 of the General Terms & Conditions and this Appendix shall mean:

(a) an individual who, in the five years preceding the date on which he or she is selected to be an arbitrator, has not represented or been an adversary of any **Insured** or the **Insurer** in any civil, criminal, administrative, regulatory or arbitration proceeding or in any civil, criminal, administrative or regulatory investigation, and has not made any demand for monetary or non-



monetary relief of any **Insureds** or the **Insurer** that the **Insureds** or the **Insurer** disputed;

(b) an individual who has no financial or personal interest, direct or indirect, in the outcome of the arbitration; and

(c) an individual who provides a written, signed statement representing that he or she has not, in the five years preceding the date on which he or she was selected to be an arbitrator represented or been an adversary of any **Insured** or the **Insurer** in any civil, criminal, administrative, regulatory or arbitration proceeding or in any civil, criminal, administrative or regulatory investigation, and has not made any demand for monetary or non-monetary relief of any **Insureds** or the **Insurer** that the **Insureds** or the **Insurer** disputed. The Individual will also state in writing that he or she is aware of no circumstances that would interfere with his or her ability to render a fair, unbiased decision in the arbitration.

(2) If the arbitrators selected by the **Insureds** and the **Insurer** cannot agree upon a third disinterested arbitrator then each arbitrator shall provide the other with a list of three proposed disinterested arbitrators. The arbitrators shall then flip a coin and the loser of the coin toss shall choose an arbitrator from the winner's list. The third arbitrator shall decide any and all disputes among the **Insureds** and the **Insurer** concerning whether or not the arbitrators chosen by the **Insureds** and **Insurer** are disinterested. That decision shall be final and binding and not subject to any appeal.

(3) A condition precedent to the selection of the third disinterested arbitrator, regardless of the selection method as set forth in the preceding paragraph, is that he or she be an active or retired attorney with at least 10 years of experience practicing primarily in property/casualty insurance coverage law at a law firm, or as in-house counsel at an insurance company or reinsurance company, insurance broker or agent, or other company.

(4) In the event of arbitration, the decision of the arbitrators shall be final and binding and provided in writing to both parties and the arbitrators' award shall not include attorneys fees or other costs. The award shall not include punitive, exemplary or multiple damages, or any similar form of damages designed to punish or penalize a party. Should the arbitrators include punitive or exemplary damages, or attorneys fees or other costs in the award, then the arbitrators' decision and award shall be automatically null and void and have no effect on the parties in the arbitration, unless all such parties against whom such damages or fees or costs are awarded agree in writing, in their sole and absolute discretion, to waive the requirements of this paragraph.



**621
MIL**

**Financial Institutions Risk Protector**

**DIRECTORS, OFFICERS AND PRIVATE FINANCIAL INSTITUTION LIABILITY
("D&O COVERAGE SECTION")**

**Notice**: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and
Conditions are incorporated by reference into, made a part of, and are expressly applicable to this
Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and
Conditions or in this Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by
application, including its attachments and the material incorporated therein, which form a part of this policy,
the **Insurer** agrees as follows:

1.  **INSURING AGREEMENTS**

    **COVERAGE A:  INDIVIDUAL INSURED INSURANCE**

    This policy shall pay the **Loss** of each and every **Individual Insured** arising from a **Claim** first made
    against such **Individual Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) and
    reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** of such **Individual
    Insured**, except when and to the extent that the **Company** has indemnified such **Individual Insureds**.
    The **Insurer** shall, in accordance with Clause 5 of this **Coverage Section**, advance **Defense Costs** of
    such **Claim** prior to its final disposition.

    **COVERAGE B:  PRIVATE COMPANY INSURANCE**

    This policy shall pay the **Loss** of the **Company** arising from a:

    (i)   **Claim** first made against the **Company**, or

    (ii)  **Claim** first made against an **Individual Insured**,

    during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant
    to the terms of this policy for any **Wrongful Act**, but, in the case of (ii) above, only when and to the
    extent that the **Company** has indemnified the **Individual Insured** for such **Loss**.  The **Insurer** shall, in
    accordance with Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its
    final disposition.



**621**
**MIL**

### COVERAGE C:  INVESTIGATION COSTS FOR DERIVATIVE CLAIMS

This policy shall pay the **Investigation Costs** of the **Company** arising from an **Investigation** in response to a **Derivative Demand** first made upon the **Company** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy.

It shall be the duty of the **Company** and not the duty of the **Insurer** to conduct, investigate and evaluate any **Investigation** against its own **Directors and Officers,** provided that the **Insurer** shall be entitled to effectively associate in the **Investigation** and in the evaluation and negotiation of any settlement of any such **Investigation**.

Nothing in this Coverage C shall be construed to afford coverage under this policy for any **Claim** brought by the **Company** against one or more of its own **Directors or Officers** other than **Investigation Costs** incurred in a covered **Investigation**.  Payment of any **Investigation Costs** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

The **Company** shall be entitled to payment under this Coverage C of its covered **Investigation Costs** ninety (90) days after: (i) it has made its final decision not to bring a civil proceeding in a court of law against any of its **Director or Officers**, and (ii) such decision has been communicated to the **Complaining Shareholders**.  Such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or  **Complaining Shareholders** bring a **Claim** alleging, arising out of, based upon or attributable to any  **Wrongful Acts**  which were the subject of the **Derivative Demand**.

No Retention amount is applicable to Coverage C.

## 2.   DEFINITIONS

(a)  "**Claim**" means:
   (1)   a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations); or

   (2)   a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:

      (i)    service of a complaint or similar pleading; or
      (ii)   return of an indictment, information or similar document (in the case of a criminal proceeding); or
      (iii)  receipt or filing of a notice of charges.

   (3)   a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

      (i)    once such **Individual Insured** is identified in writing by such investigating authority as a person against whom a proceeding described in paragraph (2) of this definition, may be commenced; or
      (ii)   in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Individual Insured**.



The term "**Claim**" shall include any **Derivative Demand**, but solely with respect to the coverage provided under Coverage C.

(b) "**Individual Insured(s)**" means any:

   (1)   **Director(s) or Officer(s)** of the **Company**;
   (2)   **Employee(s)** of the **Company**; and
   (3)   **Outside Entity Executive(s)**.

(c) "**Insured(s)**" mean:

   (1)   any **Individual Insured**; and
   (2)   the **Company**.

(d) "**Loss**" means damages, judgments (including pre-judgment and post-judgment interest on that part of any judgment paid under this **Coverage Section**), settlements and **Defense Costs**; however, **Loss** (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; and (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, "**Loss**" shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to Exclusions (a) and (b) of this **Coverage Section** and Exclusion (a) of the General Terms and Conditions): (1) civil penalties assessed against any **Individual Insured** pursuant to Section 2(g) (2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) punitive, exemplary and multiple damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages. For purposes of such coverage, "applicable law" includes, but is not limited to, the following jurisdictions: (a) where the **Wrongful Act** actually or allegedly took place; (b) where the damages are awarded; (c) where the **Named Entity** resides, is incorporated or has its principal place of business; and (d) where the **Insurer** is incorporated or has its principal place of business.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, such **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

The term "**Loss**" shall include **Investigation Costs**, but solely with respect to the coverage provided by Coverage C.

(e) "**Securities Claim**" means a **Claim** (including a civil lawsuit or criminal proceeding brought by the Securities & Exchange Commission) made against an **Insured** anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

L/UWR

(1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the **Company**, or

(2) brought by a security holder of the **Company**, whether directly, by class action, or derivatively on the behalf of the **Company**, or otherwise, with respect to such security holder's interest in securities of such **Company**.

(e) "**Settlement Opportunity**" means an **Insurer** recommended settlement that is within the **Policy Aggregate Limit of Liability** or **Separate Limit of Liability**, if any, and that is acceptable to the claimant, provided that the **Insureds** consent to such settlement within thirty (30) days of the date the **Insureds** are first made aware of the **Settlement Opportunity**, or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

(g) "**Wrongful Act**" means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act:

(1) with respect to any **Director or Officer** or **Employee** of the **Company**, by such **Director or Officer** or **Employee** in his or her capacity as such or any matter claimed against such **Director or Officer** or **Employee** solely by reason of his or her status as such;

(2) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(3) with respect to Coverage B(i), by the **Company**.

## 3. EXCLUSIONS

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(a) arising out of, based upon or attributable to the committing of any deliberate criminal, fraudulent or dishonest act or any willful violation of any statute, rule or law by the **Insured**, if any  final adjudication establishes that such deliberate criminal, fraudulent, dishonest act or willful violation of any statute, rule or law was committed;

(b) arising out of, based upon or attributable to payments to an **Insured** of any remuneration without the previous approval of the stockholders of the **Company**, once any such unapproved payments shall be established by  any final adjudication to have been illegal;

(c) alleging, arising out of, based upon, or attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, employment of any individual or any employment practice (including but not limited to wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim);



(d) with respect to serving in a capacity as an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(e) alleging, arising out of, based upon or attributable to, directly or indirectly, any actual or alleged act or omission of an **Individual Insured** serving in his or her capacity as a **Director or Officer** or **Employee** of any entity that is not the **Company** or an **Outside Entity**, or by reason of his or her status as a **Director or Officer** or **Employee** of such other entity;

(f) for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive**, if such **Claim** is brought by the **Outside Entity** or a director, officer, trustee or governor thereof;

(g) alleging, arising out of, based upon or attributable to, directly or indirectly, the purchase by the **Company** of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an **Affiliate** or **Subsidiary** of the **Company**; provided, however, this exclusion shall not apply in the event that within thirty (30) days prior to it becoming an **Affiliate** or **Subsidiary**, the **Named Entity** gives written notice of the transaction to the **Insurer** together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this policy required by the **Insurer** relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have previously been subject to a public offering;

(h) with respect to Coverage B(i) only:

   (1) for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

   (2) alleging, arising out of, based upon or attributable to, directly or indirectly, any actual or alleged contractual liability of any **Insured** under any contract or agreement (either oral or written);

   (3) seeking fines or penalties or non-monetary relief against the **Company**; provided, however, that this subsection (3) shall not apply to any **Securities Claim**;

(i) which is brought by, on behalf of or in the right of, the **Company** or any **Individual Insured** other than an **Employee** who is not a **Director or Officer**; or which is brought by any security holder or member of the **Company**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Individual Insured** of the **Company** or the **Company**; provided, however, this exclusion shall not apply to:

---

**MR CONTRACT**
ENQ/QUO :



(1) any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from a **Claim** that is covered by this policy;

(2) any bankruptcy proceeding by or against a **Company**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Company**, if any;

(3) any **Claim** brought by any past **Director or Officer** of a **Company** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general counsel or risk manager (or equivalent position) of or consultant for a **Company** for at least four (4) years prior to such **Claim** being first made against any person;

(4) any **Claim** brought by a **Director or Officer** of a **Company** formed and operating in a **Foreign Jurisdiction** against such **Company** or any **Director or Officer** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

(5) any **Securities Claim**, provided that such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Company** or any **Director or Officer** of the **Company**; provided, however, solely with respect to this subsection (5), a **Director or Officer** of the **Company** engaging in any protected activity specified in 18 U.S.C. 1514A(a) ("whistleblower" protection pursuant to the Sarbanes-Oxley Act of 2002) or any protected activity specified in any other "whistleblower" protection pursuant to any similar state, local or foreign securities laws shall not be deemed to trigger this exclusion.

Notwithstanding the forgoing exception, this Exclusion (i) shall apply where the actions of any **Director or Officer** of the **Company** includes the filing of any proceeding or voluntarily testifying, voluntarily participating in or voluntarily assisting (other than de minimis assistance) in the filing or prosecution of any proceeding against an **Insured** relating to any violation of any rule or regulation of the Securities and Exchange Commission or any similar provision of any federal, state, local or foreign rule or law relating to fraud against shareholders, other than such actions in connection with a proceeding that is brought by the Securities and Exchange Commission, any similar state, local or foreign regulatory body that regulates securities, or any state, local or foreign law enforcement authority;

(j) alleging, arising out of, based upon or attributable to, directly or indirectly, any **Insured(s)'** performance of or failure to perform professional services for others for a fee, or any act(s), error(s) or omission(s) relating thereto;

(k) for emotional distress, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, that this exclusion shall not apply to any **Securities Claim**; or

(l) alleging, arising out of, based upon or attributable to, directly or indirectly, any public offering of securities by the **Company**, an **Outside Entity** or an **Affiliate** or alleging a purchase or sale of such securities subsequent to such public offering;

provided, however, that this exclusion shall not apply to:

**MR CONTRACT**
ENQ/QUO :

(1)     any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933.   Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the **Named Entity** shall give the **Insurer** written notice of any public offering exempted pursuant to Section 3(b), together with full particulars and as soon as practicable, but not later than thirty (30) days after the effective date of the public offering; or

(2)     any public offering of securities (other than a public offering described in subsection (1) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within thirty (30) days prior to the effective time of such public offering:  (i) the **Named Entity** shall give the **Insurer** written notice of such public offering together with full particulars and underwriting information required thereto, and (ii) the **Named Entity** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage.   Such coverage is also subject to the **Named Entity** paying when due any such additional premium.   In the event the **Company** gives written notice with full particulars and underwriting information pursuant to (i) above, then the **Insurer** must offer a quote for coverage under this subsection (2).

For the purpose of determining the applicability of the foregoing Exclusions 3(a) and 3(b):  (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (2) facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or general counsel (or equivalent positions) of the **Company** shall be imputed only to the **Company**.

### 4.   LIMIT OF LIABILITY

Clause 5 of the General Terms and Conditions is modified to the extent necessary to provide the following:

The maximum limit of the **Insurer's** liability for **Investigation Costs** arising from all **Investigations** combined occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount stated in Item 5(b) of the Declarations (hereinafter, "**Derivative Investigation Sublimit of Liability**").  The **Derivative Investigation Sublimit of Liability** shall be the aggregate limit of the **Insurer's** liability under this policy regardless of the number of such **Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Directors or Officers** subject to such **Investigations**.  Provided, however, that the **Derivative Investigation Sublimit of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** stated in Item 5(a) of the Declarations or any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **Coverage Section** as stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** or any **Separate Limit of Liability** or **Shared Limit of Liability** as stated therein.

### 5.   DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The **Insurer** does not assume any duty to defend.  The **Insureds** shall defend and contest any **Claim** made against them.



**621**
**MIL**

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of any **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**, pursuant to Clause 7 of the General Terms and Conditions. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and negotiation of any settlement of any **Claim**, subject to the provisions of this Clause 5. However, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability** or **Separate Limit of Liability** or **Shared Limit of Liability**, if any, has been exhausted, or after an **Insured's** rejection of a **Settlement Opportunity**.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 5, the **Insurer** shall advance nevertheless, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs**, which have been consented to by the Insurer, in writing, shall be recoverable as **Loss** under the terms of this policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer**, when it has not assumed the defense of a **Claim** pursuant to this Clause 5, shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Loss** is not covered under the terms of this policy.

The **Insurer** shall have the right to fully and effectively associate with the **Company** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including but not limited to negotiating a settlement. The **Company** and the **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require.

In the event the **Insureds** do not consent to the first **Settlement Opportunity**, then, subject to the **Policy Aggregate Limit of Liability** and **Separate Limit of Liability** or **Shared Limit of Liability**, if any, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus Defense Costs incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) 60% of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining 40% of such **Loss** excess of the **Settlement Opportunity Amount** shall be carried by the **Company** and the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing,



**621**
**MIL**

this paragraph shall not apply until the **Settlement Opportunity Amount** exceeds the applicable Retention amount stated in Item 3 of the Declarations.

With respect to: (i) **Defense Costs** jointly incurred by, (ii) any joint settlement entered into by, or (iii) any judgment of joint and several liability against the **Company** and any **Individual Insured** in connection with any **Claim**, there shall be a fair and equitable allocation as between the **Company** and any such **Individual Insured**, taking into account the relative legal and financial exposures and the relative benefits obtained by any such **Individual Insured** and the **Company**, without any presumption that the coverage afforded to the **Individual Insured** shall in any way reduce the allocation to the **Company** which shall not be insured for such allocation. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable Retention amount which the **Insurer** states to be fair and equitable until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

This Clause 5 shall not be applicable to **Costs of Investigation**.

6.   **REPRESENTATIONS AND SEVERABILITY**

In granting coverage under this **Coverage Section**, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete.  All such statements, warranties and representations are the basis for this **Coverage Section** and are to be considered as incorporated into this **Coverage Section**.

The **Insureds** agree that in the event that such statements, warranties and representations are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then this **Coverage Section** shall be void *ab initio* solely with respect to any of the following **Insureds**:

   (a)   solely with respect to **Loss** other than **Non-Indemnifiable Loss**, any **Individual Insured** who knew as of the inception date of the **Policy Period** the facts that were not accurately and completely disclosed in the application;
   (b)   a **Company**, under Clause 1. Insuring Agreements, COVERAGE B(ii), to the extent it indemnifies any **Individual Insured** referenced in (a) above; and
   (c)   a **Company**, under Clause 1. Insuring Agreement, COVERAGE B(i), if any past or present chief executive officer, chief financial officer or general counsel (or any equivalent position) of the **Company** knew as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the application;

whether or not such **Individual Insured** knew that such facts were not accurately and completely disclosed in the application.

Except as provided in (a) through (c) above, no **Individual Insured's** knowledge shall be imputed to any other **Insured**.

L/UWR

Solely with respect to any **Non-Indemnifiable Loss** of any **Individual Insured**, under no circumstances shall the coverage provided by this **Coverage Section** be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of the policy.

## 7.  ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this **Coverage Section**, then the **Insurer** shall in all events:

(a)    first, pay **Loss** for which coverage is provided under Coverage A of this **Coverage Section**; then

(b)    only after payment of **Loss** has been made pursuant to Clause 8(a) above, with respect to whatever remaining amount of the **Policy Aggregate Limit of Liability** or **Separate Limit of Liability** or **Shared Limit of Liability**, if any, is available after such payment, at the written request of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(ii) of this **Coverage Section**; and then

(c)    only after payment of **Loss** has been made pursuant to Clause 7(a) and Clause 7(b) above, with respect to whatever remaining amount of the **Policy Aggregate Limit of Liability** or **Separate Limit of Liability** or **Shared Limit of Liability**, if any, is available after such payment, at the written request of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverages B(i) and C of this **Coverage Section**.

In the event the **Insurer** withholds payment pursuant to Clause 7(b) and/or Clause 7(c) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the **Named Entity** remit such payment to the **Company** or directly to or on behalf of an **Individual Insured**.

The bankruptcy or insolvency of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 7.



**621**
**MIL**

**Financial Institutions Risk Protector**

**EMPLOYMENT PRACTICES LIABILITY
COVERAGE SECTION
("EPL COVERAGE SECTION")**

**Notice: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and
Conditions are incorporated by reference into, made a part of, and are expressly applicable to this
Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and
Conditions or in this Coverage Section.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by
application, including its attachments and the material incorporated therein, which form a part of this policy,
the **Insurer** agrees as follows:

1. **INSURING AGREEMENTS**

   **COVERAGE A.       EMPLOYMENT PRACTICES LIABILITY INSURANCE**

   This policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** first made against such
   **Insured** during the **Policy Period** or **Discovery Period** (if applicable) and reported to the **Insurer**
   pursuant to the terms of this policy for any **Wrongful Act**.  The **Insurer** shall, in accordance with Clause
   5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

   **COVERAGE B.       EMPLOYMENT CRISIS MANAGEMENT INSURANCE**

   This policy shall pay the **Employment Crisis Management Loss** of a **Company** solely with respect to
   an **Employment Crisis** occurring during the **Policy Period** or the **Discovery Period** (if applicable) and
   reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective
   **Employment Crisis Management Fund**, from first dollar; provided that payment of any **Employment
   Crisis Management Loss** under this policy shall not waive any of the **Insurer's** rights under this policy
   or at law. This Coverage B shall apply regardless of whether a **Claim** is ever made against an **Insured**
   arising from such **Employment Crisis** and, in the case where a **Claim** is made, regardless of whether the
   amount is incurred prior to or subsequent to the making of the **Claim**.

   The **Insured** shall notify the **Insurer** of an **Employment Crisis** in accordance with the notice provisions of
   Clause 7 of the General Terms and Conditions.

   No Retention amount is applicable to Coverage B.

**MR CONTRACT**
ENQ/QUO :



## 2. DEFINITIONS

(a) "**Claim**" means:

    (1) a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or

    (2) a civil, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
        (i)    service of a complaint or similar pleading;
        (ii)   return of an indictment (in the case of a criminal proceeding); or
        (iii)  receipt or filing of a notice of charges.

The term **Claim** shall include an Equal Employment Opportunity Commission ("EEOC") (or similar federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

However, in no event shall the term **Claim** include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(b) "**Employment Crisis**" has the meaning as defined in Appendix EP-1 attached to this policy.

(c) "**Employment Crisis Management Fund**" has the meaning as defined in Appendix EP-1 attached to this policy.

(d) "**Employment Crisis Management Loss**" has the meaning as defined in Appendix EP-1 attached to this policy.

(e) "**Individual Insured(s)**" means any **Director or Officer, Outside Entity Executive** or **Employee** of the **Company**.

(f) "**Insured(s)**" means:
    (1)    any **Individual Insured**; and
    (2)    the **Company**.

(g) "**Loss**" means damages (including front pay and back pay), judgments (including pre-judgment and post-judgment interest on that part of any judgment paid under this **Coverage Section**), settlements, **Defense Costs** and **Employment Crisis Management Loss**; however, **Loss** (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (4) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (5) any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person; or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a **Claim**

alleging discrimination or other **Wrongful Act**; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, "**Loss**" shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to Exclusion (a) of this **Coverage Section** and Exclusion (a) of the General Terms and Conditions) punitive, exemplary and multiple damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages. For purposes of such coverage, "applicable law" includes, but is not limited to, the following jurisdictions: (a) where the **Wrongful Act** actually or allegedly took place; (b) where the damages are awarded; (c) where the **Named Entity** resides, is incorporated or has its principal place of business; and (d) where the **Insurer** is incorporated or has its principal place of business.

(h) "**Settlement Opportunity**" means an **Insurer** recommended settlement that is within the **Policy Aggregate Limit of Liability** or **Separate Limit of Liability**, if any, and that is acceptable to the claimant, provided that the **Insureds** consent to such settlement within thirty (30) days of the date the **Insureds** are first made aware of the **Settlement Opportunity**, or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

(i) "**Wrongful Act**" means any actual or alleged:

   (1)   wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;
   (2)   harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise);
   (3)   discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);
   (4)   **Retaliation**;
   (5)   employment-related misrepresentation(s) to an **Employee** or applicant for employment with the **Company**;
   (6)   wrongful failure to employ or promote;
   (7)   employment-related libel, slander, humiliation, defamation or invasion of privacy, including the giving of negative or defamatory statements in connection with an **Employee** reference;
   (8)   wrongful deprivation of career opportunity with the **Company**, wrongful demotion or negligent **Employee** evaluation;
   (9)   wrongful discipline;
   (10)  failure to grant tenure; and
   (11)  with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

L/UWR

but only if the **Wrongful Act(s)** relates to an **Employee(s)**, or applicants for employment, with the **Company** or an **Outside Entity**, whether direct, indirect, intentional or unintentional.

With respect to any customer or client of the **Company**, whether individually or as a class or group, **Wrongful Act** shall mean only any actual or alleged sexual harassment or violation of an individual's civil rights relating to such sexual harassment, whether direct, indirect, intentional or unintentional.

## 3. EXCLUSIONS

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(a) arising out of, based upon or attributable to the committing of any deliberate criminal, fraudulent or dishonest act or any willful violation of any statute, rule or law, if any judgment, final adjudication or any alternative dispute resolution proceeding adverse to the **Insured(s)** establishes that such deliberate criminal, fraudulent, dishonest act or willful violation of any statute, rule or law occurred;

(b) alleging, arising out of, based upon or attributable to, directly or indirectly, any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement; provided, however, that this exclusion shall not apply to the extent any liability does not arise under such express contract or agreement;

(c) with respect to serving in a capacity as an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(d) alleging, arising out of, based upon or attributable to, directly or indirectly, any actual or alleged act or omission of an **Individual Insured** serving in his or her capacity as a **Director or Officer** or **Employee** of any entity that is not the **Company** or an **Outside Entity**, or by reason of his or her status as a **Director or Officer** or **Employee** of such other entity;

(e) for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive,** if such **Claim** is brought by the **Outside Entity** or a director, officer, trustee or governor thereof; or

(f) alleging, arising out of, based upon or attributable to, directly or indirectly, any **Claim** brought by a securities holder of the **Company**, an **Outside Entity** or an **Affiliate** in their capacity as such whether directly, derivatively on behalf of the **Company**, or an **Affiliate**, or by class action.

For the purpose of determining the applicability of the foregoing Exclusion 3(a), the **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.



Clause 3 of this **Coverage Section** and Clause 4 of the General Terms and Conditions shall not be applicable to **Employment Crisis Management Loss**.

## 4.  LIMIT OF LIABILITY

Clause 5 of the General Terms and Conditions is modified to the extent necessary to provide the following:

The maximum limit of the **Insurer's** liability for **Employment Crisis Management Loss** arising from all **Employment Crises** combined occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 5(e) of the Declarations as the **Employment Crisis Management Fund**. The **Employment Crisis Management Fund** shall be the aggregate limit of the **Insurer's** liability under this policy for all **Employment Crises** regardless of the number of **Employment Crises** occurring during the **Policy Period** or the **Discovery Period** (if applicable). The **Employment Crisis Management Fund** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** stated in Item 5(a) of the Declarations of this policy or any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **Coverage Section** as stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** or any **Separate Limit of Liability** or **Shared Limit of Liability** as stated therein.

## 5.  DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of any **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**, pursuant to Clause 7 of the General Terms and Conditions. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and negotiation of any settlement of any **Claim**, subject to the provisions of this Clause 5. However, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability** or **Separate Limit of Liability** or **Shared Limit of Liability**, if any, has been exhausted, or after an **Insured's** rejection of a **Settlement Opportunity**.

L/UWR

**621**
**MIL**

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 5, the **Insurer** shall advance nevertheless, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**.  Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**.  Only those settlements, stipulated judgments and **Defense Costs**, which have been consented to by the **Insurer**, in writing, shall be recoverable as **Loss** under the terms of this policy.  The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer**, when it has not assumed the defense of a **Claim** pursuant to this Clause 5, shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Loss** is not covered under the terms of this policy.

The **Insurer** shall have the right to fully and effectively associate with the **Company** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including but not limited to negotiating a settlement. The **Company** and the **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require.

In the event the **Insureds** do not consent to the first **Settlement Opportunity**, then, subject to the **Policy Aggregate Limit of Liability** and **Separate Limit of Liability** or **Shared Limit of Liability**, if any, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) 60% of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining 40% of such **Loss** excess of the **Settlement Opportunity Amount** shall be carried by the **Company** and the **Insureds** at their own risk and be uninsured.  Notwithstanding the foregoing, this paragraph shall not apply until the **Settlement Opportunity Amount** exceeds the applicable Retention amount stated in Item 3 of the Declarations.

This Clause 5 shall not be applicable to **Employment Crisis Management Loss.**

L/UWR

## APPENDIX EP-1

### EMPLOYMENT CRISIS MANAGEMENT INSURANCE

For the Employment Crisis Management Insurance coverage only, the following Definitions apply:

(a)   **"Allegation"** means any complaint, whether written or verbal, communicated to the **Company's** human   resources department by:

    (i)   an individual who believes that he or she was a victim of the alleged **Wrongful Act;** or

    (ii)   such individual's direct or indirect supervisor, if such supervisor is an **Employee** and such supervisor's conduct is not the subject matter of the alleged **Wrongful Act.**

(b)   **"Discovery"** means either:

    (i)   an observation by any **Senior Executive** or any human resources manager; or

    (ii)   an internal investigation conducted by the **Company,** at the **Company's** own expense, which concludes that there is a reasonable basis to believe that a **Wrongful Act** has occurred.

(c)   **"Employment Crisis"** means an **Allegation, Discovery or Media Report** of a **Wrongful Act,** specifically including, but not limited to, a hostile work environment, which, in the good faith opinion of the **Company's** general counsel (or equivalent position), resulted or is reasonably likely to result, in any:

    (i)   civil action or compliance audit by the EEOC or any similar state agency or commission;
    (ii)   civil or criminal action alleging sexual harassment or conduct by an executive officer;
    (iii)   civil class action;
    (iv)   civil action involving multiple plaintiffs; or
    (v)   civil action by a person alleging retaliatory conduct by an Insured in response to such person's actions or threatened actions as a "whistleblower".

Provided, however, that the term **Employment Crisis** shall not include any:

    (1)   preparing, revising or rewriting of personnel policies or procedures;
    (2)   sensitivity or awareness training;
    (3)   accommodations made by the **Company** pursuant to the Americans With Disabilities Act;
    (4)   **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;
    (5)   pending or prior litigation, or EEOC (other similar foreign, state or local) litigation or proceeding , as of the **Employment Crisis Continuity Date;**
    (6)   **Claim** alleging, arising out of, based upon or attributable to, directly or indirectly, any actual, alleged or threatened discharge, dispersal, release or escape of

L/UWR

**Pollutants** or other hazardous materials; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants** or other hazardous materials; or

(7)      **Claim** alleging, arising out of, based upon or attributable to, directly or indirectly, the hazardous properties of nuclear materials; provided, however, the foregoing shall not apply to any **Employment Crisis** arising from the ownership of, operation of, construction of, management of, planning of, maintenance of or investment in any nuclear facility.

An **Employment Crisis** shall first commence when the **Company's** general counsel first has knowledge of the **Allegation, Discovery** or **Media Report** giving rise to the **Employment Crisis**, and shall conclude at the earliest of: (1) the time when the **Employment Crisis Management Firm** advises the **Company** that the **Employment Crisis** no longer exists; or (2) when the **Employment Crisis Management Fund** has been exhausted.

(d)      **"Employment Crisis Continuity Date"** means the Employment Practices Liability **Continuity Date** set forth in Item 3 of the Declarations.

(e)      **"Employment Crisis Management Firm"** means any public relations firm, media management consultant, investigative firm or law firm hired by the **Company** to perform **Employment Crisis Management Services** in connection with the **Employment Crisis**.

(f)      **"Employment Crisis Management Fund"** means the dollar amount set forth as such in Item 5 of the Declarations.

(g)      **"Employment Crisis Management Loss"** means any of the following amounts incurred during the pendency of the **Employment Crisis**, regardless of whether a **Claim** is ever made against an **Insured** arising from the **Employment Crisis**, and in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

(1)      amounts for which the **Company** is legally liable for the reasonable and necessary fees and expenses incurred by an **Employment Crisis Management Firm** in the performance of **Employment Crisis Management Services** for the **Company** arising from an **Employment Crisis**; and

(2)      amounts for which the **Company** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Company** or the **Employment Crisis Management Firm**, solely in connection with the **Employment Crisis**.

(h)      **"Employment Crisis Management Services"** means those services performed by an **Employment Crisis Management Firm** in advising the **Company** on minimizing potential harm to the **Company** arising from the **Employment Crisis**; including, but not limited to, maintaining and restoring public and employee confidence in the **Company.**

(i)      **"Media Report"** means any of the following publications or reports received in the geographic



L/UWR

area of the **Company:** (i) a daily newspaper of general circulation; (ii) a weekly, monthly or quarterly newsletter or magazine of general circulation; (iii) a newsletter or trade publication applicable to the **Company's** industry; or (iv) a radio or television newscast.

(j)   **"Senior Executive"** means a director or duly appointed or elected corporate officer of the **Company**



**Financial Institutions Risk Protector**

FIDUCIARY LIABILITY INSURANCE
COVERAGE SECTION
("FLI COVERAGE SECTION")

**Notice**: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

**1.   INSURING AGREEMENTS**

(a)   Solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** first made against an **Insured** for any **Wrongful Act** by any such **Insured** or by any employee for whom such **Insured** is legally responsible.

(b)   Solely with respect to **CAP Penalties** and **Delinquent Filer Penalties** assessed against an **Insured**, and **Voluntary Fiduciary Correction Loss** incurred by an **Insured**, during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy shall:

(i)      pay the **CAP Penalties** and **Delinquent Filer Penalties**; and
(ii)     reimburse the **Voluntary Fiduciary Correction Loss**,

of each and every **Insured**, collectively not to exceed the amount of the **Voluntary Compliance Loss Sublimit of Liability**, as defined in Clause 5 of this **Coverage Section**;

The payment of any **Voluntary Compliance Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law, including in the event that a **Voluntary Compliance Loss** results in a **Claim**.

(c)   Solely with respect to **HIPAA Penalties** incurred by an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy shall pay the **HIPAA Penalties** of each and every **Insured**, collectively not to exceed the amount of the **HIPAA Penalties Sublimit of Liability**, as defined in Clause 5 of this **Coverage Section**.

L/UWR

**621**
**MIL**

## 2. DEFENSE AGREEMENT

### (a) INSURER'S DUTY TO DEFEND

Except as hereinafter stated, the **Insurer** shall have both the right and duty to defend any **Claim** against an **Insured** alleging a **Wrongful Act**, even if such **Claim** is groundless, false or fraudulent.

The **Insured** shall have the right to effectively associate with the **Insurer** in the defense of any **Claim**, including, but not limited to, negotiating a settlement, subject to the provisions of this clause. However, the **Insurer** shall not be obligated to defend any **Claim** after the **Policy Aggregate Limit of Liability** or any **Separate Limit of Liability** or **Shared Limit of Liability** has been exhausted, or pursuant to subparagraph (b) below, after the rejection of a settlement offer.

### (b) GENERAL PROVISIONS (applicable to (a) above)

The **Insurer** shall advance **Defense Costs** prior to the final disposition of a **Claim**, subject to the other provisions of this policy. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

The **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this policy.

The **Insureds** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require. The **Insurer** may make any settlement of any **Claim** it deems expedient with respect to any **Insured** subject to such **Insured's** written consent. If any **Insured** withholds consent to such settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** (herein, the "**Settlement Opportunity Amount**"), plus (2) 60% of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining 40% of such **Loss** excess of the **Settlement Opportunity Amount** shall be carried by the **Insureds** at their own risk and be uninsured.

## 3. DEFINITIONS

(a) "**Administrator**" means an **Insured** with respect to any **Wrongful Act** described in subparagraph (2) of the definition of "**Wrongful Act**" in this **Coverage Section**.

(b) "**Benefits**" means any obligation under a **Plan** to a participant or beneficiary under a **Plan** which is a payment of money or property, or the grant of a privilege, right, option or perquisite.

(c) "**Breach of Fiduciary Duty**" means a violation of the responsibilities, obligations or duties imposed upon **Insureds** by ERISA.



L/UWR

(d) "**CAP Penalties**" means fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees assessed against or collected from an **Insured** by the Internal Revenue Service ("**IRS**") pursuant to a written agreement to correct an inadvertent **Plan** defect under an Employee Plans Compliance Resolution System, provided that such agreement to correct such **Plan** defect was entered into in writing by the **Insured** with the **IRS** during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal).

(e) "**Claim**" means:

  (1) a written demand for monetary, non-monetary or injunctive relief; or
  (2) a civil, criminal or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:
    (i)   service of a complaint or similar pleading; or
    (ii)  return of an indictment (in the case of a criminal proceeding); or
    (iii) receipt or filing of a notice of charges; or
  (3) a formal agency adjudicative proceeding anywhere in the world to which an **Insured** is subject.

(f) "**Consulting Fees**" means fees charged by a third party actuary, benefits consultant or accountant resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs or expenses associated with: (i) a **Plan** audit; or (ii) identifying, finding or assessing such **Breach of Fiduciary Duty**.

(g) "**Defense Expenses**" means reasonable and necessary attorney's fees, costs or expenses consented to in writing by the **Insurer** resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs and expenses associated with finding or assessing such **Breach of Fiduciary Duty** and any compensation of **Individual Insureds** or employees of an **Insured**.

(h) "**Delinquent Filer Penalties**" means penalties assessed by the U.S. Department of Labor or the **IRS** under a Delinquent Filer Voluntary Compliance Program for inadvertent failure to file Form 5500, provided that the failure to file such Form 5500 occurred during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal).

(i) "**Employee Benefit Law**" means **ERISA** or any similar common or statutory law of the United States, Canada or any state or other jurisdiction anywhere in the world to which a **Plan** is subject.

  (1) Solely with respect to paragraph (2) of the definition of **Wrongful Act**, **Employee Benefit Law** shall also include Part 164 of the regulations under the Health Insurance Portability and Accountability Act of 1996, unemployment insurance, Social Security, government-mandated disability benefits or similar law.
  (2) In no event shall **Employee Benefit Law**, other than as set forth in paragraph (1) of this definition of **Employee Benefit Law**, include any law concerning worker's compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

(j)  "**ERISA**" means the Employee Retirement Income Security Act of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, Health Insurance Portability and Accountability Act of 1996 as it relates to Sections 102(b) and 104(b)(1) of **ERISA**, the Newborns' and Mothers' Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998), and including any amendment or revision thereto.

(k)  "**ESOP**" means any employee stock ownership plan as defined in **ERISA**, or any other **Plan** under which investments are made primarily in securities of or issued by (i) the **Company**, (ii) the parent of the **Company**, (iii)  any acquired **Subsidiary**, or (iv) any parent of any acquired **Subsidiary**, or whose assets at any time within twelve months prior to the inception date of this policy were comprised of 10% or more of securities of the **Company**, the parent of the **Company**, any acquired **Subsidiary**, or any parent of any acquired **Subsidiary**.

(l)  "**Fiduciary**" means a fiduciary as defined in any applicable **Employee Benefit Law** with respect to a **Plan**, or a person or entity who exercises discretionary control respecting the management of a **Plan** or the disposition of its assets.

(m) "**HIPAA Penalties**" means civil money penalties imposed upon an **Insured** for violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996.

(n)  "**Individual Insured**" means any past, present or future natural person director, officer or employee of the **Company** or, if applicable, of a **Plan**, and as to all of the above, in his or her capacity as a **Fiduciary**, **Administrator** or trustee of a **Plan**.

(o)  "**Insured(s)**" means:

> (1)  any **Individual Insured**;
> (2)  any **Plan(s)**;
> (3)  the **Company**; and
> (4)  any other person or entity in his, her or its capacity as a **Fiduciary, Administrator** or trustee of a **Plan** who is included in the definition of "**Insured**" by specific written endorsement attached to this policy.

(p)  "**Loss**" means damages, judgments (including pre and post-judgment interest on that part of any judgment paid under this **Coverage Section**), settlements and **Defense Costs**; however, **Loss** (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties imposed by law, except (i) to the extent set forth in Item 5(f) of the Declarations for **Voluntary Compliance Loss**, (ii) **UK Fines and Penalties**, (iii) the five percent (5%) or less civil penalty imposed upon an **Insured** under Section 502(i) of **ERISA**, (iv) the twenty percent (20%) or less penalty imposed upon an **Insured** under Section 502(l) of **ERISA**, with respect to covered settlements or judgments under this **Coverage Section**, and (v) to the extent set forth in Item 5(g) of the Declarations for **HIPAA Penalties**; (2) the multiplied portion of multiplied damages; (3) taxes or tax penalties; (4) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**; (5) **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Individual Insured**; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

Where permitted by law, **Loss** shall include punitive or exemplary damages imposed upon any **Insured**, subject to the policy's other terms, conditions and exclusions, including but not limited to Exclusion (a) of this Coverage Section and Exclusion (a) of the General Terms and Conditions.

**Loss** shall include **Voluntary Compliance Loss** and **HIPAA Penalties**.

(q) "**Non-Qualified Plan**" means any of the following plans for a select group of management or highly compensated directors, officers and/or employees: deferred compensation plan, supplemental executive retirement plan, top-hat plan or excess benefit plan.

(r) "**Plan**" means:

    (i) any **Non-Qualified Plan**; or

    (ii) any payroll deduction IRA (Individual Retirement Account), SEP (Simplified Employee Pension Plan), SARSEP (Salary Reduction Simplified Employee Pension Plan) or SIMPLE IRA (Savings Incentive Match Plan for Employees), established or administered by the **Company**, solely for the benefit of the employees and/or the **Directors or Officers**; or

    (iii) any plan as defined under **Employee Benefit Law**, other than a **Non-Qualified Plan**, which is:

        (1) a welfare plan, as defined under **Employee Benefit Law** which was, is now, or hereinafter becomes sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the employees and/or the **Director(s) or Officer(s)** of the **Company**;

        (2) a pension plan as defined under **Employee Benefit Law** (other than an **ESOP** or stock option plan) which was, on or prior to the inception date of the policy, sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the employees and/or the **Director(s) or Officer(s)** of the **Company**, provided that at any time prior to the inception date of this policy such plan has been reported in writing to the **Insurer** by the **Named Entity** pursuant to the terms of the application for this policy, or any prior policy or its application issued by the **Insurer** and the **Named Entity** shall have paid any required premium relating to such plan;

        (3) subject to the requirements of sub-paragraphs (1) and (2) above, any pension or welfare plan that was sold, spun-off or terminated during or prior to the inception date of this policy, but solely with respect to **Wrongful Acts** that occurred prior to the date of such sale or spin-off, or in the case of a terminated plan, prior to the final date of asset distribution of such plan, provided that notice of such sale, spin-off or termination is provided to the **Insurer** before the end of the **Policy Period**;

        (4) a pension plan as defined in **Employee Benefit Law** (other than an **ESOP** or stock option plan) which:

            (a) is acquired during the **Policy Period** as a result of the **Company's** acquisition of a **Subsidiary** whose assets total more than 25% of the total consolidated assets of the **Company** as of the inception date of this policy; or

L/UWR

       (b)    is acquired during the **Policy Period** and such plan's assets total more than 25% of the total consolidated assets of all covered pension plans as of the inception date of this policy, or

       (c)    is created during the Policy Period,

    but only upon the condition that within ninety (90) days of its acquisition or creation, the **Named Entity** shall have provided the **Insurer** with a completed application for such new plan and agreed to any additional premium or amendment of the provisions of the policy required by the **Insurer** relating to such new plan;

  (5)    a pension plan which, during or prior to the **Policy Period** of this policy, has been merged into or consolidated with a pension plan for which coverage is afforded under this policy; and

  (6)    (i)    a plan which is both a welfare plan and a pension plan as defined in **Employee Benefit Law** (other than an **ESOP** or stock option plan) subject to the requirements of this Definition (r);

       (ii)    the following government-mandated programs: unemployment insurance, Social Security or disability benefits, solely with respect to a **Wrongful Act** defined in subparagraph (2) of the definition of "**Wrongful Act**" in this **Coverage Section**;

       (iii)   any other plan, fund or program, including an **ESOP**, which is included in the definition of "**Plan**" by specific written endorsement attached to this policy.

Notwithstanding the foregoing, the term "**Plan**" shall not include any multiemployer plan as defined under any **Employee Benefit Law**.

(s) "**UK Fines and Penalties**" means civil fines and penalties assessed against an **Insured** by either the Pensions Ombudsman appointed by the Secretary of State for Social Services in the United Kingdom or by the Pensions Regulator in the United Kingdom or any successor body thereto, subject to the other terms, conditions and exclusions of the policy.

(t) "**Voluntary Compliance Loss**" means **CAP Penalties**, **Delinquent Filer Penalties** and **Voluntary Fiduciary Correction Loss**.

(u) "**Voluntary Fiduciary Correction Loss**" means damages, **Defense Expenses** and **Consulting Fees** incurred in connection with the U.S. Department of Labor's ("**DOL**") Voluntary Fiduciary Correction Program as set forth in the Federal Register, resulting from an inadvertent **Breach of Fiduciary Duty** occurring during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal), provided that such compliance with the **DOL's** Voluntary Fiduciary Correction Program results in the **Insured** obtaining a "No Action" letter from the **DOL**; however, **Voluntary Fiduciary Correction Loss** shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes or tax penalties; (5) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**; (6) **Benefits**, or that portion of damages equal to such **Benefits**; (7) matters of which the **Insured** had knowledge prior to the inception date of this policy or the first policy issued by the **Insurer** to the **Named Entity** of which this policy is a continuous renewal; or (8) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

L/UWR

**621
MIL**

(v)  "**Wrongful Act**" means:

    (1)  as respects an **Insured**: a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, but only with respect to a **Plan**; and

    (2)  as respects an **Administrator**, any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a **Plan**:
        (i)  counseling employees, participants and beneficiaries; or
        (ii)  providing interpretations; or
        (iii)  handling of records; or
        (iv)  activities effecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan,**
    or any matter claimed against an **Insured** solely by reason of his, her or its status as an **Administrator**, but only with respect to a **Plan**;

    (3)  as respects an **Individual Insured**, any matter claimed against him or her arising out of his or her service as a **Fiduciary** or **Administrator** of any multiemployer plan as defined by **ERISA**, but only if such service is at the specific written request or direction of the **Company** and such multiemployer plan is added by specific written endorsement attached to this policy, identified as a multiemployer plan and any required premium is paid.  In no event shall coverage under this policy extend to a **Claim** against a multiemployer plan itself, its contributing employer(s) or any other fiduciaries or administrators of such plan, other than an **Individual Insured**.

## 4.  EXCLUSIONS

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

    (a)  arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act, or knowing or willful violation of any statute, rule or law, including, but not limited to **Employee Benefit Law** if a judgment or final adjudication or an alternative dispute resolution proceeding adverse to the **Insured(s)** establishes such criminal or deliberate fraudulent act, or knowing or willful violation of any statute, rule or law, including but not limited to **Employee Benefit Law**;

    (b)  for discrimination in violation of any law, except that this exclusion shall not apply to discrimination in violation of **Employee Benefit Law**;

    (c)  for failure to fund a **Plan** in accordance with **Employee Benefit Law** or the **Plan** instrument or the failure to collect contributions owed to the **Plan**; except that this exclusion shall not apply to **Defense Costs**;

    (d)  alleging, arising out of, based upon or attributable to any act or omission in his, her or its capacity as a **Fiduciary** or **Administrator** of any plan, fund or program, other than a **Plan** as defined in this policy, or by reason of his, her or its status as a **Fiduciary** or **Administrator** of such other plan, fund or program;



(e) for emotional distress of any person; except that this exclusion shall not apply to **Defense Costs** incurred in the defense of a **Claim** for **Breach of Fiduciary Duty**; or

(f) alleging, arising out of, based upon or attributable to any **Wrongful Act** as respects the **Plan** taking place at any time when the **Company** did not sponsor such **Plan** or when the **Individual Insured** was not a **Fiduciary**, **Administrator**, trustee, **Director(s) or Officer(s)**, or employee of the **Company** or if applicable, a **Plan**.

For the purpose of determining the applicability of the foregoing Exclusion 4(a), the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**.

5.  **LIMIT OF LIABILITY**

Clause 5 of the General Terms and Conditions is modified to the extent necessary to provide the following:

The maximum limit of the **Insurer's** liability for all **Voluntary Compliance Loss** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 5(f) of the Declarations ("**Voluntary Compliance Loss Sublimit of Liability**"). The **Voluntary Compliance Loss Sublimit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** stated in Item 5(a) of the Declarations of this policy or any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **Coverage Section** as stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** or any **Separate Limit of Liability** or **Shared Limit of Liability** as stated therein.

The maximum limit of the **Insurer's** liability for all **HIPAA Penalties** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 5(g) of the Declarations ("**HIPAA Penalties Sublimit of Liability**"). The **HIPAA Penalties Sublimit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** stated in Item 5(a) of the Declarations of this policy and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **Coverage Section** as stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** or any **Separate Limit of Liability** or **Shared Limit of Liability** as stated therein.



**621
MIL**

### Financial Institutions Risk Protector

INSURANCE COMPANY LIABILITY
("ICL COVERAGE SECTION")

**Notice**: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

1. **INSURING AGREEMENT**

   This policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** or **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** of the **Insured** in the rendering of or failure to render **Professional Services**. The **Insurer** shall, in accordance with Clause 4 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

2. **DEFINITIONS**

   (a) "**Claim**" means:
       (1) a written demand for monetary relief; or
       (2) a civil, administrative or arbitration proceeding for monetary relief which is commenced by:
           (i)  service of a complaint or similar pleading; or
           (ii) receipt or filing of a notice of charges.

   (b) "**Individual Insured**" means any **Director or Officer** or **Employee** of the **Company**.

   (c) "**Insured**" means:
           (i)  any **Individual Insured**; and
           (ii) the **Company**.

   (d) "**Loss**" means damages, judgments (including pre-judgment and post-judgment interest on that part of any judgment paid under this **Coverage Section**), settlements and any **Defense Costs**; provided, however, that **Loss** (other than **Defense Costs**) shall not include: (1) civil fines or penalties; (2)taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any liability or cost incurred by any **Insured** in complying with any judgment, award or settlement for non-monetary relief; (6) any amounts for which the **Insured** is or is alleged to be liable under any insurance or reinsurance policy, contract, treaty, binder, slip, certificate, cover note, agreement, suretyship, endorsement, endowment or annuity; (7) any amounts for which the **Insured** is entitled to indemnity and/or payment under any other insurance or reinsurance contract; (8) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**; or (9)

**MR CONTRACT**
ENQ/QUO :



Case 8:21-cv-00370-TPB-AEP   Document 147-14   Filed 05/16/23   Page 57 of 109 PageID 4906

**621
MIL**

matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to Exclusions (a) and (b) of this **Coverage Section** and Exclusion (a) of the General Terms and Conditions) punitive or exemplary damages and the multiplied portion of multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive and exemplary damages. For purposes of such coverage, "applicable law" includes, but is not limited to, the following jurisdictions: (a) where the **Wrongful Act** actually or allegedly took place; (b) where the damages are awarded; (c) where the **Named Entity** resides, is incorporated or has its principal place of business; and (d) where the **Insurer** is incorporated or has its principal place of business.

(e) "**Professional Services**" means services rendered or required to be rendered solely in the conduct of the **Insured's** claims handling and adjusting, risk management, safety engineering, safety inspections and loss control operations, salvage operations, recovery subrogation services, premium financing operations, or actuarial consulting services.

(f) "**Wrongful Act**" means:
    (1) with respect to **Directors or Officers** and **Employees**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Insureds** in their respective capacities as such, or any matter claimed against such **Insured** solely by reason of their status as **Directors or Officers** or **Employees**; or

    (2) with respect to the **Company**, any actual or alleged breach of duty, neglect, error, misstatement, omission or act by the **Company**.

**3.  EXCLUSIONS**
In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(a) alleging, arising out of, based upon or attributable to any criminal act;

(b) alleging, arising out of, based upon or attributable to any dishonest or fraudulent act or omission; provided, however, that this exclusion shall not apply to any **Claim** seeking both compensatory and punitive damages based upon or arising out of allegations of both fraud and bad faith in the rendering of or failure to render **Professional Services**;

(c) alleging, arising out of, based upon or attributable to, directly or indirectly, (1) false arrest, detention or imprisonment; (2) libel, slander, disparagement, defamation or violation of the right of privacy; (3) wrongful entry or eviction, or invasion of any right of private occupancy; (4) discrimination; or (5) emotional distress or mental anguish of any person;

L/UWR

(d) brought by, on the behalf of or in the right of any **Insured**; provided, however, that this exclusion shall not apply to a **Claim** by any **Insured** in its capacity as a policyholder or customer or client of the **Company**;

(e) alleging, arising out of, based upon or attributable to, directly or indirectly, premiums, return premiums, commissions or tax monies, or arising out of any commingling of funds;

(f) alleging, arising out of, based upon or attributable to, directly or indirectly, any allegations that any **Insured** intentionally or negligently permitted, or aided or abetted others in using, was aware of others using, or was a participant or connected in any way in the use of an agreement or other arrangement between an insurance broker or insurance agent and an insurance carrier involving the payment of increased fees, commissions or other compensation based on the volume, profitability or type of business referred to the insurance carrier, whether referred to as a Market Placement Agreement, Market Service Agreement, Placement Services Agreement or Contingent Commission Agreement or similar agreement or arrangement, however named.

This policy shall exclude such **Loss** regardless of the form, style, or denomination of any such **Claim**, regardless of whether the **Claim** is criminal, administrative or civil, and shall specifically apply but not be limited to **Claims** alleging bid rigging, bribes or kickbacks, schemes to provide fictitious quotes, conflict of interest, breach of contract, failure to supervise, negligent supervision or negligence of any contract, controlling person liability, breach of fiduciary duty, personal profiting, improper, undisclosed or unlawful fees, commissions or charges of any kind, criminal activity, market manipulation, violation of any law related to the insurance industry, misrepresentation, estoppel or repudiation of any commitment and any other theory of liability;

(g) alleging, arising out of, based upon or attributable to, directly or indirectly, claim reserves;

(h) alleging, arising out of, based upon or attributable to, directly or indirectly, any warranties or guaranties, estimates of probable construction costs, or costs exceeding estimates made in connection with **Professional Services**;

(i) brought by any pool, association or syndicate (including any officer, director or employee thereof) in which any of the **Insureds** are participants, or by any participant (including any officer, director or employee thereof) in any such pool, association or syndicate involving the business or operations of such pool, association or syndicate;

(j) alleging, arising out of, based upon or attributable to, directly or indirectly, the bankruptcy, insolvency, receivership, liquidation or inability of any **Insured** to pay claims or perform **Professional Services**;

(k) alleging, arising out of, based upon or attributable to, directly or indirectly, the performance of or failure to perform services for any person or entity:

   (1) which is owned by or controlled by any **Insured**; or

**MR CONTRACT**
ENQ/QUO :



**621**
**MIL**

(2) which owns or controls any **Insured**; or,

(3) which is affiliated with any **Insured** through any common ownership or control;

(l) alleging, arising out of, based upon or attributable to, directly or indirectly, the actual or alleged harmful properties of asbestos;

(m) brought by any reinsurer of any **Insured**;

(n) alleging, arising out of, based upon or attributable to, directly or indirectly, the underwriting, marketing or selling of any insurance policy or annuity, or any other insurance or investment product;

(o) alleging, arising out of, based upon or attributable to, directly or indirectly, infringement of any patent, copyright or trademark, or servicemark;

(p) alleging, arising out of, based upon or attributable to, directly or indirectly, any allegations that any **Insured** intentionally or negligently permitted, or aided or abetted others in using, was aware of others using, or was a participant or connected in any way in the use of a finite risk reinsurance agreement, transaction or arrangement, or financial reinsurance agreement, transaction, or arrangement, including but not limited to, any agreement, transaction or arrangement involving aggregate stop loss covers, finite quota shares, funded catastrophe contracts, loss portfolio transfers and adverse loss development covers, or any other similar agreement, transaction or arrangement, however named.

This policy shall exclude such **Loss** regardless of the form, style, or denomination of any such **Claim**, regardless of whether the **Claim** is criminal, administrative or civil, and shall specifically apply but not be limited to any **Claim** alleging failure to supervise, negligent supervision or negligence of any contract, improper revenue or expense recognition or improper accounting of any kind, securities violations, fraud, breach of fiduciary duty, personal profiting, improper, undisclosed or unlawful fees, commissions or charges of any kind, criminal activity, market manipulation, violation of any law related to the insurance industry, misrepresentation, or any other theory of liability; or

(q) for any actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships; provided, however, this exclusion shall not apply to any **Non-Indemnifiable Loss**.

For the purpose of determining the applicability of the foregoing Exclusions 3(a) and 3(b): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (2) facts pertaining to and knowledge possessed by any **Individual Insured** shall be imputed only to the **Company**.

**MR CONTRACT**
ENQ/QUO :



**4. DEFENSE COSTS, SETTLEMENTS AND JUDGMENTS (INCLUDING ADVANCEMENT OF DEFENSE COSTS)**

(1) The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insurer** may, in its absolute discretion, assume the defense and/or investigation of any **Claim** for which reasonable grounds exist for possible involvement of the **Insurer**. In such an event, the **Insured** shall promptly reimburse the **Insurer** for those **Defense Costs** incurred by the **Insurer** to the extent of the Retention amount, or which the **Insureds** are not otherwise entitled under the terms and conditions of this policy to payment of such **Loss**. In no event will the **Insurer** have the obligation to continue to defend any **Claim** (if it has assumed the defense pursuant to this paragraph) once the **Policy Aggregate Limit of Liability** stated in Item 5(a) of the Declarations or any **Separate Limit of Liability** or **Shared Limit of Liability** stated in Item 3 of the Declarations has been exhausted.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 4, the **Insurer** shall advance nevertheless, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

(2) In the event that the **Insurer** does not assume the defense and/or investigation of a **Claim** pursuant to paragraph (1) above, it shall nevertheless have the right to fully and effectively associate with the **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including but not limited to negotiating a settlement. The **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require.

(3) Neither the **Insurer** nor the **Insured** shall admit or assume any liability, enter into any settlement, stipulate to any judgment or incur any **Defense Costs** without the prior written consent of the other; however, if the **Insurer** recommends settlement of a **Claim** which is agreeable to the claimant and the **Insured** refuses, then the **Insurer's** liability for **Loss** shall be fixed at the amount so recommended together with such **Defense Costs** incurred as of the date the recommendation was made, and shall withdraw from the defense of the **Claim** (if it has assumed the **Insured's** defense). Only those settlements, stipulated judgments and **Defense Costs**, which have been consented to by the **Insurer**, in writing, shall be recoverable as **Loss** under the terms of this policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer**, when it has not assumed the defense of a Claim **pursuant** to this Clause 4, shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such loss is not covered under the terms of this policy.

**MR CONTRACT**
ENQ/QUO :



**621**
**MIL**

### ENDORSEMENTS

<u>**U.S.A.**</u>

#### NUCLEAR INCIDENT EXCLUSION CLAUSE - LIABILITY - DIRECT (BROAD)
*(Approved by Lloyd's Underwriters'Non-Marine Association)*

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:-*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability). not being insurances of the classifications to which the Nuclear Incident Exclusion Clause - Liability - Direct (Limited) applies.*

This policy\*

does not apply:-

I.    Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

---

**MR CONTRACT**
ENQ/QUO :



Case 8:21-cv-00370-TPB-AEP    Document 147-14    Filed 05/16/23    Page 62 of 109 PageID 4911

**621**
**MIL**

    (b)    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c)    the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

    **"hazardous properties"** include radioactive, toxic or explosive properties; **"nuclear material"** means source material, special nuclear material or byproduct material; **"source material", "special nuclear material",** and **"byproduct material"** have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiations in a nuclear reactor; **"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; **"nuclear facility"** means

    (a)    any nuclear reactor,

    (b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams or uranium 235,

    (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

    With respect to injury to or destruction of property, with word **"injury"** or **"destruction"** includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.



**621
MIL**

**PROGRAMMES**
**UMR / POLICY No. B0621PANCH001718**

\* NOTE:- As respect policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
N.M.A. 1256

**MR CONTRACT**
ENQ/QUO :



<u>**U.S.A.**</u>

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - LIABILITY - DIRECT
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause - Liability - Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
N.M.A. 1477

**621**
**MIL**

### WAR AND CIVIL WAR EXCLUSION CLAUSE

(Approved by Lloyd's Underwriters' Non-Marine Association)

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

1/1/38
NMA 464

**MR CONTRACT**
ENQ/QUO :

L/UWR

**621
MIL**

### PREMIUM PAYMENT CLAUSE

Notwithstanding any provision to the contrary within this contract or any endorsement hereto, in respect of non payment of premium only the following clause will apply.

The (Re)Insured undertakes that premium will be paid in full to (Re)Insurers within 60 days of inception of this contract (or, in respect of instalment premiums, when due).

If the premium due under this contract has not been so paid to (Re)Insurers by the 60th day from the inception of this contract (and, in respect of instalment premiums, by the date they are due) (Re)Insurers shall have the right to cancel this contract by notifying the (Re)Insured via the broker in writing. In the event of cancellation, premium is due to (Re)Insurers on a pro rata basis for the period that (Re)Insurers are on risk but the full contract premium shall be payable to (Re)Insurers in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this contract.

It is agreed that (Re)Insurers shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker. If premium due is paid in full to (Re)Insurers before the notice period expires, notice of cancellation shall automatically be revoked. If not, the contract shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

30/09/08
LSW3001

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

### SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

Mendes & Mount LLP
750 Seventh Avenue, New York, NY 10019

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA 1998 (24/4/86)

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

### SHORT RATE CANCELLATION TABLE

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the Insured the Earned Premium shall be computed as follows:-

A.      For insurances written for one year:-

| Days Insurance in Force | | Percent of One Year Premium | Days Insurance in Force | | Percent of One Year Premium |
|---|---|---|---|---|---|
| 1 - 54 | ............................ | 25 | 192 - 196 | ............................ | 63 |
| 55 - 58 | ............................ | 26 | 197 - 200 | ............................ | 64 |
| 59 - 62 | (2 months)........ | 27 | 201 - 205 | ............................ | 65 |
| 63 - 65 | ............................ | 28 | 206 - 209 | ............................ | 66 |
| 66 - 69 | ............................ | 29 | 210 - 214 | (7 months) ...... | 67 |
| 70 - 73 | ............................ | 30 | 215 - 218 | ............................ | 68 |
| 74 - 76 | ............................ | 31 | 219 - 223 | ............................ | 69 |
| 77 - 80 | ............................ | 32 | 224 - 228 | ............................ | 70 |
| 81 - 83 | ............................ | 33 | 229 - 232 | ............................ | 71 |
| 84 - 87 | ............................ | 34 | 233 - 237 | ............................ | 72 |
| 88 - 91 | (3 months) ...... | 35 | 238 - 241 | ............................ | 73 |
| 92 - 94 | ............................ | 36 | 242 - 246 | (8 months) ...... | 74 |
| 95 - 98 | ............................ | 37 | 247 - 250 | ............................ | 75 |
| 99 - 102 | ............................ | 38 | 251 - 255 | ............................ | 76 |
| 103 - 105 | ............................ | 39 | 256 - 260 | ............................ | 77 |
| 106 - 109 | ............................ | 40 | 261 - 264 | ............................ | 78 |

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

| | | | | | | |
|---|---|---|---|---|---|---|
| 110 - 113 | ........................... | 41 | 265 - 269 | ........................... | 79 |
| 114 - 116 | ........................... | 42 | 270 - 273 | (9 months) ....... | 80 |
| 117 - 120 | ........................... | 43 | 274 - 278 | ........................... | 81 |
| 121 - 124 | (4 months) ...... | 44 | 279 - 282 | ........................... | 82 |
| 125 - 127 | ........................... | 45 | 283 - 287 | ........................... | 83 |
| 128 - 131 | ........................... | 46 | 288 - 291 | ........................... | 84 |
| 132 - 135 | ........................... | 47 | 292 - 296 | ........................... | 85 |
| 136 - 138 | ........................... | 48 | 297 - 301 | ........................... | 86 |
| 139 - 142 | ........................... | 49 | 302 - 305 | (10 months) ..... | 87 |
| 143 - 146 | ........................... | 50 | 306 - 310 | ........................... | 88 |
| 147 - 149 | ........................... | 51 | 311 - 314 | ........................... | 89 |
| 150 - 153 | (5 months) ...... | 52 | 315 - 319 | ........................... | 90 |
| 154 - 156 | ........................... | 53 | 320 - 323 | ........................... | 91 |
| 157 - 160 | ........................... | 54 | 324 - 328 | ........................... | 92 |
| 161 - 164 | ........................... | 55 | 329 - 332 | ........................... | 93 |
| 165 - 167 | ........................... | 56 | 333 - 337 | (11months)...... | 94 |
| 168 - 171 | ........................... | 57 | 338 - 342 | ........................... | 95 |
| 172 - 175 | ........................... | 58 | 343 - 346 | ........................... | 96 |
| 176 - 178 | ........................... | 59 | 347 - 351 | ........................... | 97 |
| 179 - 182 | (6 months) ....... | 60 | 352 - 355 | ........................... | 98 |
| 183 - 187 | ........................... | 61 | 356 - 360 | ........................... | 99 |
| 188 - 191 | ........................... | 62 | 361 - 365 | (12 months) ... | 100 |

B.  For Insurances written for more or less than one year:-

**MR CONTRACT**
ENQ/QUO :



1. If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2. If insurance has been in force for more than 12 months:

   (a)    Determine full annual premium as for an insurance written for a term of one year.

   (b)    Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

   (c)    Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Insurance, such total premium to be deemed earned upon inception of the Policy if any claim or any circumstance that could reasonably be the basis for a claim is reported to Underwriters under this Insurance on or before such date of cancellation.

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

## PRIOR AND PENDING LITIGATION EXCLUSION

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the **Insurers** shall not make any payment under this Policy in connection with or resulting from any written demand, suit or other proceeding pending, or order, decree or judgement entered, against any **Insureds** prior to

| | |
|---|---|
| Directors and Officers: | 31st August 2010 |
| Employment Practices Liability: | 25th June 1995 |
| Fiduciary: | 1st January 2015 |
| Insurance Company Liability: | 6th November 2014 |

or any act, fact, circumstance or situation underlying or alleged therein.

**MR CONTRACT**
Enq/Quo :

L/UWR

**621
MIL**

### LIBERALIZATION CLAUSE

This endorsement modifies insurance provided under the following:

**INSURANCE COMPANY MODULAR LIABILITY POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that the **Insureds** shall receive the benefit of the broadest terms of this Policy or expiring policy number 50003400116 issued by Underwriters, except in relation to the **Policy Period**, the **Optional Extension Period**, the Limit of Liability and the Retentions of this Policy or with respect to any limitation in any Endorsement attaching to this Policy.

The Underwriters shall not be obligated to issue this Endorsement on any renewal of this Policy.

All other terms and conditions of this Policy remain unchanged.

01/14
LSW4037

**MR CONTRACT**
ENQ/QUO :



### PLAN DEFINITION ENDORSEMENT

FIDUCIARY LIABILITY coverage section 3. Definitions (r) is deleted and replaced by the following:

FIDUCIARY LIABILITY coverage section

(r) "**Plan**" means:

    (j)   any **Non-Qualified Plan**; or

    (ii)  any payroll deduction IRA (Individual Retirement Account), SEP (Simplified Employee Pension Plan), SARSEP (Salary Reduction Simplified Employee Pension Plan) or SIMPLE IRA (Savings Incentive Match Plan for Employees), established or administered by the **Company**, solely or jointly for the benefit of the employees and/or the **Directors or Officers**; or

    (iii)  any plan as defined under **Employee Benefit Law**, other than a **Non-Qualified Plan**, which is:

        (1)  a welfare plan, as defined under **Employee Benefit Law** which was, is now, or hereinafter becomes sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the employees and/or the **Director(s) or Officer(s)** of the **Company**;

        (2)  a pension plan as defined under **Employee Benefit Law** (other than an **ESOP** or stock option plan) which was, on or prior to the inception date of the policy, sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the employees and/or the **Director(s) or Officer(s)** of the **Company**, provided that at any time prior to the inception date of this policy such plan has been reported in writing to the **Insurer** by the **Named Entity** pursuant to the terms of the application for this policy, or any prior policy or its application issued by the **Insurer** and the **Named Entity** shall have paid any required premium relating to such plan;

        (3)  subject to the requirements of sub-paragraphs (1) and (2) above, any pension or welfare plan that was sold, spun-off or terminated during or prior to the inception date of this policy, but solely with respect to **Wrongful Acts** that occurred prior to the date of such sale or spin-off, or in the case of a terminated plan, prior to the final date of asset distribution of such plan, provided that notice of such sale, spin-off or termination is provided to the **Insurer** before the end of the **Policy Period**;

        (4)  a pension plan as defined in **Employee Benefit Law** (other than an **ESOP** or stock option plan) which:
            (a)  is acquired during the **Policy Period** as a result of the **Company's** acquisition of a **Subsidiary** whose assets total more than 25% of the total consolidated assets of the **Company** as of the inception date of this policy; or

**MR CONTRACT**
ENQ/QUO :



    (b)    is acquired during the **Policy Period** and such plan's assets total more than 25% of the total consolidated assets of all covered pension plans as of the inception date of this policy, or

    (c)    is created during the Policy Period, but only upon the condition that within ninety (90) days of its acquisition or creation, the **Named Entity** shall have provided the **Insurer** with a completed application for such new plan and agreed to any additional premium or amendment of the provisions of the policy required by the **Insurer** relating to such new plan;

(5)    a pension plan which, during or prior to the **Policy Period** of this policy, has been merged into or consolidated with a pension plan for which coverage is afforded under this policy; and

(6)    (i)    a plan which is both a welfare plan and a pension plan as defined in **Employee Benefit Law** (other than an **ESOP** or stock option plan) subject to the requirements of this Definition (r);

        (ii)    the following government-mandated programs: unemployment insurance, Social Security or disability benefits, solely with respect to a **Wrongful Act** defined in subparagraph (2) of the definition of "**Wrongful Act**" in this **Coverage Section**;

        (iii)    any other plan, fund or program, including an **ESOP**, which is included in the definition of "**Plan**" by specific written endorsement attached to this policy.

Notwithstanding the foregoing, the term "**Plan**" shall not include any multiemployer plan as defined under any **Employee Benefit Law**.



**621**
**MIL**

## GENERAL TERMS AND CONDITIONS ENDORSEMENT

1.  **DEFINITIONS** (l), (o) and (ll)  are deleted and replaced by the following:

    (l)     "**Director(s) or Officer(s)**" means any:

        (1)     past, present and future duly elected or appointed director or officer of a corporation and member of the Board of Managers and member of the management board of a limited liability company (or equivalent positions formed anywhere in the world);

        (2)     with respect to operations of the **Company** in a **Foreign Jurisdiction**, such past, present and future persons in duly elected or appointed positions of the **Company** that are equivalent to an executive position listed in paragraph (1) of this definition; and

        (3)     past, present and future in house general counsel and risk manager (or equivalent position formed anywhere in the world) of the **Named Entity**.

    (o)     "**Employee(s)**" means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, volunteer, intern and temporary employee in his or her capacity as such. An individual who is leased to the **Company**, who is contracted to perform work for the **Company**, or who is an independent contractor for the **Company** shall also be an **Employee**, but only if the **Company** provides indemnification to such      individual in the same manner as is provided to the **Company's** employees.

    (ll)     "**Subsidiary**" means:

        (1) If the equity securities of the **Named Entity** are not publicly traded at the inception date of the policy:

            (i)     any for-profit organization that is not formed as a partnership or joint venture, whose equity securities are not publicly traded, which on or before the inception of the **Policy Period** is more than 35% owned by the **Named Entity**, either directly or indirectly through one or more of its **Subsidiaries**;

            (ii)     automatically any for-profit organization that is not formed as a partnership or joint venture, whose equity securities are not publicly traded and whose assets total less than 25% of the total consolidated assets of the **Company** at the date such organization is acquired and which organization becomes a **Subsidiary** during the **Policy Period**. The **Named Entity** shall provide the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**; and

(iii)    automatically any for-profit organization that is not formed as a partnership or joint venture, whose equity securities are not publicly traded and whose assets total 25% or more of the total consolidated assets of the **Company** at the date such organization is acquired, but such entity shall be a **Subsidiary** only: (i) for a period of ninety (90) days from the date the organization became a **Subsidiary**; or (ii) until the end of the **Policy Period**, whichever ends or occurs first (hereinafter "**Auto-Subsidiary Period**"); provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

A **Subsidiary** ceases to be a **Subsidiary** when the **Named Entity** ceases to own more than a 35% ownership in such **Subsidiary**, either directly, or indirectly through one or more of its **Subsidiaries**.

(2)   If the equity securities of the **Named Entity** are publicly traded at the inception date of the policy:

(i)     any for-profit organization that is not formed as a partnership, of which the **Named Entity** has **Management Control ("Controlled Entity")** on or before the inception of the **Policy Period**  either directly or indirectly through one or more other **Controlled Entities**;

(ii)    automatically any for-profit organization that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and whose assets total less than 35% of the total consolidated assets of the **Company** as of the inception date of this policy, provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**;

(iii)   automatically any for-profit organization that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and, whose assets total 35% or more of the total consolidated assets of the **Company** as of the inception date of this policy,  but such entity shall be a **Subsidiary** only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever ends or occurs first (hereinafter "**Auto-Subsidiary Period**"); provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**; and

(iv)    any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Company**.

A **Subsidiary** ceases to be a **Subsidiary** when the **Named Entity** no longer maintains **Management Control** of a **Subsidiary** either directly or indirectly through one or more of its **Subsidiaries**.

**MR CONTRACT**
ENQ/QUO :



(3)   Irrespective of whether or not the equity securities of the **Named Entity** are publicly traded at the inception date of the policy, the following provisions apply:

(i)      The **Insurer** shall extend coverage for any **Subsidiary** described in (II)(1)(iii) and (II)(2)(iii) above, and any **Individual Insured** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy as required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Individual Insured** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(ii)     In all events, coverage as is afforded under this policy with respect to a **Claim** made against **Individual Insureds** of any **Subsidiary**, or any **Subsidiary**, shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Individual Insured** or **Subsidiary** became an **Individual Insured** or **Subsidiary** and prior to the time that such **Individual Insured** or **Subsidiary** ceased to be an **Individual Insured** or **Subsidiary**.

**8. DISCOVERY CLAUSE** is deleted and replaced by the following:

**8.   DISCOVERY CLAUSE**

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (herein referred to as the "**Discovery Period**") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice of **Claims** first made against the **Insureds** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for: (1) one year shall be 100% of the "full annual premium" indicated in Item 4 of the Declarations; (2) two years shall be 125% of the "full annual premium" indicated in Item 4 of the Declarations; and (3) three years shall be a 150% of the "full annual premium" indicated in Item 4 of the Declarations.

In the event of a **Transaction** (as defined in Clause 10 below), the **Named Entity** shall have the right, within thirty (30) days before the end of the **Policy Period**, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**) for a period of no less than three (3) years or for such longer or shorter period as the **Named Entity** may request. The **Insurer** shall offer such **Discovery Period** pursuant to such terms,

**621
MIL**

conditions and premium as the **Insurer** may reasonably decide.  In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancellable by the **Insureds** or the **Insurer**, except that the **Insurer** may cancel the **Discovery Period** for non-payment of premium.  This Clause 8 and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.



**621
MIL**

### NAMED INSURED SCHEDULE

1.   **Solely in respect of Directors and Officers Liability**

| **Named Insured** | **Retroactive Date** |
|---|---|
| Anchor Insurance Holdings, Inc. | Full Prior Acts |
| Anchor Property & Casualty Insurance Company | 25th June 2014 |
| Anchor Specialty Insurance Company fka Ranchers & Farmers Insurance Company | Full Prior Acts, except 7th November 2014 for limits excess of USD 2,000,000 |
| Southeast Surplus Underwriters General Agency, Inc. | Full Prior Acts, except 7th November 2014 for limits excess of USD 2,000,000 |
| Spindletop Premium Finance, Inc. | Full Prior Acts, except 6th November 2014 for limits excess of USD 2,000,000 |
| Anchor Insurance Managers Inc. | 25th June 2014 |
| Lozano Insurance Adjusters Inc. | 1st July 2015 |
| Anchor Realty Partners LLC | 6th November 2016 |

2.   **Solely in respect of Employment Practices Liability**

| **Named Insured** | **Retroactive Date** |
|---|---|
| Anchor Insurance Holdings, Inc. | Full Prior Acts |
| Anchor Property & Casualty Insurance Company | 25th June 2014 |
| Anchor Specialty Insurance Company fka Ranchers & Farmers Insurance Company | Full Prior Acts, except 7th November 2014 for limits excess of USD 1,000,000 |
| Southeast Surplus Underwriters General Agency, Inc. | Full Prior Acts, except 7th November 2014 for limits excess of USD 1,000,000 |



**621 MIL**

| | |
|---|---|
| Spindletop Premium Finance, Inc. | Full Prior Acts, except 6th November 2014 for limits excess of USD 1,000,000 |
| Anchor Insurance Managers Inc | 25th June 2014 |
| Lozano Insurance Adjusters Inc | 1st July 2015 |
| Anchor Realty Partners LLC | 25th June 2014 |

3.    **Solely in respect of Fiduciary Liability**

| **Named Insured** | **Retroactive Date** |
|---|---|
| Anchor Insurance Holdings, Inc. | 1st January 2015 |
| Anchor Property & Casualty Insurance Company | 1st January 2015 |
| Anchor Specialty Insurance Company fka Ranchers & Farmers Insurance Company | 1st January 2015 |
| Southeast Surplus Underwriters General Agency, Inc. | 1st January 2015 |
| Spindletop Premium Finance, Inc. | 1st January 2015 |
| Anchor Insurance Managers Inc. | 1st January 2015 |
| Lozano Insurance Adjusters Inc. | 1st July 2015 |
| Anchor Realty Partners LLC | 6th November 2016 |

4.    **Solely in respect of Professional Liability (Insurance Company Liability)**

| **Named Insured** | **Retroactive Date** |
|---|---|
| Anchor Insurance Holdings, Inc. | Full Prior Acts |
| Anchor Property & Casualty Insurance Company | 25th June 2014 |
| Anchor Specialty Insurance Company fka Ranchers & Farmers Insurance Company | Full Prior Acts except 7th November 2014 for limits excess of USD 2,000,000 |

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

### CHOICE OF LAW AND JURISDICTION

This Insurance shall be governed by and construed in accordance with the laws of Florida, each party agrees to submit to the exclusive jurisdiction of any competent court within the United States of America.

**MR CONTRACT**
ENQ/QUO :



Case 8:21-cv-00370-TPB-AEP   Document 147-14   Filed 05/16/23   Page 82 of 109 PageID 4931

**621
MIL**

## ADDITIONAL INSURED/CO-DEFENDANT

In consideration of the premium charged, it is hereby agreed that coverage under this **Policy** shall be extended to include any **Claim** made against the following persons or entities:

Mirage Interests, Inc. MCS
Risk Services, Inc.

hereinafter referred to as an **"Additional Insured"**, provided however, that any such **Claim**: (1) is made and continuously maintained against at least one **Insured**, other than an **Additional Insured**, and (2) arises out a **Wrongful Act** committed or allegedly committed by any **Insured**, other than an **Additional Insured**, and otherwise covered under this policy, and (3) such **Wrongful Act** was committed prior to November 6, 2014.

**MR CONTRACT**
ENQ/QUO :


L/UWR

**621**
**MIL**

## THIRD PARTY EMPLOYMENT PRACTICES LIABILITY

In consideration of the premium charged, it is hereby agreed that coverage under this **Policy** shall be amended as follows:

A. Employment Practices Liability Coverage Section 2. Definitions shall be amended to include the following:

    (j) **"Third Party Wrongful Act"** means any actual or alleged discrimination or sexual harassment by any **Insured** against any natural person who is not an **Insured Person** or prospective **Employee** of the **Named Insured** or its **Subsidiary**;

B. Employment Practices Liability Coverage Section 1. Insuring Agreements Coverage A shall be deleted and replaced with the following:

The **Insurer** will indemnify the **Insured** for **Loss** from any **Claim** first made against it during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Employment Practices Wrongful Act** or **Third Party Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**, and reported pursuant to the terms of this **Policy**.

In consideration of the above item 3 Employment Practices Separate Limit of Liability is deleted and replaced by the following:

USD 3,000,000   Insuring Agreements Coverage A for all **Claims** for **Employment Practices Wrongful Acts**

USD 3,000,000   Insuring Agreements Coverage A for all **Claims** for **Third Party Wrongful Acts**

USD 3,000,000  Aggregate Limit for all **Claims** under Insuring Agreements Coverage A

**MR CONTRACT**
ENQ/QUO :



## AGENCY SERVICES ENDORSEMENT
### (SUB-LIMIT OF LIABILITY)

In consideration of the premium charged it is hereby agreed that:

1.  Insurance Company Liability Coverage Section 1. Insuring Agreement is amended by the addition of the following:

    The **Insurer** will indemnify the **Agency Insured** for **Loss** from any **Claim** first made against it during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Agency Services Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**, and reported pursuant to the terms of this **Policy**.

2.  Solely as respects the coverage provided under this Endorsement, Section II.M, definition of **Insured**, is amended to include any **Agency Insured**.

3.  Solely as respects the coverage provided under this Endorsement, Insurance Company Liability Coverage Section 2 Definitions (c) Definitions is amended by the addition of the following:

    G.  **"Agency Insured"** means the following duly licensed persons or organizations that perform **Agency Professional Services** on behalf of the **Named Insured** or any **Subsidiary**, and pursuant to a written contract. The **Agency Insureds** shall be subject to any applicable **Retroactive Date** listed below.

| Agency Insured | Retroactive Date |
|---|---|
| Anchor Insurance Managers | November 6, 2014 |
| Southeast Surplus Underwriters General Agency, Inc. | February 24, 1994, except November 6, 2014 for limits excess of USD2,000,000 |
| Spindletop Premium Finance, Inc. | February 24, 1994, except November 6, 2014 for limits excess of USD2,000,000 |

    H.  **"Agency Professional Services"** means services performed for a fee or other business consideration as an insurance agent, insurance producer, insurance broker, managing general agent, managing general underwriter, general agent, program administrator, surplus lines broker, wholesale broker, third party claims administrator, appraiser, risk manager, notary, premium finance services, captive manager or attorney in fact.

    I.  **"Agency Services Wrongful Act"** means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty committed by any **Agency Insured** in the performance of or failure to perform **Agency Professional Services**.

4.  The coverage provided under this Endorsement shall be subject to the following Sub-Limit of

L/UWR

**621
MIL**

Liability and Retention. Such Sub-Limit of Liability shall be part of, and not in addition to, the amount stated in ITEM 3 of the Declarations applicable to Insurance Company Coverage Section.

| Sub-Limit of Liability (per claim / aggregate) | Retention (each and every Claim) |
|---|---|
| USD 3,000,000 | USD 100,000 |

5.    Other than as respects the coverage provided in this endorsement, Section 3 of the Insurance Company Coverage Section shall remain unchanged, however, solely as respects the coverage provided under this Agency Services Endorsement, Section 3 of the Insurance Company Coverage Section shall be deleted and replaced with the following exclusions:

    A.    No coverage will be available under Insurance Company Liability Coverage Section 1. Insuring Agreement of this **Policy** for **Loss**, including **Defense Expenses**, from any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

        **(1)**    any prior and/or pending civil, criminal, administrative or regulatory proceeding against any **Agency Insured** occurring prior to, or pending as of November 6, 2014;

        **(2)**    any **Claim** brought by any **Insured** against any other **Insured**;

        **(3)**    any liability of others assumed by the **Agency Insured** under any contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such agreement;

        **(4)**    the capacity of any **Agency Insured** as an officer, director, partner, member, trustee or fiduciary;

        **(5)**    any actual or alleged placement of a risk or an insurance or reinsurance contract, policy or other risk transfer mechanism, device or funding vehicle with any insurance company, self-insured trust, group insurance trust, risk retention group, joint underwriting association or other risk assuming entity that is unable to meet a financial, legal or other obligation to another party, including but not limited to a policyholder.

        This Exclusion shall not apply to any placement with an entity:

        (i)    which is rated B+ or higher by A.M. Best Company at the time of binding of coverage; or

        (ii)    which is rated A' or higher by Demotech at the time of binding coverage; or

        (iii)    specifically listed below:
            Federated National Insurance Company
            Anchor Specialty Insurance Co. fka Ranchers & Farmers Insurance Co.
            Ranchers & Farmers Mutual Insurance Company
            Anchor Property & Casualty Insurance Company

L/UWR

(6)   any **Claim** or investigation brought by any federal, state or municipal agency, insurance department, or other governmental or quasi-governmental authority,

in any capacity, whether in its own right, on behalf of an individual or entity, or by an individual or entity on the agency's or authority's behalf. This includes any written notice or demand for monetary relief and any civil proceeding in a court of law or any administrative proceeding made against any **Agency Insured** seeking to hold such **Insured** responsible for **Loss**;

(7)   any breach of privacy, breach of network security, corruption, alteration, destruction, deletion or damage to, the disclosure or release of **Personal Information**, or the unauthorized use of or access to, any **Insured's** computer or computer network, including the hardware, software, programs and any data or information maintained by or on behalf of any **Insured**;

(8)   any actual or alleged lack of good faith or fair dealing in the handling of any **Claim** or obligation arising out of an insurance or benefit plan provided, however, that this Exclusion will not apply unless there is an admission, finding or a final adjudication in any proceeding establishing that such conduct occurred;

(9)   the performance or failure to perform actuarial services;

(10)   any actual or alleged commingling or misuse of funds;

(11)   notarization of a signature without the physical appearance of the signer before the **Insured** at the time of notarization including the failure of the **Insured** to obtain documentation of the identity of the signer;

(12)   any loss alleged to have been sustained through fluctuation in market value to any security, or any actual or alleged guarantee of any future premium payment, of any investment result or return, of any interest rate or yield, or any tax consequence in connection with any security;

B.   No coverage will be available under Insurance Company Liability Coverage Section 1. Insuring Agreement of this **Policy** for **Loss**, including **Defense Expenses**, from any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

(1)   any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, the Investment Advisers Act of 1940, the Jumpstart Our Business Startups Act, any similar state statute, any rule or regulations promulgated under any of the foregoing, or any amendment to any of the foregoing, or any provision of the common law imposing liability in connection with the offer, sale or purchase of securities;



(2)     any actual or alleged **Personal Injury** or discrimination of any kind, including but not limited to race, creed, religion, age, handicap, sex, marital status or financial condition;

(3)     any actual or alleged refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, breach of any employment contract or agreement, or any other employment-related practices, policies, acts, errors, or omissions;

(4)     any actual or alleged infringement of copyright, patent, trademark or service mark or any other intellectual property violation;

(5)     any actual or alleged bodily injury or property damage, sickness, disease, or death of any person, or damage to or destruction of any tangible property including the loss of use thereof;

(6)     any **Agency Insured's** actual or alleged activities in a fiduciary capacity as respects any employee benefit or pension plan, including any **Claim** involving the Employee Retirement Income Security Act of 1974 (ERISA), as now hereafter amended, or any similar state laws;

(7)     any injury or damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**, including but not limited to asbestos, at any time;

    (i)     any request, demand, or order that any **Insured** or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

    (ii)    any action brought by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**;

(8)     water intrusion, condensation or other accumulation of moisture that results directly or indirectly in the presence of:

    (i)     any mold, fungi, lichen, virus, bacteria or other growing organism that has toxic, hazardous, noxious, pathogenic, irritating or allergen qualities or characteristics; or

    (ii)    any substance, vapor or gas produced by or arising out of any mold, fungi, lichen, virus, bacteria or other growing organism that has toxic, hazardous, noxious, pathogenic, irritating or allergen qualities or characteristics;

This Exclusion B does not apply to liability of the **Agency Insured** arising out of an **Agency Services Wrongful Act**.

C.    No coverage will be available under Insurance Company Liability Coverage Section 1. Insuring Agreement of this **Policy** for **Loss**, other than **Defense Expenses**, from any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    **(1)**    any dishonest, fraudulent or criminal act, error or omission committed by or at the direction of any **Agency Insured**, provided, however, that this Exclusion shall not apply:

        (i)    unless there is an admission, finding or a final adjudication in any proceeding establishing that such conduct occurred; or

        (ii)    to any natural person who did not actually commit, or have prior knowledge of, or participate in a concealment of such criminal, fraudulent, dishonest, or malicious act, error, or omission;

    **(2)**    the gaining in fact of any profit or advantage to which the **Agency Insured** is not legally entitled to, provided, however that this Exclusion shall not apply:

        (i)    unless there is an admission, finding or a final adjudication in any proceeding establishing that such conduct occurred; or

        **(ii)**    to any natural person who did not actually commit, or have prior knowledge of, or participate in a concealment of such criminal, fraudulent, dishonest, or malicious act, error, or omission;

    **(3)**    any actual or alleged breach:

        (i)    of any contract, warranty, guarantee or promise unless liability would have attached to the **Agency Insured** even in the absence of such contract, warranty, guarantee or promise, provided, however, that this Exclusion will not apply unless there is an admission, finding or a final adjudication in any proceeding establishing that such conduct occurred;

        (ii)    of underwriting or binding authority, provided, however, that this Exclusion will not apply unless there is an admission, finding or a final adjudication in any proceeding establishing that such conduct occurred;



**621**
**MIL**

### MANUSCRIPT ENDORSEMENT
### (AMEND INSURING AGREEMENTS)

In consideration of the premium charged, it is hereby agreed that coverage under this **Policy** shall be amended as follows:

D&O Coverage Section, Item 1. Insuring Agreements shall be deleted in its entirety and replaced with the following:

    (1)    The **Insurer** will indemnify an **Insured Person** for **Loss** which is not indemnified by the **Named Insured** and any **Subsidiary**, from any **Claim** first made against the **Insured Person** during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Directors and Officers Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**, and reported in accordance with General Terms and Conditions 7. Notice / Claim Reporting Provisions;

    (2)    The **Insurer** will indemnify the **Named Insured** and any **Subsidiary** for **Loss** which the **Named Insured** and any **Subsidiary** are required to pay as indemnification to any **Insured Person**, resulting from any **Claim** against the **Insured Person** during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Directors and Officers Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**, and reported in accordance with General Terms and Conditions 7. Notice / Claim Reporting Provisions;

    (3)    The **Insurer** will indemnify the **Named Insured** and any **Subsidiary** for **Loss** from any **Claim** first made against the **Named Insured** and any **Subsidiary** during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Directors and Officers Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**, and reported in accordance with General Terms and Conditions 7. Notice / Claim Reporting Provisions.

EPL Coverage Section, item 1. Insuring Agreements shall be deleted in its entirety and replaced with the following:

    The **Insurer** will indemnify the **Insured** for **Loss** from any **Claim** first made against it during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Employment Practices Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**, and reported in accordance with General Terms and Conditions 7. Notice / Claim Reporting Provisions.

FLI Coverage Section, item 1. Insuring Agreements shall be deleted in its entirety and replaced with the following:

    The **Insurer** will indemnify the **Insured** for **Loss** from any **Claim** first made against it during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Fiduciary Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**, and reported in accordance with General Terms and Conditions 7. Notice / Claim Reporting Provisions.

ICL Coverage Section, item 1. Insuring Agreement shall be deleted in its entirety and replaced with the following:

**MR CONTRACT**
ENQ/QUO :



**621**
**MIL**

The **Insurer** will indemnify the **Insured** for **Loss** from any **Claim** or **Extra-Contractual Claim** first made against it during the **Policy Period** (or Extended Reporting Period, if applicable), for any **Professional Liability Wrongful Act** committed on or after the **Retroactive Date** and prior to the end of the **Policy Period**, and reported in accordance with General Terms and Conditions 7. Notice / Claim Reporting Provisions.

ICL Coverage Section 2. DEFINITIONS should be further amended by the addition of the following:

"**Extra-Contractual Claim**" means a **Claim** requesting, in whole or in part, amounts not covered under any provision of an insurance policy issued by the **Insured,** including punitive, exemplary or multiplied damages, in connection with an alleged breach of any duty of good faith or fair dealing by an **Insured**. An "insurance policy" shall include any policy, contract or certificate or other evidence of insurance.

L/UWR

**621
MIL**

### MANUSCRIPT ENDORSEMENT

### (AMEND REGULATORY EXCLUSIONS – INSURANCE COMPANY LIABILITY)

In consideration of the premium charged, it is hereby agreed that coverage under this **Policy** shall be

amended as follows:

Solely as respects the cancellation, non-renewal, rescission, or premium finance of any insurance policy or contract issued by the **Insured**: ICL Coverage section 3, Exclusions (n) shall not apply to any **Claim** brought by any regulator, including any federal, state or local governmental, regulatory or supervisory agency, board, body, official, department of insurance, insurance commission or commissioner.

**MR CONTRACT**
ENQ/QUO :

**621
MIL**

Employed Lawyers Professional Liability Insurance Coverage Section is added to this policy, as follows;

### Financial Institutions Risk Protector®

#### EMPLOYED LAWYERS PROFESSIONAL LIABILITY INSURANCE

#### COVERAGE SECTION

#### ("EMPLOYED LAWYERS COVERAGE SECTION")

**Notice: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this Coverage Section.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

## 1.  INSURING AGREEMENTS

### COVERAGE A: EMPLOYED LAWYER INSURANCE

This policy shall pay on behalf of the **Employed Lawyer** all sums which the **Employed Lawyer** shall become legally obligated to pay as **Damages** arising from a **Claim** first made against the **Employed Lawyer** during the **Policy Period** or **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** of the **Employed Lawyer**, except when and to the extent that the **Employer** has indemnified such **Employed Lawyer**.

### COVERAGE B:  EMPLOYER INDEMNIFICATION

This policy shall pay on behalf of the **Employer** all sums which the **Employer** may be required or permitted by law to indemnify an **Employed Lawyer** for any sum which the **Employed Lawyer** becomes legally obligated to pay as **Loss** arising from a **Claim** first made against the **Employed Lawyer** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** of the **Employed Lawyer** while acting in the course of said **Employed Lawyer's** employment by the **Employer**, but only when and to the extent that the **Employer** has indemnified the **Employed Lawyer** for such **Loss** pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Employer** duly effective under such law which determines and defines such rights of indemnity.

**MR CONTRACT**
ENQ/QUO :



**621**
**MIL**

### COVERAGE C:  DEFENSE COSTS, CHARGES AND EXPENSES

The **Insurer** shall have the right and duty to defend, subject to the applicable Retention amount and subject to and as part of the applicable Limits of Liability, any **Claim** against the **Employed Lawyer** seeking **Damages** which are payable under the terms of this policy, even if any of the allegations of the **Claim** are groundless, false or fraudulent.  The **Insurer** shall be entitled to exercise all rights of an **Employed Lawyer** in the choice of arbitrators and in the conduct of any arbitration proceeding involving a **Claim** covered by this policy.

The **Insurer** shall have the right to make any investigation it deems necessary and, with the written consent of the **Employed Lawyer**, settle any **Claim** covered by this policy.  If the **Employed Lawyer** shall refuse to consent to any settlement recommended by the **Insurer** and acceptable to the claimant and elects to contest the **Claim**, then the **Insurer's** liability shall not exceed the amount for which the **Insurer** would have been liable for **Loss** if the **Claim** had been so settled when and as recommended, and the **Insurer** shall have no liability for **Defense Costs** accruing thereafter, and the **Insurer** shall have the right to withdraw from the further defense thereof by tendering control of said defense to the **Employed Lawyer**.

The **Employed Lawyer** shall not, except at the **Employed Lawyer's** own cost, admit liability, voluntarily make any payment, assume any obligation or incur any expenses without the written consent of the **Insurer**.

The **Insurer** shall not be obligated to pay any **Loss**, or to undertake or continue defense of any **Claim** after the applicable limit of the **Insurer's** liability has been exhausted by payment of **Loss** or after deposit of the applicable limit of the **Insurer's** liability in a court of competent jurisdiction, and in such a case, the **Insurer** shall have the right to withdraw from the further defense thereof by tendering control of said defense to the **Employed Lawyer**.

2. **DEFINITIONS**

   (a) "**Claim**" means:

      (1) a written demand for monetary, non-monetary or injunctive relief;
      (2) a civil, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by service of a complaint or similar pleading; or
      (3) a judicial, administrative, bar association or other proceeding against an **Employed Lawyer** solely concerning the eligibility or license of such **Employed Lawyer** to practice law.

   (b) "**Damages**" means a monetary judgment award or monetary settlement arising from a **Claim**, but does not include fines, sanctions or statutory penalties whether imposed by law or otherwise, nor the return of or restitution of legal fees, costs and expenses.

   (c) "**Employed Lawyer**" means:

      (1) any person admitted to practice law who is, was or becomes employed as a lawyer full time and salaried by the **Employer**, but only as regards **Wrongful Acts** which occur during the term of such employment; and



(2) non-lawyer employees of the **Employer** who are, were or become assistants of an **Employed Lawyer** as defined in sub-paragraph (1) above, while acting under the direction and control of such **Employed Lawyer** in the performance of professional services on behalf of the **Employer**.

(d) "**Employer**" means the **Named Entity** and any **Subsidiary** thereof.

(e) "**Executive**" means any:

(1) past, present or future duly elected or appointed director, officer, trustee or governor of the **Employer**, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position) of the **Employer**; or

(2) past, present or future general counsel and risk manager (or equivalent position) of the **Employer**.

(f) "**Individual Insured**" means any **Employed Lawyer**.

(g) "**Insured(s)**" means:

(1) any **Employed Lawyer**; and
(2) any **Employer**, but solely with respect to Coverage B and such **Employer's** indemnification of an **Employed Lawyer**.

This **Coverage Section** affords no coverage for **Defense Costs** incurred by, settlements by or on behalf of, contractual obligations of, or judgments against any entity whether arising out of a **Claim** made against an **Employer**, based upon any legal obligation to pay any amount that an **Employer** has or may have to a claimant, or derived from the acts or omissions of **Employed Lawyers**.

No **Employer** is covered in any respect under Coverage A or Coverage C of this **Coverage Section**. An **Employer** is covered, subject to this **Coverage Section's** terms, conditions, exclusions and other limitations only with respect to its indemnification of **Employed Lawyers** under Coverage B as respects a **Claim** against such **Employed Lawyers**.

(h) "**Legal Services**" means any professional legal services rendered by:

(1) an **Employed Lawyer** in his or her capacity as an **Employee** of an **Employer**; and
(2) any **Employed Lawyer** while a full time, permanent **Employee** of an **Employer**, including, but not limited to, any moonlighting or *pro bono* services.

(i) "**Loss**" means **Damages** and **Defense Costs**; provided, however, **Loss** shall not include: (1) civil or criminal fines or penalties; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(j) "**Personal Injury Peril**" means the following offenses:

**MR CONTRACT**
ENQ/QUO :



**621**
**MIL**

(1) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of the right of private occupancy, or malicious prosecution; or

(2) the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

(k) "**Wrongful Act**" means any actual or alleged:

(1) negligent act, error, omission, breach of duty, misstatement or misleading statement; or

(2) **Personal Injury Peril**;

committed or omitted in the performance of **Legal Services**.

## 3. EXCLUSIONS

Exclusion 4(a) (profit or advantage) and the paragraph following Exclusion 4(h) of the General Terms and Conditions do not apply to this **Coverage Section**.

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, except as indicated in the preceding paragraph, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(a) arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act by an **Employed Lawyer**; provided, however, the **Insurer** shall defend such **Claim** alleging the foregoing conduct, until there is a judgment, final adjudication, adverse admission or finding of fact against the **Employed Lawyer** as to such conduct, at which time the **Insured** shall reimburse the **Insurer** for **Defense Costs**;

(b) against an **Employed Lawyer** that is brought, directly or indirectly, by or on behalf of any: (1) **Employed Lawyer**; (2) **Employer**; (3) business entity that is controlled, managed or operated, directly or indirectly, in whole or in part, by the **Employer**; (4) parent company, partner, trustee, successor or assignee of the **Employer**, or any person or entity affiliated with the **Employer**; (5) receiver, conservator, trustee, creditor or assignee of creditors or for the benefit of creditors or similar representative in the event of the insolvency or bankruptcy of the **Employer**; or (6) security holder or member of the **Employer**, whether directly or derivatively, unless such security holder or member claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of an **Employed Lawyer**, the **Employer** or any **Executive** of the **Employer**; provided, however, this exclusion shall not apply to **Defense Costs** incurred in the defense of any **Claim** brought by or on behalf of the **Employer**;

(c) for discrimination or other unfair employment practices; provided, however, this exclusion shall not apply to any **Claim** alleging a **Wrongful Act** in the performance of **Legal Services**;

(d) arising out of any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein;

(e) alleging, arising out of, based upon, or in connection with any offering of securities by the Company or alleging a purchase or sale of such securities subsequent to such offering;

(f) arising out of mental anguish, emotional distress or humiliation; provided, however, this exclusion shall not apply to any **Claim** alleging the forgoing if such allegations result from a **Personal Injury Peril**;

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Employed Lawyer** serving in the capacity of an **Executive**; provided, however, this exclusion shall not apply to alleging a **Wrongful Act** in the performance of **Legal Services**;

(h) against an **Employed Lawyer** for a **Wrongful Act** that was committed or allegedly committed at a time when the **Employed Lawyer** was not employed by the **Employer;** or

alleging, arising out of, based upon or attributable to any violation of the provisions of the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, any regulation promulgated under the foregoing statutes or any federal, state, local or foreign laws (i) similar to the foregoing laws (including "Blue Sky" laws) or (ii) regulating the same or similar conduct whether such law is statutory, regulatory or common law.

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

### SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.  The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

LSW1001 (Insurance)

**621
MIL**

### SOFT HAMMER ENDORSEMENT

This endorsement modifies insurance provided under the following:

FINANCIAL INSTITUTIONS RISK PROTECTOR

In consideration of the premium charged, it is hereby agreed that Section VIII.C(5) is deleted and replaced with the following:

**(5)**     The **Insurer** shall have the right to recommend a settlement of any **Claim** as the **Insurer** deems expedient, subject to consent of the **Insured**. If the **Insured** shall refuse to consent to any settlement or compromise recommended by the **Insurer** and acceptable to the claimant, and shall elect to instead contest or continue to contest the **Claim**, then the **Insurer's** liability shall not exceed:

**(i)**     the amount in excess of the Retention, for which such **Claim** could have been settled by the **Insurer** plus **Defense Expenses** up to the date the **Insured** refused to settle such **Claim**; plus

**(ii)**     60 percent (60%) of any **Loss** and/or **Defense Expenses** in excess of the amount in clause (I) above, incurred in connection with such **Claim**. The remaining 40 percent (40%) of any **Loss** and/or **Defense Expenses** will be carried by the **Insured** at its own risk and will be uninsured.

L/UWR

Case 8:21-cv-00370-TPB-AEP   Document 147-14   Filed 05/16/23   Page 99 of 109 PageID 4948

**621
MIL**

**Information**

As seen by underwriters and held on file



**621
MIL**

**Security Details**

<u>LMA3333</u>

**(RE)INSURERS LIABILITY CLAUSE**

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten.  A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer.  Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp.  This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed").  In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together).  A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line".  The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

**Order Hereon:**            100% of 100%

**Basis of
Written Lines:**         Percentage of Whole

**MR CONTRACT**
ENQ/QUO :



**621 MIL**

**Signing Provisions:**   In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the (re)insurers.

However:

a)   in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;

b)   the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the (re)insured and all (re)insurers whose lines are to be varied.  The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

**MODE OF EXECUTION CLAUSE**

This contract and any changes to it may be executed by:

a.   electronic signature technology employing computer software and a digital signature or digitiser pen pad to capture a person's handwritten signature in such a manner that the signature is unique to the person signing, is under the sole control of the person signing, is capable of verification to authenticate the signature and is linked to the document signed in such a manner that if the data is changed, such signature is invalidated;

b.   a unique authorisation provided via a secure electronic trading platform

c.   a timed and dated authorisation provided via an electronic message/system;

d.   an exchange of facsimile/scanned copies showing the original written ink signature of paper documents;

e.   an original written ink signature of paper documents (or a true representation of a signature, such as a rubber stamp).;
The use of any one or a combination of these methods of execution shall constitute a legally binding and valid signing of this contract.  This contract may be executed in one or more of the above counterparts, each of which, when duly executed, shall be deemed an original

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

**Written Lines:**

In a co-insurance placement, following (re)insurers may, but are not obliged to, follow the premium charged by the lead (re)insurer.

(Re)insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.

| SIGNED LINE % | |
|---|---|

*100%*

**Castel Underwriting Agencies Ltd t/a Verve Risk Partners**
Underwriting on behalf of: Syndicates at Lloyd's         100.000%

| 5 | 0 | 0 | 0 | 3 | 4 | 0 | 0 | 1 | 1 | 8 | 1 | 1 | 1 | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*18/12/18*

Premiums and Claims to be settled direct to Castel in accordance with the terms of Binding Authority: B0901LI1833687000

*a. lee*

| MR CONTRACT | | L/UWR |
|---|---|---|
| ENQ/QUO : | | |

**621 MIL**

## Contract Administration and Advisory Sections

**Subscription Agreement**

| | |
|---|---|
| **Slip Leader:** | Verve Risk Partners (on behalf of Castel Underwriting Agencies Ltd.), *per authority* |
| **Bureau Leader:** | *ref : B0702LI 283580 7000* Verve Risk Partners (on behalf of Castel Underwriting Agencies Ltd.) |

**Basis of Agreement to Contract Changes:**

**Broker Clauses/Slip Conditions (Not To Appear In Policy Documents)**

Underwriters hereon agree that the following slip conditions will apply

1.  Underwriters hereon agree that claims or circumstances advised subsequent to the participation of underwriters hereon and prior to inception to be advised to Slip Leader only. Slip Leader to determine whether terms as quoted to stand. Such determination to be binding on all participating underwriters hereon.

2.  GUA (Version 2.0 February 2014) with Professional Indemnity Schedule (May 2005)

3.  If required underwriters hereon agree

    -   Wordings to be agreed by Slip Leader and leading Lloyd's (if applicable) only.
    -   To the collection and taking down of claims and premiums on copy/duplicates slips without production of letter of indemnity.
    -   Second and subsequent premiums to be taken down as additional premiums.

**Other Agreement Parties for Contract Changes for part 2 GUA Changes only:**

Where no other agreement parties for contract changes are stated herein, the agreement parties will be the slip leader only.

**Agreement Parties for Contract Changes for their proportion only:**

Where no other agreement parties for contract changes are stated herein, the agreement parties will be the slip leader only.

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

**Basis of Claims
Agreement:**                    As specified under the CLAIMS AGREEMENT PARTIES and to be
                                managed in accordance with:

                        i)      The SINGLE CLAIMS AGREEMENT PARTY ARRANGEMENTS -
                                LMA9150 for claims or circumstances assigned as Single Claims
                                Agreement Party Claims (SCAP Claims)

                                or, where it is not applicable, then the following shall apply as
                                appropriate:

                        ii)     the Lloyd's Claims Scheme (Combined), or as amended or any
                                successor thereto.

                        iii)    IUA Claims Agreement Practices.

                        iv)     The practices of any company(ies) electing to agree claims in respect of
                                their own participation.

**Claims Agreement
Parties:**                       A.     Claims falling within the scope of the LMA9150 to be agreed by Slip
                                Leader only on behalf of all (re)insurers subscribing (1) to this Contract
                                on the same contractual terms (other than premium and brokerage) and
                                (2) to these Arrangements.

                                For the purposes of calculating the Threshold Amount, the sterling rate
                                on the date that a financial value of the claim is first established by the
                                Slip Leader shall be used and the rate of exchange shall be the Bank of
                                England spot rate for the purchase of sterling at the time of the deemed
                                conversion.

                                SLIP LEADER:       OPT IN / OPT OUT


                                (RE)INSURERS OPTING OUT OF SCAP:

In respect of Verve Risk Partners, all claims
and circumstances to be reported to:
Attn: Marilyn Bonetati
Premier Claims Management
2020B North Tustin Avenue, Santa Ana, CA 92705
Email: mbonetati@premierclaimsllc.com

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

**PROGRAMMES**
**UMR / POLICY NO. B0621PANCH001718**                                    **PAGE 3 OF 7**

B.   For all other claims:

i)   For Lloyd's syndicates

The leading Lloyd's syndicate and, where required by the applicable Lloyd's Claims Scheme, the second Lloyd's syndicate and/or the Scheme Service Provider.

The second Lloyd's syndicate is:

ii)  Those companies acting in accordance with the IUA claims agreement practices, excepting those that may have opted out via iii) below.

iii) Those companies that have specifically elected to agree claims in respect of their own participation:

iv)  All other subscribing insurers that are not party to the Lloyd's/IUA claims agreement practices, each in respect of their own participation:

v)   Notwithstanding anything contained in the above to the contrary, any ex gratia payments to be agreed by each (re)insurer for their own participation.

**Claims
Administration:**

Where appropriate, Miller Insurance Services LLP and insurers agree that any claims hereunder (including any claims related costs / fees) will be notified and administered via an Electronic Claims File with any payment(s) processed via CLASS, unless both parties agree to do otherwise.

Where claims or circumstances are not administered via ECF, notification, administration and payment(s) will be electronic.

Where a Lloyd's syndicate or IUA company is not an agreement party to the claim or circumstance (per CLAIMS AGREEMENT PARTIES A. above), they agree to accept correct ECF sequences for administrative purposes to ensure information is circulated to all subscribing parties.

**Rules and Extent of
any other Delegated
Claims Authority:**        None

**Expert(s) Fees
Collection:**

Miller Insurance Services LLP will not collect fee invoices of third parties unless the work exclusively benefits the (re)insured, or forms part of the (re)insured's claim. In the event of Miller Insurance Services LLP not collecting third party fees the following applies:

**MR CONTRACT**
ENQ/QUO :



**621
MIL**

Xchanging Claims Services Ltd to collect fees for all slip security, including overseas (re)insurers unless the leading Claims Agreement Party elects an alternate on a case by case basis

**Notice of Cancellation
Provisions (Format
and Delivery Provisions):**

The content and format of any such notice should be in accordance with the 'Notice of Cancellation' standard, as published by the London Market Group (LMG), or their successor body, on behalf of London Market Associations and participants. However failure to comply with this standard will not affect the validity of the notice given.

Where (re)insurers have the right to give notice of cancellation, in accordance with the provisions of the contract, then to the extent provided by the contract the notice shall be provided to the broker by the following means:

By an email to noc@miller-insurance.com

Failure to comply with this delivery requirement will make the notice null and void. Satisfactory delivery of the notice will cause it to be effective irrespective of whether the broker has acknowledged receipt.

**Settlement Due Date:** 28th January 2019

**Bureaux
Arrangements:**

Delinked accounts to be presented by the broker to Xchanging Ins-sure Services as appropriate.

Where a premium Settlement Due Date or Premium Payment Condition expiry date falls on either a weekend or UK public holiday, presentation to the appropriate Lloyd's or XIS signing bureau on the next working day subsequent thereto shall be deemed to achieve compliance with the Settlement Due Date or Premium Payment Condition in question.

Where a premium Settlement Due Date or Premium Payment Condition expiry date falls on either a weekend or UK public holiday, receipt of the premium by the non-Bureau market on the next working day subsequent thereto shall be deemed to achieve compliance with the Settlement Due Date or Premium Payment Condition in question.

Where a Premium Payment Warranty or Premium Payment Condition due date is later than the Settlement Due Date, the Settlement Due Date is deemed updated to be the same as the Premium Payment Warranty or Premium Payment Condition due date.

**MR CONTRACT**
ENQ/QUO :



**621 MIL**

**Fiscal and Regulatory**

| | |
|---|---|
| **Tax Payable by Insurer(s):** | None |
| **Country of Origin:** | United States of America |
| **Regulatory Risk Location:** | 100% |
| **Overseas Broker:** | ECC Insurance Brokers, LLC<br>One Tower Lane, Suite 2850, Oakbrook Terrace, IL 60181 |
| **Surplus Lines Broker:** | ECC Insurance Brokers, LLC<br>One Tower Lane, Suite 2850, Oakbrook Terrace, IL 60181<br><br>Surplus Lines License Number: P133810 |
| **State of Filing:** | Home State: Florida |
| **US Classification:** | US Surplus Lines |
| **Allocation of Premium to Coding:** | E8 100% |
| **Regulatory Client Classification:** | Commercial Customer |

**MR CONTRACT**
ENQ/QUO : 



**621
MIL**

**Broker Remuneration and Deductions Section**

**Fee Payable
by Client:**                    No

**Total Brokerage:**             22.50%

**Other Deductions
from Premium:**                  None

**MR CONTRACT**
ENQ/QUO :

